**DebtEd, LOSSMitig, CONVERTED, APPEAL**

# U.S. Bankruptcy Court
## Eastern District of New York (Brooklyn)
## Bankruptcy Petition #: 1–18–42030–cec

|  |  |
|---|---|
| *Date filed:* | 04/12/2018 |
| *Date converted:* | 08/02/2018 |
| *341 meeting:* | 10/05/2018 |
| *Deadline for objecting to discharge:* | 11/06/2018 |
| *Deadline for financial mgmt. course:* | 11/06/2018 |

*Assigned to:* Carla E. Craig
Chapter 7
Previous chapter 7
Original chapter 13
Voluntary
No asset

**Debtor**
**Velappan Veeraswamy**
8545 115th St
Fl 1
Richmond Hill, NY 11418–1733
QUEENS–NY
SSN / ITIN: xxx–xx–2014

represented by **H Bruce Bronson**
Bronson Law Offices PC
480 Mamaroneck Ave.
Harrison, NY 10528
877–385–7793
Fax : 888–908–6906
Email: ecf@bronsonlaw.net

**Trustee**
**Michael J. Macco**
2950 Express Drive South
Suite 109
Islandia, NY 11749
(631) 549–7900
*TERMINATED: 08/02/2018*
Email: ecf@maccosternlaw.com

**Trustee**
**Lori Lapin Jones**
Lori Lapin Jones PLLC
98 Cutter Mill Road
Suite 201 North
Great Neck, NY 11021
(516) 466–4110
Email: ljones@jonespllc.com

**U.S. Trustee**
**Office of the United States Trustee**
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
(212) 510–0500

| Filing Date | # |  | Docket Text |
|---|---|---|---|
| 04/12/2018 |  | 1 | Chapter 13 Voluntary Petition for Individuals. Fee Amount $310 Filed by H Bruce Bronson on behalf of Velappan Veeraswamy Government Proof of Claim due by 10/9/2018. (Bronson, H) (Entered: 04/12/2018) |

| | | | |
|---|---|---|---|
| 04/12/2018 | | | Meeting of Creditors Chapter 13 & Appointment of Chapter 13 Trustee Michael J. Macco, with 341(a) Meeting to be held on 05/16/2018 at 10:00 AM at Room 2579, 271−C Cadman Plaza East, Brooklyn, NY . Proof of Claims due by 06/21/2018 . (Entered: 04/12/2018) |
| 04/12/2018 | | 2 | Certificate of Credit Counseling for Debtor Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (Bronson, H) (Entered: 04/12/2018) |
| 04/12/2018 | | 3 | Deficient Filing Chapter 13: Statement Pursuant to E.D.N.Y. LBR 1073−2b due by 4/12/2018. Last day to file Section 521(i)(1) documents is 5/29/2018. Pre−Petition Statement Pursuant to E.D.N.Y. LBR 2017−1 due by 4/26/2018. Chapter 13 Plan due by 4/26/2018. Copies of pay statements received from any employer due by 4/26/2018. Incomplete Filings due by 4/26/2018. (aac) (Entered: 04/13/2018) |
| 04/13/2018 | | | Receipt of Voluntary Petition (Chapter 13)(1−18−42030) [misc,volp13a] ( 310.00) Filing Fee. Receipt number 16555090. Fee amount 310.00. (re: Doc# 1) (U.S. Treasury) (Entered: 04/13/2018) |
| 04/15/2018 | | 4 | BNC Certificate of Mailing with Notice of Deficient Filing Notice Date 04/15/2018. (Admin.) (Entered: 04/16/2018) |
| 04/16/2018 | | 5 | Request for Notice − Chapter 13 Meeting of Creditors and Hearing on Confirmation. Confirmation hearing to be held on 6/21/2018 at 10:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. Last day to Object to Confirmation 6/21/2018.Objections to 523 due by 7/16/2018. (aac) (Entered: 04/16/2018) |
| 04/16/2018 | | 6 | Notice of Appearance and Request for Notice Filed by Mark L Cortegiano on behalf of Maspeth Federal Savings and Loan Association (Cortegiano, Mark) (Entered: 04/16/2018) |
| 04/17/2018 | | 7 | Notice of Appearance and Request for Notice Filed by Alexandros E Tsionis on behalf of JPMorgan Chase Bank, National Association (Attachments: # 1 Affidavit of Service) (Tsionis, Alexandros) (Entered: 04/17/2018) |
| 04/18/2018 | | 8 | BNC Certificate of Mailing with Notice of Electronic Filing Notice Date 04/18/2018. (Admin.) (Entered: 04/19/2018) |
| 04/18/2018 | | 9 | BNC Certificate of Mailing − Meeting of Creditors Notice Date 04/18/2018. (Admin.) (Entered: 04/19/2018) |
| 04/19/2018 | | 10 | Pre−Petition Statement Pursuant to E.D.N.Y LBR 2017−1 Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (Bronson, H) (Entered: 04/19/2018) |
| 04/19/2018 | | 11 | Statement 1073−2b Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (Bronson, H) (Entered: 04/19/2018) |
| 04/19/2018 | | 12 | Employee Income Records / Copies of Pay Statements Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)3 Deficient Filing Chapter 13) (Bronson, H) (Entered: 04/19/2018) |
| 04/19/2018 | | 13 | Chapter 13 Plan April 6, 2018 Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)3 Deficient Filing Chapter 13). Objections to Loss Mitigation due by 05/10/2018. (Bronson, H) (Entered: 04/19/2018) |

| | | | |
|---|---|---|---|
| 05/10/2018 | | <u>14</u> | Objection to Loss Mitigation Request Filed by Mark L Cortegiano on behalf of Maspeth Federal Savings and Loan Association (RE: related document(s)<u>13</u> Chapter 13 Plan Filed After Commencement filed by Debtor Velappan Veeraswamy) (Attachments: # <u>1</u> Exhibit Ex A – Affidavit of Service from first lawsuit # <u>2</u> Exhibit Ex B – Affidavit of Service from subsequent lawsuit # <u>3</u> Exhibit Ex C – Court Order) (Cortegiano, Mark) (Entered: 05/10/2018) |
| 05/11/2018 | | <u>15</u> | Objection to Confirmation of Plan Filed by Alexandros E Tsionis on behalf of JPMorgan Chase Bank, National Association (RE: related document(s)<u>13</u> Chapter 13 Plan Filed After Commencement filed by Debtor Velappan Veeraswamy). (Attachments: # <u>1</u> Affidavit of Service) (Tsionis, Alexandros) (Entered: 05/11/2018) |
| 05/14/2018 | | <u>16</u> | Motion to Convert Case Chapter 13 to 7 Fee Amount $ 25. Filed by Karen Veeraswamy. Hearing scheduled for 6/7/2018 at 11:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tmg) (Entered: 05/14/2018) |
| 05/14/2018 | | | Receipt of Conversion Fee Chapter 13 to Chapter 7 – $25.00. Receipt Number 320686. (TG) (admin) (Entered: 05/14/2018) |
| 05/17/2018 | | | Statement Adjourning 341(a) Meeting of Creditors. on 6/20/2018 at 10:00 AM at Room 2579, 271–C Cadman Plaza East, Brooklyn, NY. Debtor absent. (Macco, Michael) (Entered: 05/17/2018) |
| 05/18/2018 | | <u>17</u> | Order that the Debtor(s) and the Secured Creditor are directed to appear at a hearing on the Loss Mitigation Request (RE: related document(s)<u>13</u> Chapter 13 Plan Filed After Commencement filed by Debtor Velappan Veeraswamy, 14). Signed on 5/18/2018. Hearing scheduled for 6/7/2018 at 02:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (aac) (Entered: 05/18/2018) |
| 05/18/2018 | | <u>18</u> | Objection to Confirmation of Plan Filed by Mark L Cortegiano on behalf of Maspeth Federal Savings and Loan Association (RE: related document(s)<u>13</u> Chapter 13 Plan Filed After Commencement filed by Debtor Velappan Veeraswamy). (Attachments: # <u>1</u> Exhibit Ex A – 1996 Mortgage and 1996 Note # <u>2</u> Exhibit Ex B – 2000 Mortgage and 2000 Note # <u>3</u> Exhibit Ex C – 2002 Maspeth Mortgage and Note # <u>4</u> Exhibit Ex D – Consolidation Agreement # <u>5</u> Exhibit Ex E – summons and complaint # <u>6</u> Exhibit Ex F – recorded judgment of foreclosure and sale # <u>7</u> Exhibit Ex G – Maspeths proof of claim # <u>8</u> Exhibit Ex H – Affidavit of Service # <u>9</u> Exhibit Ex I – Affidavit of Service # <u>10</u> Exhibit Ex J – Petition and Schedules # <u>11</u> Exhibit Ex K – Proof of Claim) (Cortegiano, Mark) (Entered: 05/18/2018) |
| 05/20/2018 | | <u>19</u> | BNC Certificate of Mailing with Application/Notice/Order Notice Date 05/20/2018. (Admin.) (Entered: 05/21/2018) |
| 05/25/2018 | | <u>20</u> | Affidavit/Certificate of Service Filed by Karen Veeraswamy (RE: related document(s)<u>16</u> Motion to Convert Case Chapter 13 to 7 filed by Creditor Karen Veeraswamy) (tmg) (Entered: 05/25/2018) |
| 05/30/2018 | | <u>21</u> | Notice of Appearance and Request for Notice Filed by Kevin R Toole on behalf of Deutsche Bank National Trust Company (Toole, Kevin) (Entered: 05/30/2018) |
| 05/30/2018 | | <u>22</u> | Objection to Confirmation of Plan Filed by Barbara Whipple on behalf of Deutsche Bank National Trust Company (RE: related document(s)<u>13</u> Chapter 13 Plan Filed After Commencement filed by Debtor Velappan |

| | | | |
|---|---|---|---|
| | | | Veeraswamy). (Whipple, Barbara) (Entered: 05/30/2018) |
| 06/04/2018 | | 23 | Chapter 13 Trustee's Motion to Dismiss Case. Hearing scheduled for 6/21/2018 at 10:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (Macco, Michael) (Entered: 06/04/2018) |
| 06/05/2018 | | 24 | Reply *to Motion to Convert Case to Chapter 7* Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)16 Motion to Convert Case Chapter 13 to 7 filed by Creditor Karen Veeraswamy) (Attachments: # 1 Exhibit A–Decision/Order # 2 Exhibit B–Declaration) (Bronson, H) (Entered: 06/05/2018) |
| 06/05/2018 | | 25 | Affidavit/Certificate of Service *of Reply to Motion by Karen Veeraswamy to Convert Chapter 13 to Chapter 7* Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)24 Reply filed by Debtor Velappan Veeraswamy) (Bronson, H) (Entered: 06/05/2018) |
| 06/06/2018 | | 26 | Letter of Adjournment: Hearing rescheduled from 6/7/2018 at 2:00 PM to 7/17/2018 at 11:00 AM Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)17 Order to Schedule Hearing (Generic)) (Bronson, H) (Entered: 06/06/2018) |
| 06/06/2018 | | 27 | Reply *To Objection* Filed by Karen Veeraswamy (RE: related document(s)16 Motion to Convert Case Chapter 13 to 7 filed by Creditor Karen Veeraswamy, 24 Reply filed by Debtor Velappan Veeraswamy) (cns) (Entered: 06/06/2018) |
| 06/07/2018 | | | Hearing Held and Adjourned; (related document(s): 16 Motion to Convert Case Chapter 13 to 7) Appearances: H Bruce Bronson Representing Debtor, Karen Veeraswamy Creditor, Velappan Veeraswamy Debtor – Hearing scheduled for 08/02/2018 at 10:30 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY – Court to issue scheduling order (tleonard) (Entered: 06/11/2018) |
| 06/07/2018 | | | Adjourned Without Hearing (related document(s): 17 Order that the Debtor(s) and the Secured Creditor are directed to appear at a hearing on the Loss Mitigation Request (RE: related document(s) 13 Chapter 13 Plan Filed After Commencement.) Schedule hearing to be held on 07/17/2018 at 11:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tleonard) (Entered: 07/10/2018) |
| 06/11/2018 | | 28 | Reply *To Motion* Filed by Karen Veeraswamy (RE: related document(s)23 Chapter 13 Trustee's Motion to Dismiss Case) (cns) (Entered: 06/11/2018) |
| 06/12/2018 | | 29 | Transcript & Notice regarding the hearing held on 06/07/2018. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 16 Motion to Convert Case Chapter 13 to 7). Notice of Intent to Request Redaction Due By 06/19/2018. Redaction Request Due By 07/3/2018. Redacted Transcript Submission Due By 07/13/2018. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 09/10/2018 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (AAA Write It Right Transcription) (Entered: 06/12/2018) |
| 06/15/2018 | | 30 | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 06/15/2018. (Admin.) (Entered: 06/16/2018) |

| | | | |
|---|---|---|---|
| 06/20/2018 | | 31 | Reply *in support of Trustees Motion to Dismiss* Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)23 Chapter 13 Trustee's Motion to Dismiss Case) (Bronson, H) (Entered: 06/20/2018) |
| 06/20/2018 | | 32 | Order Scheduling Evidentiary Hearing on whether the Debtor filed this bankruptcy case in bad faith (RE: related document(s)16 Motion to Convert Case Chapter 13 to 7 filed by Creditor Karen Veeraswamy). Signed on 6/20/2018. Hearing scheduled for 8/2/2018 at 10:30 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (aac) (Entered: 06/21/2018) |
| 06/21/2018 | | | Chapter 13 Meeting of Creditors Held and Closed. (Macco, Michael) (Entered: 06/21/2018) |
| 06/21/2018 | | | Hearing Held and Adjourned; (related document(s): 23 Chapter 13 Trustee's Motion to Dismiss Case) – Appearances: Victoria Lehning Representing Debtor, Michael J. Macco Trustee, Rachel Blumenfeld Representing Creditor, Karen Veeraswamy Creditor – Hearing scheduled for 08/16/2018 at 10:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tleonard) (Entered: 07/05/2018) |
| 06/21/2018 | | | Confirmation Hearing Held and Adjourned; (related document(s): 5 Request for Notice – Meeting of Creditors and Hearing on Confirmation Chapter 13) – Appearances: Victoria Lehning Representing Debtor, Michael J. Macco Trustee, Rachel Blumenfeld Representing Creditor, Karen Veeraswamy Creditor – Confirmation hearing to be held on 08/16/2018 at 10:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tleonard) (Entered: 07/05/2018) |
| 06/23/2018 | | 33 | BNC Certificate of Mailing with Application/Notice/Order Notice Date 06/23/2018. (Admin.) (Entered: 06/24/2018) |
| 07/11/2018 | | 34 | Affirmation in Support Filed by Karen Veeraswamy (RE: related document(s)16 Motion to Convert Case Chapter 13 to 7 filed by Creditor Karen Veeraswamy) (tmg) (Entered: 07/11/2018) |
| 07/16/2018 | | 35 | Loss Mitigation Status Report Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (related document(s)13,17 Order to Schedule Hearing (Generic)) (Bronson, H) Modified on 7/23/2018 (vab). (Entered: 07/16/2018) |
| 07/16/2018 | | 36 | Loss Mitigation Final Report regarding Account No.: 0704; Loan Disposition: NO AGREEMENT HAS BEEN REACHED Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)17 Order to Schedule Hearing (Generic)) (Bronson, H) (Entered: 07/16/2018) |
| 07/16/2018 | | 37 | Letter *withdrawing request for loss mitigation with Maspeth Savings and Loan Association* Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (related document(s)13, 17 Order to Schedule Hearing (Generic)) (Bronson, H) Modified on 7/23/2018 (vab). (Entered: 07/16/2018) |
| 07/16/2018 | | 38 | Letter of Adjournment: Hearing rescheduled from 7/17/2018 at 11:00 AM to August 2, 2018 at 10:30 AM Filed by Velappan Veeraswamy (related document(s)17). (Bronson, H). Related document(s) 13 Chapter 13 Plan Filed After Commencement filed by Debtor Velappan Veeraswamy. Modified on 7/27/2018 to create a relationship to document 13(fmr). (Entered: 07/16/2018) |

5

| | | | |
|---|---|---|---|
| 07/17/2018 | | | Marked Off without hearing (related document(s): <u>17</u> Order that the Debtor(s) and the Secured Creditor are directed to appear at a hearing on the Loss Mitigation Request (RE: related document(s) <u>13</u> Chapter 13 Plan Filed After Commencement.) (tleonard) (Entered: 07/18/2018) |
| 07/25/2018 | | <u>39</u> | Amended Schedule(s), Required Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1009–1(a) Schedule E/F, : Statement of Financial Affairs Fee Amount $31 Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (Bronson, H) (Entered: 07/25/2018) |
| 07/25/2018 | | | Receipt of Amended Schedule(s), Required Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1009–1(a) (Fee Due)(1–18–42030–cec) [misc,aschsfa] ( 31.00) Filing Fee. Receipt number 16925203. Fee amount 31.00. (re: Doc# <u>39</u>) (U.S. Treasury) (Entered: 07/25/2018) |
| 07/25/2018 | | <u>40</u> | Affidavit/Certificate of Service *for Amended Schedule(s), Required Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1009–1(a)* Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)<u>39</u> Amended Schedule(s), Required Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1009–1(a) (Fee Due) filed by Debtor Velappan Veeraswamy) (Bronson, H) (Entered: 07/25/2018) |
| 07/30/2018 | | <u>41</u> | Joint Pre–Trial Order Filed by Karen Veeraswamy (Attachments: # <u>1</u> Exhibit 1–4 # <u>2</u> Exhibit 5–10 # <u>3</u> Affidavit of Service) (Related Documents <u>32</u>) (cjm) (Entered: 07/30/2018) |
| 07/30/2018 | | <u>42</u> | Letter Filed by Karen Veeraswamy (related document(s)<u>32</u> Order to Schedule Hearing, <u>41</u> Joint Pre–Trial Order) (cjm) (Entered: 07/30/2018) |
| 07/31/2018 | | <u>43</u> | Joint Pre–Trial Order(RE: related document(s)<u>32</u> Order to Schedule Hearing (Generic)). Signed on 7/31/2018 (aac) (Entered: 08/01/2018) |
| 08/02/2018 | | | Hearing Held; (related document(s): <u>16</u> Motion to Convert Case Chapter 13 to 7 filed by Karen Veeraswamy) Appearances: H Bruce Bronson Representing Debtor, Karen Veeraswamy Creditor, Velappan Veeraswamy Debtor – Granted; Court to Issue Order (tleonard) (Entered: 08/03/2018) |
| 08/02/2018 | | | Hearing Held; (related document(s): <u>32</u> Order Scheduling Evidentiary Hearing on whether the Debtor filed this bankruptcy case in bad faith (RE: related document(s) <u>16</u> Motion to Convert Case Chapter 13 to 7). – Appearances: H Bruce Bronson Representing Debtor, Karen Veeraswamy Creditor, Velappan Veeraswamy Debtor – Case converted to chapter 7 (tleonard) (Entered: 08/03/2018) |
| 08/02/2018 | | <u>44</u> | Order Granting Motion to Convert Case Chapter 13 to 7 (Related Doc # <u>16</u>) Trustee Michael J. Macco removed from the case. Signed on 8/2/2018. (aac) (Entered: 08/03/2018) |
| 08/05/2018 | | <u>45</u> | Notice of No Financial Management Certificate before Discharge for Debtor(s). (fincert7) (Entered: 08/05/2018) |
| 08/08/2018 | | | Conversion Utility (aac) (Entered: 08/08/2018) |
| 08/08/2018 | | | Meeting of Creditors 341(a) meeting to be held on 9/7/2018 at 10:30 AM at Room 2579, 271–C Cadman Plaza East, Brooklyn, NY. Financial Management Certificate due by 11/6/2018. Last day to oppose discharge or dischargeability is 11/6/2018. (aac) (Entered: 08/08/2018) |

| 08/08/2018 | | <u>46</u> | Request for Notice – Meeting of Creditors Chapter 7 No Asset (aac) (Entered: 08/08/2018) |
|---|---|---|---|
| 08/08/2018 | | <u>47</u> | BNC Certificate of Mailing with Notice of No Financial Management Certificate Notice Date 08/08/2018. (Admin.) (Entered: 08/09/2018) |
| 08/09/2018 | | <u>48</u> | Notice of Appointment of Trustee . Lori Lapin Jones added to the case. Filed by Office of the United States Trustee. (Black, Christine) (Entered: 08/09/2018) |
| 08/10/2018 | | | Statement Adjourning 341(a) Meeting of Creditors Filed by Lori Lapin Jones. 341(a) Meeting Adjourned to 10/5/2018 at 12:15 PM at Room 2579, 271–C Cadman Plaza East, Brooklyn, NY. (Jones, Lori) (Entered: 08/10/2018) |
| 08/10/2018 | | <u>49</u> | BNC Certificate of Mailing – Meeting of Creditors Notice Date 08/10/2018. (Admin.) (Entered: 08/11/2018) |
| 08/15/2018 | | <u>50</u> | Chapter 13 Trustee's Final Report and Account for a Converted Case. (Macco, Michael) (Entered: 08/15/2018) |
| 08/16/2018 | | <u>51</u> | Notice of Appeal to District Court. *Order Converting Chapter 13 to 7*. Fee Amount $298. Filed by H Bruce Bronson on behalf of Velappan Veeraswamy. (Related Doc # <u>44</u>) Appellant Designation due by 08/30/2018. Transmission of Designation Due by 09/17/2018. (Bronson, H) . (Entered: 08/16/2018) |
| 08/16/2018 | | | Receipt of Notice of Appeal(1–18–42030–cec) [appeal,ntcapl] ( 298.00) Filing Fee. Receipt number 17007984. Fee amount 298.00. (re: Doc# <u>51</u>) (U.S. Treasury) (Entered: 08/16/2018) |
| 08/17/2018 | | <u>52</u> | (DOCKETED IN ERROR – NOTICE NOT GENERATED) Notice to Parties of requirements, deadlines (RE: related document(s)<u>51</u> Notice of Appeal filed by Debtor Velappan Veeraswamy) (aac) Modified on 8/17/2018 (aac). (Entered: 08/17/2018) |
| 08/17/2018 | | <u>53</u> | Notice to Parties of requirements, deadlines (RE: related document(s)<u>51</u> Notice of Appeal filed by Debtor Velappan Veeraswamy) (aac) (Entered: 08/17/2018) |
| 08/17/2018 | | <u>54</u> | Transmittal of Notice of Appeal to District Court (RE: related document(s)<u>44</u> Order on Motion to Convert Case Chapter 13 to 7, <u>51</u> Notice of Appeal filed by Debtor Velappan Veeraswamy, <u>53</u> Notice to Parties BK) (aac) (Entered: 08/17/2018) |
| 08/19/2018 | | <u>55</u> | BNC Certificate of Mailing with Notice/Order Notice Date 08/19/2018. (Admin.) (Entered: 08/20/2018) |
| 08/22/2018 | | <u>56</u> | BNC Certificate of Mailing with Application/Notice/Order Notice Date 08/22/2018. (Admin.) (Entered: 08/23/2018) |
| 08/27/2018 | | <u>57</u> | Notice of Docketing Record on Appeal to District Court. Civil Action Number: 18–CV–04860 District Court Judge Ann M Donnelly assigned (RE: related document(s)<u>51</u> Notice of Appeal filed by Debtor Velappan Veeraswamy) (aac) (Entered: 08/27/2018) |
| 08/30/2018 | | <u>58</u> | |

| | | | |
|---|---|---|---|
| | | | Appellant Designation of Contents For Inclusion in Record On Appeal & Statement of Issues Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)51 Notice of Appeal filed by Debtor Velappan Veeraswamy). Appellee designation due by 09/13/2018. (Bronson, H) (Entered: 08/30/2018) |
| 08/30/2018 | | 59 | Affidavit/Certificate of Service *of Appellant Designation of Contents For Inclusion in Record On Appeal & Statement of Issues* Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)58 Appellant Designation & Statement of Issues filed by Debtor Velappan Veeraswamy) (Bronson, H) (Entered: 08/30/2018) |
| 09/12/2018 | | 60 | Transcript & Notice regarding the hearing held on 06/07/2018. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 16 Motion to Convert Case Chapter 13 to 7). Notice of Intent to Request Redaction Due By 09/19/2018. Redaction Request Due By 10/3/2018. Redacted Transcript Submission Due By 10/15/2018. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 12/11/2018 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (TypeWrite Word Processing Service) (Entered: 09/12/2018) |
| 09/12/2018 | | 61 | Transcript & Notice regarding the hearing held on 08/02/2018. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 32 Order to Schedule Hearing (Generic)). Notice of Intent to Request Redaction Due By 09/19/2018. Redaction Request Due By 10/3/2018. Redacted Transcript Submission Due By 10/15/2018. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 12/11/2018 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (TypeWrite Word Processing Service) (Entered: 09/12/2018) |
| 09/14/2018 | | 62 | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 09/14/2018. (Admin.) (Entered: 09/15/2018) |
| 09/14/2018 | | 63 | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 09/14/2018. (Admin.) (Entered: 09/15/2018) |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

        18-CV-04860-AMD

        CHAPTER 13

     VELAPPAN VEERASWAMY,

        Bankruptcy Case No.: 18-42030-CEC

                   Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X  **DESIGNATION**

VELAPPAN VEERASWAMY
               APPELLANT

   v.

KAREN VEERASWAMY
               RESPONDENT
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

### APPELLANT VELAPAN VEERASWAMY'S STATEMENT OF ISSUES AND DISIGNATION OF RECORD ON APPEAL FROM THE FINAL ORDER CONVERTING DEBTOR'S CHAPTER 13 CASE TO A CASE UNDER CHAPTER 7

Velapan Verraswamy ("Appellant"), by and through his counsel, respectfully submits this designation of record and issues in furtherance of his appeal under 28 U.S.C. §158(a) from the final order entered in the bankruptcy case filed in the Eastern District of New York case number 18-42030-CEC, at Docket No.44, entitled "Order Converting Case to Chapter 7"

In accordance with the requirements of Federal Rule of Bankruptcy Procedure 8009, Appellant respectfully submits the following statement of issues to be presented, and designation of record items to be included in the record on appeal in connection with this appeal.

### STATEMENT OF ISSUES ON APPEAL

1. Did the Bankruptcy Court err by converting Debtor's chapter 13 case to chapter 7 against Debtor's objection.

2. Did the Bankruptcy Court err by finding the Debtor's case was filed in bad faith.

3. Did the Bankruptcy Court err by failing to dismiss Debtor's chapter 13 case after such dismissal was requested by Debtor.

4. Did the Bankruptcy Court err by determining that the Debtor was required to pay domestic support obligations when the Supreme Court had determined that the amount of Debtor's payments and obligation would be determined at trial.

## <u>DESIGNATION OF RECORD ON APPEAL</u>

Appellant designates transcripts from hearings before this Court on:

a. June 7, 2018 (ordered);

b. August 2, 2018 (ordered);

c. Documents set forth on attachment **A** from the docket in Appellant's bankruptcy case;

d. Attached hereto as Exhibit **B** is a copy of the notice of appeal with the order being appealed from.

Dated: Harrison, NY
August 29, 2018

BRONSON LAW OFFICES P.C.

/s/ H. Bruce Bronson
H. Bruce Bronson, Esq.
480 Mamaroneck Ave.
Harrison, NY 10528
914-269-2530
hbbronson@bronsonlaw.net

10

# EXHIBIT A

DebtEd, LOSSMitig, CONVERTED, APPEAL

# U.S. Bankruptcy Court
## Eastern District of New York (Brooklyn)
### Bankruptcy Petition #: 1−18−42030−cec

|  |  |
|---|---|
| | *Date filed:* 04/12/2018 |
| Assigned to: Carla E. Craig | *Date converted:* 08/02/2018 |
| Chapter 7 | *341 meeting:* 10/05/2018 |
| Previous chapter 7 | *Deadline for objecting to discharge:* 11/06/2018 |
| Original chapter 13 | *Deadline for financial mgmt. course:* 11/06/2018 |
| Voluntary | |
| No asset | |

**Debtor**
**Velappan Veeraswamy**
8545 115th St
Fl 1
Richmond Hill, NY 11418−1733
QUEENS-NY
SSN / ITIN: xxx−xx−2014

represented by **H Bruce Bronson**
Bronson Law Offices PC
480 Mamaroneck Ave.
Harrison, NY 10528
877−385−7793
Fax : 888−908−6906
Email: ecf@bronsonlaw.net

*Trustee*
**Michael J. Macco**
2950 Express Drive South
Suite 109
Islandia, NY 11749
(631) 549−7900
*TERMINATED: 08/02/2018*
Email: ecf@maccosternlaw.com

*Trustee*
**Lori Lapin Jones**
Lori Lapin Jones PLLC
98 Cutter Mill Road
Suite 201 North
Great Neck, NY 11021
(516) 466−4110
Email: ljones@jonespllc.com

*U.S. Trustee*
**Office of the United States Trustee**
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
(212) 510−0500

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 04/12/2018 | | 1 | Chapter 13 Voluntary Petition for Individuals. Fee Amount $310 Filed by H Bruce Bronson on behalf of Velappan Veeraswamy Government Proof of Claim due by 10/9/2018. (Bronson, H) (Entered: 04/12/2018) |

1

| | | | |
|---|---|---|---|
| 04/12/2018 | | | Meeting of Creditors Chapter 13 & Appointment of Chapter 13 Trustee Michael J. Macco, with 341(a) Meeting to be held on 05/16/2018 at 10:00 AM at Room 2579, 271−C Cadman Plaza East, Brooklyn, NY . Proof of Claims due by 06/21/2018 . (Entered: 04/12/2018) |
| 04/12/2018 | | 2 | Certificate of Credit Counseling for Debtor Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (Bronson, H) (Entered: 04/12/2018) |
| 04/12/2018 | | 3 | Deficient Filing Chapter 13: Statement Pursuant to E.D.N.Y. LBR 1073−2b due by 4/12/2018. Last day to file Section 521(i)(1) documents is 5/29/2018. Pre−Petition Statement Pursuant to E.D.N.Y. LBR 2017−1 due by 4/26/2018. Chapter 13 Plan due by 4/26/2018. Copies of pay statements received from any employer due by 4/26/2018. Incomplete Filings due by 4/26/2018. (aac) (Entered: 04/13/2018) |
| 04/13/2018 | | | Receipt of Voluntary Petition (Chapter 13)(1−18−42030) [misc,volp13a] ( 310.00) Filing Fee. Receipt number 16555090. Fee amount 310.00. (re: Doc# 1) (U.S. Treasury) (Entered: 04/13/2018) |
| 04/15/2018 | | 4 | BNC Certificate of Mailing with Notice of Deficient Filing Notice Date 04/15/2018. (Admin.) (Entered: 04/16/2018) |
| 04/16/2018 | | 5 | Request for Notice − Chapter 13 Meeting of Creditors and Hearing on Confirmation. Confirmation hearing to be held on 6/21/2018 at 10:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. Last day to Object to Confirmation 6/21/2018.Objections to 523 due by 7/16/2018. (aac) (Entered: 04/16/2018) |
| 04/16/2018 | | 6 | Notice of Appearance and Request for Notice Filed by Mark L Cortegiano on behalf of Maspeth Federal Savings and Loan Association (Cortegiano, Mark) (Entered: 04/16/2018) |
| 04/17/2018 | | 7 | Notice of Appearance and Request for Notice Filed by Alexandros E Tsionis on behalf of JPMorgan Chase Bank, National Association (Attachments: # 1 Affidavit of Service) (Tsionis, Alexandros) (Entered: 04/17/2018) |
| 04/18/2018 | | 8 | BNC Certificate of Mailing with Notice of Electronic Filing Notice Date 04/18/2018. (Admin.) (Entered: 04/19/2018) |
| 04/18/2018 | | 9 | BNC Certificate of Mailing − Meeting of Creditors Notice Date 04/18/2018. (Admin.) (Entered: 04/19/2018) |
| 04/19/2018 | | 10 | Pre−Petition Statement Pursuant to E.D.N.Y LBR 2017−1 Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (Bronson, H) (Entered: 04/19/2018) |
| 04/19/2018 | | 11 | Statement 1073−2b Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (Bronson, H) (Entered: 04/19/2018) |
| 04/19/2018 | | 12 | Employee Income Records / Copies of Pay Statements Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)3 Deficient Filing Chapter 13) (Bronson, H) (Entered: 04/19/2018) |
| 04/19/2018 | | 13 | Chapter 13 Plan April 6, 2018 Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)3 Deficient Filing Chapter 13). Objections to Loss Mitigation due by 05/10/2018. (Bronson, H) (Entered: 04/19/2018) |

| | | | |
|---|---|---|---|
| 05/10/2018 | | <u>14</u> | Objection to Loss Mitigation Request Filed by Mark L Cortegiano on behalf of Maspeth Federal Savings and Loan Association (RE: related document(s)<u>13</u> Chapter 13 Plan Filed After Commencement filed by Debtor Velappan Veeraswamy) (Attachments: # <u>1</u> Exhibit Ex A – Affidavit of Service from first lawsuit # <u>2</u> Exhibit Ex B – Affidavit of Service from subsequent lawsuit # <u>3</u> Exhibit Ex C – Court Order) (Cortegiano, Mark) (Entered: 05/10/2018) |
| 05/11/2018 | | <u>15</u> | Objection to Confirmation of Plan Filed by Alexandros E Tsionis on behalf of JPMorgan Chase Bank, National Association (RE: related document(s)<u>13</u> Chapter 13 Plan Filed After Commencement filed by Debtor Velappan Veeraswamy). (Attachments: # <u>1</u> Affidavit of Service) (Tsionis, Alexandros) (Entered: 05/11/2018) |
| 05/14/2018 | | <u>16</u> | Motion to Convert Case Chapter 13 to 7 Fee Amount $ 25. Filed by Karen Veeraswamy. Hearing scheduled for 6/7/2018 at 11:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tmg) (Entered: 05/14/2018) |
| 05/14/2018 | | | Receipt of Conversion Fee Chapter 13 to Chapter 7 – $25.00. Receipt Number 320686. (TG) (admin) (Entered: 05/14/2018) |
| 05/17/2018 | | | Statement Adjourning 341(a) Meeting of Creditors. on 6/20/2018 at 10:00 AM at Room 2579, 271–C Cadman Plaza East, Brooklyn, NY. Debtor absent. (Macco, Michael) (Entered: 05/17/2018) |
| 05/18/2018 | | <u>17</u> | Order that the Debtor(s) and the Secured Creditor are directed to appear at a hearing on the Loss Mitigation Request (RE: related document(s)<u>13</u> Chapter 13 Plan Filed After Commencement filed by Debtor Velappan Veeraswamy, <u>14</u>). Signed on 5/18/2018. Hearing scheduled for 6/7/2018 at 02:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (aac) (Entered: 05/18/2018) |
| 05/18/2018 | | <u>18</u> | Objection to Confirmation of Plan Filed by Mark L Cortegiano on behalf of Maspeth Federal Savings and Loan Association (RE: related document(s)<u>13</u> Chapter 13 Plan Filed After Commencement filed by Debtor Velappan Veeraswamy). (Attachments: # <u>1</u> Exhibit Ex A – 1996 Mortgage and 1996 Note # <u>2</u> Exhibit Ex B – 2000 Mortgage and 2000 Note # <u>3</u> Exhibit Ex C – 2002 Maspeth Mortgage and Note # <u>4</u> Exhibit Ex D – Consolidation Agreement # <u>5</u> Exhibit Ex E – summons and complaint # <u>6</u> Exhibit Ex F – recorded judgment of foreclosure and sale # <u>7</u> Exhibit Ex G – Maspeths proof of claim # <u>8</u> Exhibit Ex H – Affidavit of Service # <u>9</u> Exhibit Ex I – Affidavit of Service # <u>10</u> Exhibit Ex J – Petition and Schedules # <u>11</u> Exhibit Ex K – Proof of Claim) (Cortegiano, Mark) (Entered: 05/18/2018) |
| 05/20/2018 | | <u>19</u> | BNC Certificate of Mailing with Application/Notice/Order Notice Date 05/20/2018. (Admin.) (Entered: 05/21/2018) |
| 05/25/2018 | | <u>20</u> | Affidavit/Certificate of Service Filed by Karen Veeraswamy (RE: related document(s)<u>16</u> Motion to Convert Case Chapter 13 to 7 filed by Creditor Karen Veeraswamy) (tmg) (Entered: 05/25/2018) |
| 05/30/2018 | | <u>21</u> | Notice of Appearance and Request for Notice Filed by Kevin R Toole on behalf of Deutsche Bank National Trust Company (Toole, Kevin) (Entered: 05/30/2018) |
| 05/30/2018 | | <u>22</u> | Objection to Confirmation of Plan Filed by Barbara Whipple on behalf of Deutsche Bank National Trust Company (RE: related document(s)<u>13</u> Chapter 13 Plan Filed After Commencement filed by Debtor Velappan |

| | | | |
|---|---|---|---|
| | | | Veeraswamy). (Whipple, Barbara) (Entered: 05/30/2018) |
| 06/04/2018 | | 23 | Chapter 13 Trustee's Motion to Dismiss Case. Hearing scheduled for 6/21/2018 at 10:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (Macco, Michael) (Entered: 06/04/2018) |
| 06/05/2018 | | 24 | Reply *to Motion to Convert Case to Chapter 7* Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)16 Motion to Convert Case Chapter 13 to 7 filed by Creditor Karen Veeraswamy) (Attachments: # 1 Exhibit A−Decision/Order # 2 Exhibit B−Declaration) (Bronson, H) (Entered: 06/05/2018) |
| 06/05/2018 | | 25 | Affidavit/Certificate of Service *of Reply to Motion by Karen Veeraswamy to Convert Chapter 13 to Chapter 7* Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)24 Reply filed by Debtor Velappan Veeraswamy) (Bronson, H) (Entered: 06/05/2018) |
| 06/06/2018 | | 26 | Letter of Adjournment: Hearing rescheduled from 6/7/2018 at 2:00 PM to 7/17/2018 at 11:00 AM Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)17 Order to Schedule Hearing (Generic)) (Bronson, H) (Entered: 06/06/2018) |
| 06/06/2018 | | 27 | Reply *To Objection* Filed by Karen Veeraswamy (RE: related document(s)16 Motion to Convert Case Chapter 13 to 7 filed by Creditor Karen Veeraswamy, 24 Reply filed by Debtor Velappan Veeraswamy) (cns) (Entered: 06/06/2018) |
| 06/07/2018 | | | Hearing Held and Adjourned; (related document(s): 16 Motion to Convert Case Chapter 13 to 7) Appearances: H Bruce Bronson Representing Debtor, Karen Veeraswamy Creditor, Velappan Veeraswamy Debtor − Hearing scheduled for 08/02/2018 at 10:30 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY − Court to issue scheduling order (tleonard) (Entered: 06/11/2018) |
| 06/07/2018 | | | Adjourned Without Hearing (related document(s): 17 Order that the Debtor(s) and the Secured Creditor are directed to appear at a hearing on the Loss Mitigation Request (RE: related document(s)13 Chapter 13 Plan Filed After Commencement.) Schedule hearing to be held on 07/17/2018 at 11:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tleonard) (Entered: 07/10/2018) |
| 06/11/2018 | | 28 | Reply *To Motion* Filed by Karen Veeraswamy (RE: related document(s)23 Chapter 13 Trustee's Motion to Dismiss Case) (cns) (Entered: 06/11/2018) |
| 06/12/2018 | | 29 | Transcript & Notice regarding the hearing held on 06/07/2018. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 16 Motion to Convert Case Chapter 13 to 7). Notice of Intent to Request Redaction Due By 06/19/2018. Redaction Request Due By 07/3/2018. Redacted Transcript Submission Due By 07/13/2018. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 09/10/2018 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (AAA Write It Right Transcription) (Entered: 06/12/2018) |
| 06/15/2018 | | 30 | BNC Certificate of Mailing with Notice of Filing of Official Transcript (BK) Notice Date 06/15/2018. (Admin.) (Entered: 06/16/2018) |

| | | | |
|---|---|---|---|
| 06/20/2018 | | 31 | Reply *in support of Trustees Motion to Dismiss* Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)23 Chapter 13 Trustee's Motion to Dismiss Case) (Bronson, H) (Entered: 06/20/2018) |
| 06/20/2018 | | 32 | Order Scheduling Evidentiary Hearing on whether the Debtor filed this bankruptcy case in bad faith (RE: related document(s)16 Motion to Convert Case Chapter 13 to 7 filed by Creditor Karen Veeraswamy). Signed on 6/20/2018. Hearing scheduled for 8/2/2018 at 10:30 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (aac) (Entered: 06/21/2018) |
| 06/21/2018 | | | Chapter 13 Meeting of Creditors Held and Closed. (Macco, Michael) (Entered: 06/21/2018) |
| 06/21/2018 | | | Hearing Held and Adjourned; (related document(s): 23 Chapter 13 Trustee's Motion to Dismiss Case) − Appearances: Victoria Lehning Representing Debtor, Michael J. Macco Trustee, Rachel Blumenfeld Representing Creditor, Karen Veeraswamy Creditor − Hearing scheduled for 08/16/2018 at 10:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tleonard) (Entered: 07/05/2018) |
| 06/21/2018 | | | Confirmation Hearing Held and Adjourned; (related document(s): 5 Request for Notice − Meeting of Creditors and Hearing on Confirmation Chapter 13) − Appearances: Victoria Lehning Representing Debtor, Michael J. Macco Trustee, Rachel Blumenfeld Representing Creditor, Karen Veeraswamy Creditor − Confirmation hearing to be held on 08/16/2018 at 10:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tleonard) (Entered: 07/05/2018) |
| 06/23/2018 | | 33 | BNC Certificate of Mailing with Application/Notice/Order Notice Date 06/23/2018. (Admin.) (Entered: 06/24/2018) |
| 07/11/2018 | | 34 | Affirmation in Support Filed by Karen Veeraswamy (RE: related document(s)16 Motion to Convert Case Chapter 13 to 7 filed by Creditor Karen Veeraswamy) (tmg) (Entered: 07/11/2018) |
| 07/16/2018 | | 35 | Loss Mitigation Status Report Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (related document(s)13,17 Order to Schedule Hearing (Generic)) (Bronson, H) Modified on 7/23/2018 (vab). (Entered: 07/16/2018) |
| 07/16/2018 | | 36 | Loss Mitigation Final Report regarding Account No.: 0704; Loan Disposition: NO AGREEMENT HAS BEEN REACHED Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)17 Order to Schedule Hearing (Generic)) (Bronson, H) (Entered: 07/16/2018) |
| 07/16/2018 | | 37 | Letter *withdrawing request for loss mitigation with Maspeth Savings and Loan Association* Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (related document(s)13, 17 Order to Schedule Hearing (Generic)) (Bronson, H) Modified on 7/23/2018 (vab). (Entered: 07/16/2018) |
| 07/16/2018 | | 38 | Letter of Adjournment: Hearing rescheduled from 7/17/2018 at 11:00 AM to August 2, 2018 at 10:30 AM Filed by Velappan Veeraswamy related document(s)17). (Bronson, H). Related document(s) 13 Chapter 13 Plan Filed After Commencement filed by Debtor Velappan Veeraswamy. Modified on 7/27/2018 to create a relationship to document 13(fmr). (Entered: 07/16/2018) |

Case 1-18-42030-cec    Doc 54    Filed 08/17/18    Entered 08/17/18 14:57:58

| | | | |
|---|---|---|---|
| 07/17/2018 | | | Marked Off without hearing (related document(s): 17 Order that the Debtor(s) and the Secured Creditor are directed to appear at a hearing on the Loss Mitigation Request (RE: related document(s) 13 Chapter 13 Plan Filed After Commencement.) (tleonard) (Entered: 07/18/2018) |
| 07/25/2018 | | 39 | Amended Schedule(s), Required Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1009-1(a) Schedule E/F, : Statment of Financial Affairs Fee Amount $31 Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (Bronson, H) (Entered: 07/25/2018) |
| 07/25/2018 | | | Receipt of Amended Schedule(s), Required Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1009-1(a) (Fee Due)(1-18-42030-cec) [misc,aschsfa] ( 31.00) Filing Fee. Receipt number 16925203. Fee amount 31.00. (re: Doc# 39) (U.S. Treasury) (Entered: 07/25/2018) |
| 07/25/2018 | | 40 | Affidavit/Certificate of Service *for Amended Schedule(s), Required Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1009-1(a)* Filed by H Bruce Bronson on behalf of Velappan Veeraswamy (RE: related document(s)39 Amended Schedule(s), Required Statement(s) and Affidavit Pursuant to E.D.N.Y. LBR 1009-1(a) (Fee Due) filed by Debtor Velappan Veeraswamy) (Bronson, H) (Entered: 07/25/2018) |
| 07/30/2018 | | 41 | Joint Pre-Trial Order Filed by Karen Veeraswamy (Attachments: # 1 Exhibit 1-4 # 2 Exhibit 5-10 # 3 Affidavit of Service) (Related Documents 32) (cjm) (Entered: 07/30/2018) |
| 07/30/2018 | | 42 | Letter Filed by Karen Veeraswamy (related document(s)32 Order to Schedule Hearing, 41 Joint Pre-Trial Order) (cjm) (Entered: 07/30/2018) |
| 07/31/2018 | | 43 | Joint Pre-Trial Order(RE: related document(s)32 Order to Schedule Hearing (Generic)). Signed on 7/31/2018 (aac) (Entered: 08/01/2018) |
| 08/02/2018 | | | Hearing Held; (related document(s): 16 Motion to Convert Case Chapter 13 to 7 filed by Karen Veeraswamy) Appearances: H Bruce Bronson Representing Debtor, Karen Veeraswamy Creditor, Velappan Veeraswamy Debtor - Granted; Court to Issue Order (tleonard) (Entered: 08/03/2018) |
| 08/02/2018 | | | Hearing Held; (related document(s): 32 Order Scheduling Evidentiary Hearing on whether the Debtor filed this bankruptcy case in bad faith (RE: related document(s) 16 Motion to Convert Case Chapter 13 to 7). - Appearances: H Bruce Bronson Representing Debtor, Karen Veeraswamy Creditor, Velappan Veeraswamy Debtor - Case converted to chapter 7 (tleonard) (Entered: 08/03/2018) |
| 08/02/2018 | | 44 | Order Granting Motion to Convert Case Chapter 13 to 7 (Related Doc # 16) Trustee Michael J. Macco removed from the case. Signed on 8/2/2018. (aac) (Entered: 08/03/2018) |
| 08/05/2018 | | 45 | Notice of No Financial Management Certificate before Discharge for Debtor(s). (fincert7) (Entered: 08/05/2018) |
| 08/08/2018 | | | Conversion Utility (aac) (Entered: 08/08/2018) |
| 08/08/2018 | | | Meeting of Creditors 341(a) meeting to be held on 9/7/2018 at 10:30 AM at Room 2579, 271-C Cadman Plaza East, Brooklyn, NY. Financial Management Certificate due by 11/6/2018. Last day to oppose discharge or dischargeability is 11/6/2018. (aac) (Entered: 08/08/2018) |

| | | | |
|---|---|---|---|
| 08/08/2018 | | <u>46</u> | Request for Notice − Meeting of Creditors Chapter 7 No Asset (aac) (Entered: 08/08/2018) |
| 08/08/2018 | | <u>47</u> | BNC Certificate of Mailing with Notice of No Financial Management Certificate Notice Date 08/08/2018. (Admin.) (Entered: 08/09/2018) |
| 08/09/2018 | | <u>48</u> | Notice of Appointment of Trustee . Lori Lapin Jones added to the case. Filed by Office of the United States Trustee. (Black, Christine) (Entered: 08/09/2018) |
| 08/10/2018 | | | Statement Adjourning 341(a) Meeting of Creditors Filed by Lori Lapin Jones. 341(a) Meeting Adjourned to 10/5/2018 at 12:15 PM at Room 2579, 271−C Cadman Plaza East, Brooklyn, NY. (Jones, Lori) (Entered: 08/10/2018) |
| 08/10/2018 | | <u>49</u> | BNC Certificate of Mailing − Meeting of Creditors Notice Date 08/10/2018. (Admin.) (Entered: 08/11/2018) |
| 08/15/2018 | | <u>50</u> | Chapter 13 Trustee's Final Report and Account for a Converted Case. (Macco, Michael) (Entered: 08/15/2018) |
| 08/16/2018 | | <u>51</u> | Notice of Appeal to District Court. *Order Converting Chapter 13 to 7.* Fee Amount $298. Filed by H Bruce Bronson on behalf of Velappan Veeraswamy. (Related Doc # <u>44</u>) Appellant Designation due by 08/30/2018. Transmission of Designation Due by 09/17/2018. (Bronson, H) . (Entered: 08/16/2018) |
| 08/16/2018 | | | Receipt of Notice of Appeal(1−18−42030−cec) [appeal,ntcapl] ( 298.00) Filing Fee. Receipt number 17007984. Fee amount 298.00. (re: Doc# <u>51</u>) (U.S. Treasury) (Entered: 08/16/2018) |
| 08/17/2018 | | <u>52</u> | (DOCKETED IN ERROR − NOTICE NOT GENERATED) Notice to Parties of requirements, deadlines (RE: related document(s)<u>51</u> Notice of Appeal filed by Debtor Velappan Veeraswamy) (aac) Modified on 8/17/2018 (aac). (Entered: 08/17/2018) |
| 08/17/2018 | | <u>53</u> | Notice to Parties of requirements, deadlines (RE: related document(s)<u>51</u> Notice of Appeal filed by Debtor Velappan Veeraswamy) (aac) (Entered: 08/17/2018) |

Case 1-18-42030-cec    Doc 54    Filed 08/30/18    Entered 08/30/18 17:15:18

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

        VELAPPAN VEERASWAMY,

CHAPTER 11

Case No.: 18-42030-CEC

Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. **Name(s) of the appellant(s):**

   Velappan Veeraswamy

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

| For appeals in an adversary proceeding. | For appeals in a bankruptcy case and not in an adversary proceeding. |
|---|---|
| ☐ Plaintiff | ✓ Debtor |
| ☐ Defendant | ☐ Creditor |
| ☐ Other (describe)_____ | ☐ Trustee |
| | ☐ Other (describe)_____ |

### Part 2: Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from: ORDER CONVERTING CASE TO CHAPTER 7. THE ORDER IS ATTACHED HERETO.

2. State the date on which the judgment, order, or decree was entered: August 2, 2018

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

*Pro Se:*
Karen Veeraswamy
PO BOX 863695
Glendale, NY 11386

Karen Veeraswamy
6337 Forest Avenue, Apt. 1R
Ridgewood, NY 11385

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. §158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

✓    Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel

## Part 5: Sign below

*H. Bruce Bronson*                                    Date:    August 16, 2018

H. Bruce Bronson, Esq.
480 Mamaroneck Ave.
Harrison, NY 10528
914-269-2530
hbbronson@bronsonlaw.net

UNITED STATED BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re

                                     Chapter 13

Velappan Veeraswamy,

                                     Case No. 18-42030-CEC

                 Debtor.
---------------------------------------------------------X

## ORDER CONVERTING CASE TO CHAPTER 7

        WHEREAS, on April 12, 2018, Velappan Veeraswamy (the "Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code; and

        WHEREAS, on May 14, 2018, Karen Veeraswamy ("Mrs. Veeraswamy") filed a motion to convert this case to chapter 7 pursuant to 11 U.S.C. § 1307(c)(1) and (11) (the "Motion to Convert"), alleging that the Debtor has not paid domestic support obligations and asserting that liquidation of the Debtor's assets is in the best interests of creditors and the estate; and

        WHEREAS, 11 U.S.C. § 1307(c) provides, in part:

        [O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—
        (1) unreasonable delay by the debtor that is prejudicial to creditors;
        * * *
        (11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

        AND WHEREAS, at the June 7, 2018 hearing on the Motion to Convert, the Debtor requested dismissal of the case pursuant to 11 U.S.C. § 1307(a); and

        WHEREAS, "a debtor does not have an absolute right to voluntarily dismiss [his] case when bad faith is established," In re Armstrong, 408 B.R. 559, 569 (Bankr. E.D.N.Y. 2009), as amended (July 20, 2009); and

        WHEREAS, is it undisputed that the "Debtor did not pay any domestic support obligation that first became payable after the date of the filing of the petition" (Joint Pre-Trial Order ¶ 5, ECF No. 43); and

        WHEREAS, on August 2, 2018, an evidentiary hearing was held on whether the Debtor filed this case in bad faith; and

WHEREAS, at the conclusion of the evidentiary hearing, the Court determined that this case was filed in bad faith based upon the Debtor's failure to list the domestic support obligation owed to Mrs. Veeraswamy on Schedule E/F or to list the pending matrimonial action on the Schedule of Financial Affairs; and

WHEREAS, the Court determined that the conversion of this case is in the best interests of creditors and the estate, because conversion, rather than dismissal, has a higher likelihood of preserving any equity in the assets of the estate for distribution to creditors;

NOW, THEREFORE, it is

ORDERED, that pursuant to 11 U.S.C. § 1307(c), this case is converted to one under chapter 7 of the Bankruptcy Code.

Dated: Brooklyn, New York
August 2, 2018

Carla E. Craig
United States Bankruptcy Judge

JS 11C EDNY (Rev.3 9 2018)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Appealant:

**Velappan Veeraswamy**

## DEFENDANTS

Respondent:

**Karen Veeraswamy**

**(b)** Attorneys *(Firm Name, Address, and Telephone Number)*
H. Bruce Bronson, Esq.
**Bronson Law Offices, P.C., 480 Mamaroneck Ave., Harrison, NY 10528**

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITING A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTION STATUTES UNLESS DIVERSITY)

**11 U.S.C. section 1307(c)-Case wrongfully converted to Chapter 7**

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [x] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | Act | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | [ ] 720 Labor/Management | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | Relations | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 740 Railway Labor Act | | [ ] 893 Environmental Matters |
| | Medical Malpractice | | [ ] 751 Family and Medical | | [ ] 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | **FEDERAL TAX SUITS** | Act |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff | [ ] 896 Arbitration |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 791 Employee Retirement | or Defendant) | [ ] 899 Administrative Procedure |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | Income Security Act | [ ] 871 IRS—Third Party | Act/Review or Appeal of |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | | [ ] 950 Constitutionality of |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | |
| | Other | [ ] 550 Civil Rights | Actions | | |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*

JUDGE  **Craig**

DOCKET NUMBER  **18-42030-CEC**

DATE
**August 16, 2018**

SIGNATURE OF ATTORNEY OF RECORD
*H. Bruce Bronson*

## FOR OFFICE USE ONLY

RECEIPT #           AMOUNT           APPLYING IFP           JUDGE           MAG. JUDGE

24

**PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)**

Appellant:
Velappan Veeraswamy
8545 115th Street
Richmond Hill, NY 11418

**DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)**

Karen Veeraswamy
PO BOX 863695
Glendale, NY 11386

**DEFENDANT(S) ADDRESS UNKNOWN**
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a)
provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or
because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to
the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the
civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the
power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending
before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.)   Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?
      ☐ Yes   ☑ No

2.)   If you answered "no" above:
      a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk
      County?   ☐ Yes   ☑ No

      b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?
      ☑ Yes   ☐ No

      c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:
      _____.

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau
or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in
Nassau or Suffolk County?   ☐ Yes   ☑ No
      (*Note: A corporation shall be considered a resident of the County in which it has the most significant contacts*).

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☑ Yes      ☐ No

Are you currently the subject of any disciplinary action(s) in this or any other state or federal court?

☐ Yes  (*If yes, please explain*)      ☑ No

I certify the accuracy of all information provided above.
Signature: _Velappan Veeraswamy_

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re:

                              Case No.18-42030-CEC

Velappan Veeraswamy

                              Chapter 13

                     Debtor.

-----------------------------------------------------------x

VELAPPAN VEERASWAMY,

                              18-CV-04860-AMD

                   Appellant

      v.

KAREN VEERASWAMY,

                   Respondent

-----------------------------------------------------------x

## <u>Certificate of Service</u>

       The undersigned does hereby declare under penalty of perjury of the laws of the United States that on August 30, 2018, I caused true and correct copies of the "**Appellant Velappan Veeraswamy's Statement of Issues and Designation of Record of Appeal from the Final Order Converting Debtor's Chapter 13 Case to a Case under Chapter 7**" on the addresses listed below via USPS First Class Mail and that it is true and correct to the best of my knowledge, information, and belief.

Karen Veeraswamy
PO Box 863695
Glendale, NY 11386

Karen Veeraswamy
6337 Forest Avenue, Apt 1R
Ridgewood, New York 11385


Dated: Harrison, NY
August 30, 2018

                          _/s/ Chanel P. Orgill
                         Chanel P. Orgill, Paralegal
                         Bronson Law Offices, P.C.
                         480 Mamaroneck Avenue
                         Harrison, NY 10528
                         Telephone: 877-385-7793
                         Fax: 888-908-6906

1                    UNITED STATES BANKRUPTCY COURT
                      EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                         : 18-42030 (CEC)
4    In re:                              :
                                         : 271-C Cadman Plaza East
5        VELAPPAN VEERASWAMY,            : Brooklyn, New York 11201
                                         :
6                    Debtor.             : June 7, 2018
     ------------------------------------X
7
         TRANSCRIPT OF [16] MOTION TO CONVERT CASE CHAPTER 13 TO 7
8                 BEFORE THE HONORABLE CARLA E. CRAIG
                    UNITED STATES BANKRUPTCY JUDGE
9               THURSDAY, JUNE 7, 2018; 11:57 A.M.
                        BROOKLYN, NEW YORK
10

11   APPEARANCES:

12

13   For the Debtor:            H. BRUCE BRONSON, ESQ.
                                Bronson Law Offices PC2NW
14                              480 Mamaroneck Avenue
                                Harrison, New York 10528
15

16   Creditor:                  KAREN VEERASWAMY
                                P.O. Box 863695
17                              Ridgewood, New York 11386

18

19

20   Court Transcriber:         SHARI RIEMER, CET-805
                                TypeWrite Word Processing Service
                                211 N. Milton Road
21                              Saratoga Springs, New York 12866

22

23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

2

1  (Proceedings began at 11:57 a.m.)

2          THE CLERK:  No. 7 on the calendar, <u>Velappan</u>

3  <u>Veeraswamy</u>, Case 18-42030.

4          THE COURT:  This is the Veeraswamy case.

5          THE CLERK:  State your names for the record, please.

6          MR. BRONSON:  Good morning, Your Honor.  Bruce

7  Bronson on behalf of the debtor Mr. Veeraswamy.

8          MS. VEERASWAMY:  Karen Veeraswamy, pro se.

9          MR. BRONSON:  Mr. Veeraswamy is here as well today.

10         THE COURT:  All right.  Well, my -- it seems to me

11 that this case ought to be converted to a Chapter 7 because it

12 seems pretty apparent on the face of it that this case was

13 filed in bad faith to avoid the obligation to pay Mrs.

14 Veeraswamy and the idea that you think you don't have to pay

15 the child support and maintenance that is owed under the order

16 that was entered by the state court pending trial is not

17 supported by the record that I see in this case.

18         MR. BRONSON:  Your Honor, if that's the case we'd

19 like the opportunity to have this case dismissed.  There's

20 considerable property here.  It really should be determined --

21 that part of it should be determined in state court.

22         THE COURT:  Well, it can be -- it can be determined

23 in state court but in the meantime we can have a Chapter 7

24 trustee sell the house and get the equity that -- so that it

25 can be distributed between the two parties the way the state

3

1    court directs.

2        MR. BRONSON:  Your Honor, again, we'd like to then

3    exercise our right to have the case dismissed rather than have

4    it converted.

5        THE COURT:  So why -- I would note that the state

6    court had set down a trial for September or October.

7        MR. BRONSON:  Yes, Your Honor.

8        THE COURT:  It didn't go forward, did it?

9        MR. BRONSON:  It started to go forward.  Mr.

10   Veeraswamy maybe can speak to that.  I don't --

11       THE COURT:  I'm not interested in hearing from Mr.

12   Veeraswamy.

13       MR. BRONSON:  And, Your Honor, Mr. Veeraswamy in his

14   prior Chapter 11 case, you know, he did everything he was

15   supposed to do in that case and this -- this was filed not to

16   have anything to do with the domestic support obligations.

17       THE COURT:  You didn't -- you made no provision

18   for -- you didn't even list Ms. Veeraswamy as a creditor.

19       MR. BRONSON:  I did -- I listed her as a party that

20   got notice.  I mean she did get notice.

21       THE COURT:  You didn't list her as a creditor.

22   She's obviously a creditor.  And you made no provision for

23   payment of her -- when you say -- when there's an inquiry in

24   the plan, do you have any domestic support obligations, you

25   say no.  The box for no is checked.  How is that good faith?

4

1          MR. BRONSON:  Because, Your Honor, the order of the

2   state court judge says to let everything --

3          THE COURT:  No, it does not say that.  It says

4   there's going to be a trial.  It doesn't -- but it doesn't

5   stay the prior order and it doesn't mean that -- the fact that

6   there's -- even if she had stayed it, stayed his obligation

7   pending a trial it doesn't mean there's no obligation.  That

8   is just -- that is -- that seems to be an attempt to mislead

9   the trustee and the court into thinking that this is not a

10  case that involves a domestic support obligation which it

11  patently is.

12          And in the meantime you're not in -- it's six

13  months, eight, ten months have gone by since the trial court

14  judge set down a trial in the divorce action.  She obviously

15  contemplated that when she issued the order in September that

16  there would be a trial beginning immediately and there wasn't.

17  It didn't happen and now you're in bankruptcy court.

18          MR. BRONSON:  Your Honor, all I'm going to say is

19  that --

20          THE COURT:  Is the trial -- is there a trial

21  scheduled?

22          MR. BRONSON:  Yes, I believe it starts shortly

23  again.

24                    [Pause in proceedings.]

25          MR. BRONSON:  It was adjourned for whatever reason.

5

 1  I don't know why but I believe it began and now it's going to

 2  be back on.

 3          THE COURT:  Well, if I -- the only thing that I am

 4  unsure about here is whether I can dismiss this case --

 5  convert this case rather than allowing the debtor to dismiss

 6  it or maybe if I dismiss it it should be with prejudice based

 7  upon the debtor's bad faith in the -- the bad faith that's

 8  exhibited in the way that this case has been presented.  That

 9  might be the more appropriate way to proceed.

10          MR. BRONSON:  Your Honor, this is a case that has

11  substantial assets in it.  The reason it was filed --

12          THE COURT:  Substantial assets.  Little income.  I

13  mean that's part of the problem.  Little income.

14          MR. BRONSON:  You're absolutely correct, Your Honor,

15  and the reason it was filed was for -- because we were on the

16  steps -- we were about to have one of the houses sold.

17          THE COURT:  Which Mrs. Veeraswamy -- which would

18  have benefitted Mrs. Veeraswamy and potentially paid some of

19  the arrears and the trial support that he owes.

20          MS. VEERASWAMY:  Your Honor --

21          MR. BRONSON:  Except that those sales are always 10

22  to 20 percent under what --

23          THE COURT:  But you're not -- so that's why it would

24  be -- make sense to convert this.

25          MS. VEERASWAMY:  Your Honor, if I could just add

6

1  that when they did get a final judgment for foreclosure and

2  sale that Mr. Bronson made agreement with the bank to have a

3  grace period of nine months before they filed for option for

4  foreclosure and sale.  I made a motion in the court to enforce

5  that sale.  I've made previous motions to try to appoint

6  receivers to sell the property.

7         Our whole divorce case has been about Mr. Veeraswamy

8  not being truthful.  He hasn't come with any disclosure.  He

9  is precluded at trial from doing so.  And if you look at the

10 exhibits on Page 4 of his hidden assets he had an offshore

11 account in excess of $1.3 million which he and his attorney

12 did not even disclose to the court.  He has substantial assets

13 that he hasn't disclosed.

14        THE COURT:  So --

15        MR. BRONSON:  Your Honor, under -- I don't want to

16 argue about this.  Under 13 -- of course it's up to you but

17 under 1307(b) I believe we can ask for the case to be

18 dismissed.

19        THE COURT:  Well, but there's at least one case in

20 this district that -- so the case law on the question of

21 whether a case can be dis -- converted rather than dismissed

22 where a debtor is seeking dismissal -- one case -- the first

23 case that in this district that addressed the subject was

24 Barbieri where Judge Swain when she was a bankruptcy judge

25 sitting on this court found that because of that debtor's bad

7

1    faith that it was more appropriate to convert that case than

2    to dismiss it.  That case went up to the Second Circuit where

3    they -- that was reversed and the court found that the debtor

4    did have the right to dismiss the case notwithstanding bad

5    faith.

6         Now, since that time the Supreme Court has issued a

7    decision in Marrama v. Citizens of Massachusetts in 2007, and

8    one judge of this court, Judge Grossman, has found that

9    Marrama changes the law in this regard and that the Supreme

10   Court has effectively overruled Barbieri by holding that a

11   Chapter 13 debtor's bad faith conduct can preclude the

12   debtor's voluntary dismissal as of right.  So it seems like

13   that is a possibility here.

14        But the only question I have --

15                     [Pause in proceedings.]

16        THE COURT:  The only question in my mind is whether

17   I should have a hearing on this to look at the facts, get a

18   better factual record to make a determination of bad faith and

19   that's my -- I'm inclined in that direction because I will

20   convert this case if I find that there was -- that there was

21   bad faith, and on the face of it it appears to me that there

22   is -- there are multiple indicia of bad faith in the way that

23   this case was filed.

24        MR. BRONSON:  Your Honor, this was not -- this --

25        THE COURT:  In the filing of it, the timing of it,

8

1  in the -- the divorce context and the significant omissions

2  from the filing.

3        MS. VEERASWAMY:  And, Your Honor --

4        MR. BRONSON:  But, Your Honor, that's -- that's my

5  fault.  We were doing this --

6        THE COURT:  I don't buy that.

7        MR. BRONSON:  I understand.

8        THE COURT:  I do not buy that and I don't care

9  because -- and ultimately he bears the responsibility.  If you

10  made a mistake he bears the responsibility and if you think

11  that -- thought that this was a good way to proceed he's --

12  unfortunately he's going to pay the price.

13        MR. BRONSON:  I thought it was a good way to stop

14  the sale and to be able to try to work something out.

15        THE COURT:  You thought it was a good idea not to

16  indicate that he has any domestic support obligations?

17        MR. BRONSON:  No, Your Honor, not at all.

18        THE COURT:  You didn't even list Mrs. Veeraswamy as

19  a creditor.  You know she's a creditor.  Did the idea that --

20  she may be a disputed creditor but she's clearly a creditor.

21  You didn't put her on any schedule.

22        MR. BRONSON:  But, Your Honor, she filed a proof of

23  claim.

24        THE COURT:  I don't care.  That's ridiculous.  That

25  strikes me -- she filed a proof of claim.  That doesn't mean

9

that you -- you were not seeking to disguise the fact of
her -- this obligation which is a very significant obligation,
first priority obligation.  In fact, not a -- the idea you
think you're going to modify the mortgage and pay that out.
You have ongoing domestic support obligations which are first
priority.  Every penny he pays into that plan has to go first
to her until she's paid in full, and you're going to modify
the mortgage?

        MR. BRONSON:  But, Your Honor, this is -- this case
is -- it's a little different than a normal case.  There's
$1,400,000 being held by Mrs. Veeraswamy's attorney.

        THE COURT:  And that is pending I guess the decision
of the state court in the trial that hasn't happened yet.

        MR. BRONSON:  And that money should solve all of
these issues.

        MS. VEERASWAMY:  Your Honor, I would --

        THE COURT:  Well, then why -- then why did you feel
like you needed to -- that may be but you can't -- you can't
manipulate the bankruptcy process to achieve the end of
staying the foreclosure and the -- make the argument to the
state court judge in the foreclosure action.

        MR. BRONSON:  Your Honor, that's what I'm asking --

        THE COURT:  And you may have done so.

        MR. BRONSON:  What I'm asking to do now is to have
the case dismissed.

10

1          THE COURT:  No, I'm not -- I'm not going to dismiss

2    this case.  I'm going to set it down for a trial so that I can

3    determine whether in fact it was filed in bad faith and I will

4    convert the case if I find that it was.

5          MS. VEERASWAMY:  Thank you, Your Honor.

6          THE COURT:  So I'm going to set this down for an

7    evidentiary hearing.  In the meantime he better start paying

8    her child support and maintenance under the order on an

9    ongoing basis pending the trial or -- he also needs to get

10   current on his post petition child support maintenance

11   obligations to her which he's clearly obligated to pay.  So

12   you better -- he better pay -- pay up those arrears in a big

13   hurry pending the trial.

14         MR. BRONSON:  I understand, Your Honor.  I don't

15   know that there's money to do that with but yes --

16         THE COURT:  That's unfortunate.  He thinks there's

17   money --

18         MR. BRONSON:  And in the trans --

19         THE COURT:  He thinks there's money to pay the

20   Chapter 13 trustee, right?  He's paying something to the

21   Chapter 13 trustee or hasn't he been paying the trustee?

22         MR. BRONSON:  He hasn't paid the trustee yet.  He's

23   going to.

24         THE COURT:  Okay.  Well, let him use that money to

25   pay Mrs. Veeraswamy then because one way or another this case

1   is not staying in 13.  So there's no point in giving money to

2   the trustee.  Give it to Mrs. Veeraswamy and the only thing I

3   have to decide is whether this case is converted or dismissed

4   or dismissed perhaps with prejudice.  That would be the other

5   option.  Convert or dismiss with prejudice.

6           MR. BRONSON:  Your Honor, that's fine.  This is not

7   a case where there are many unsecured creditors at all.  It's

8   a very small pool.

9           THE COURT:  Well, there is Mrs. Veeraswamy who is a

10  very significant unsecured creditor.  Indeed the largest by

11  multiples of many.

12          THE COURT:  Yes, Your Honor, and there's a lot of

13  money that's there --

14          THE COURT:  Well, there's a lot of equity in both of

15  these properties too.

16          MR. BRONSON:  Yes, there is.

17          THE COURT:  There's -- the idea that he's seeking to

18  modify the mortgage -- the mortgage which is a very -- there's

19  modest arrears on a very -- on a small mortgage and he's not

20  paying -- not paying her, not paying the mortgage.  Can't sell

21  -- sell one of the properties and use that -- use the equity

22  to make up the difference.

23          MR. BRONSON:  But, Your Honor, that may have been

24  one of the things that we tried to do in Chapter 13.

25          THE COURT:  Not only did you not propose that, you

12

1  proposed a frankly preposterous mortgage modification and then

2  made no provision whatsoever for the arrears on the other

3  property.  None.  None.  You didn't even mention them.  You

4  put zero down.  I mean that's -- that makes it -- and I guess

5  the reason is that if you had -- if you actually accounted for

6  the debt that you had he clearly couldn't afford it.  So all

7  this looks like is an effort to delay.  I don't know who you

8  thought you were going to deceive by this.

9          MR. BRONSON:  Your Honor, the domestic support case

10  goes forward.  There's no stay.  So we're not -- by filing

11  we're not affecting that process whatsoever.

12          THE COURT:  Well, what you -- but you're affecting

13  the process of selling the property that was ready for

14  foreclosure.

15          MR. BRONSON:  Yes, Your Honor.  We do not want it

16  sold in a foreclosure sale where the prices are a lot less.

17          THE COURT:  So let the Chapter 7 trustee sell it and

18  he can -- I'm sure that that will be well marketed by a

19  Chapter 7 trustee.

20          MR. BRONSON:  And the Chapter 7 trustee will take a

21  huge fee as well and that's less money that's there for both

22  the Veeraswamys.

23          THE COURT:  Bt so there's been no agreement -- so

24  why haven't you been able to reach an agreement to sell the

25  property since you can't pay for it.

13

1          MR. BRONSON:  Yes, Your Honor.

2          THE COURT:  So --

3          MR. BRONSON:  It's still early in this case and it

4   is something that we would do or contemplate doing.

5          THE COURT:  But, Mr. Bronson, the way you presented

6   this case the -- it's like you're caught or Mr. Veeraswamy is

7   caught and now you're back peddling.  Oh well, we were going

8   to do that.  You didn't make any -- that's -- you're going

9   into this -- you can see that you're not getting anywhere with

10  the approach that you're taking.

11         MR. BRONSON:  Your Honor --

12         THE COURT:  So you're -- you should have been able

13  to see that, that that was not a viable approach or one that

14  was consistent with the facts of the case.  So I don't know

15  why you would do that.  So I don't accept that this is a valid

16  approach for an attorney to take in this case.

17         And Mrs. Veeraswamy wants to say something.  So I'm

18  going to let her speak for a moment.

19         MS. VEERASWAMY:  Yes.  This divorce action started

20  in family court in 2010.  I filed for divorce in 2011.  Ever

21  since the beginning there was domestic violence.  I had to

22  move out of the house.  He has had complete control of

23  everything.  I have wanted --

24         THE COURT:  Where do you -- are you living in the

25  other house now?

14

1          MS. VEERASWAMY:  No, no.  I'm living near the

2     University of Syracuse where my son attends school.

3          THE COURT:  Where does the -- who lives in the other

4     house?  Is it rented?

5          MS. VEERASWAMY:  That was -- we were sent to pilot

6     court with that judge, Cassandra Johnson from divorce court

7     and a [inaudible] judge.  And at that time he disclosed the

8     incomes that he had and he was ordered to get an appraisal.

9     He did not.  So the only judgment she could stay was that he

10    was -- it was a pilot court and he didn't comply with that

11    either.

12         THE COURT:  But I'm -- what I was asking is who --

13    you have -- there are two properties listed on the schedule.

14         MS. VEERASWAMY:  Yes.  And at that time the judge,

15    Cassandra Johnson, said that he was wasteful dissipation

16    because he uses it for his real estate office.  He keeps the

17    first floor himself.

18         THE COURT:  So the other property is not generating

19    income, is it?

20         MR. BRONSON:  No, Your Honor.

21         MS. VEERASWAMY:  It does have three apartments.  He

22    collects $7,500 is what he said in the pilot court and with

23    that he's not paying the mortgage.

24         THE COURT:  That's not something that's listed on

25    his schedule.

15

1          MR. BRONSON:  I believe there is rental income

2  listed.

3          THE COURT:  That's --

4          MS. VEERASWAMY:  Mr. Veeraswamy and Mr. Bronson are

5  very presumptuous that income is part of this case.  I've

6  never gotten any kind of income from those properties.

7          THE COURT:  When he's not paying anything to her

8  under the various orders that are present in this case.

9          MS. VEERASWAMY:  I would also like to add that he's

10  claiming 700,000 from escrow from the other property that was

11  sold and he has not disclosed his one point million dollar

12  money overseas account and he has part by money [inaudible] so

13  much money with his friends and family and cohorts --

14          THE COURT:  So this is --

15          MS. VEERASWAMY:  -- in excess of 500,000 that he

16  didn't disclose.

17          THE COURT:  This is clearly something -- this is

18  something that a Chapter 7 trustee would look into.  When was

19  this done?

20          MS. VEERASWAMY:  This was done after my filing of

21  divorce.

22          THE COURT:  Well, if it was within the past six

23  years --

24          MS. VEERASWAMY:  Yes.

25          THE COURT:  -- it would be something potentially

16

1 recoverable by a trustee which is another reason to convert

2 this case --

3          MR. BRONSON:  Your Honor --

4          THE COURT:  -- since --

5          MR. BRONSON:  -- I'd like it dismissed but if we're

6 going to have an evidentiary hearing then fine.

7          THE COURT:  You are.  So I just need to give you a

8 date for that and it's not going to be a soon date but, again,

9 Mr. -- I'm going to issue an order directing him to comply

10 with his -- to pay the domestic support obligations that are

11 set forth in the 2013 order during -- that have arisen since

12 the pendency of this bankruptcy case and to pay them going

13 forward as long as this case is pending.

14          Let's have a date, look at a date.

15                    [Pause in proceedings.]

16          THE COURT:  I'm thinking July 12th.

17          MR. BRONSON:  That's pretty soon, Your Honor.

18          THE COURT:  You'd rather have an August date?

19          MR. BRONSON:  I think so.  Personally no, but I mean

20 I have to prepare it.

21          THE COURT:  We should be clear here that nothing

22 that's going on in this court is staying the trial in the

23 state court.

24          MR. BRONSON:  You are staying the trial?

25          THE COURT:  I'm not.  Nothing is stayed.

17

1          MR. BRONSON:  Of course not.  Of course not, Your

2    Honor.

3          THE COURT:  Nothing is staying that from going

4    forward.

5          MR. BRONSON:  The stay doesn't apply to those types

6    of proceedings.

7          THE COURT:  Right.  To the extent that it may apply

8    I would lift the stay here because this case is clearly not

9    continuing in a Chapter 7 -- a Chapter 13 I mean.

10         MR. BRONSON:  We're certainly not trying to stop

11   that trial from going forward.  If we need a comfort order on

12   that, Your Honor, to have it continue you'll issue that I

13   suppose.

14         THE COURT:  Yes.

15         MR. BRONSON:  Thank you.

16         THE COURT:  I mean you want this trial to go forward

17   I assume, Mrs. Veeraswamy, the one in state court.  Is that

18   right?

19         MS. VEERASWAMY:  Well, they told me it was stayed

20   until we serve here.  And another question I have also is that

21   the honesty has not been the policy for Mr. Veeraswamy from

22   the beginning of the divorce proceedings.  I have had to

23   extensively do research regarding properties that were

24   purchased during the course of the marriage in India.  He has

25   constantly denied that there were any properties there.  I

1  have secured documents that they are in his name personally

2  that they don't have any mortgages on.  They've been evaluated

3  and now all of a sudden they're like in trust.

4          THE COURT:  Are you going to get a lawyer to help to

5  represent you in this trial here?

6          MS. VEERASWAMY:  I don't have the funds to do that,

7  ma'am.

8          THE COURT:  It would be possible for us to see if we

9  could find a pro bono lawyer who would represent you.

10          MS. VEERASWAMY:  Thank you.

11          THE COURT:  So you can --

12          MS. VEERASWAMY:  Because we have --

13          THE COURT:  You can speak to -- you have a divorce

14  lawyer I guess; right?

15          MS. VEERASWAMY:  Yes, but he's not a bankruptcy

16  lawyer.

17          THE COURT:  So you can go to Elise Kantor here in

18  the court who is our pro se attorney and she can make some

19  inquiries on your behalf about the possibility of

20  representation at this -- for this evidentiary hearing.

21          MS. VEERASWAMY:  And the properties were like --

22  they are in his name, personal name as a U.S. citizen even

23  though they are in India and they were purchased during the

24  course of the marriage.  He denied that the state courts had

25  any access or I had any claim to them.

19

| | |
|---|---|
| 1 | THE COURT:  How about the 2nd of August? |
| 2 | MR. BRONSON:  The 2nd of August? |
| 3 | THE COURT:  Yes.  At 10:30.  I'm going to direct |
| 4 | that a joint pretrial order be filed on July 27th. |
| 5 | I will -- in the meantime I'll put this over -- I'll |
| 6 | adjourn this to that date and issue an order, a scheduling |
| 7 | order. |
| 8 | MR. BRONSON:  Your Honor, the 341 and the |
| 9 | confirmation hearing were -- |
| 10 | THE COURT:  I will make a note here that -- if Mr. |
| 11 | Veeraswamy wants to continue in this case or wants to avoid |
| 12 | dismissal he probably better show up at his -- or wants to |
| 13 | avoid I should say the conclusion that he's filed this in bad |
| 14 | faith he probably ought to -- he probably ought to show up at |
| 15 | those -- at those hearings. |
| 16 | MR. BRONSON:  Your Honor, normally when an issue |
| 17 | comes up I would amend the petition for the things that are |
| 18 | clearly wrong or that have issues.  I don't want to do that of |
| 19 | course if that's going to give a wrong impression. |
| 20 | THE COURT:  I'm not going to tell you what you |
| 21 | should do. |
| 22 | MR. BRONSON:  Thank you, Your Honor. |
| 23 | THE COURT:  8/2 at 10:30.  So go see Ms. Kantor. |
| 24 | MS. VEERASWAMY:  Thank you.  Where would she be? |
| 25 | THE COURT:  She's in Central Islip today but if you |

20

1    -- her phone number is -- we can give you her phone number and

2    you can make an appointment.

3             MS. VEERASWAMY:   Thank you.  Have a seat for a

4    minute.   Thank you.

5             MR. BRONSON:   Thank you, Your Honor.

6    (Proceedings concluded at 12:22 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21

1      I, Shari Riemer, certify that the foregoing transcript is

2  a true and accurate record of the proceedings.

3

4

5  _____

6  Shari Riemer, CET-805

7  TypeWrite Word Processing Service

8  211 N. Milton Road

9  Saratoga Springs, New York 12866

10

11

12

13  Dated:   September 8, 2018

14

15

16

17

18

19

20

21

22

23

24

25

| Information to identify the case: | | |
|---|---|---|
| Debtor 1 | **Velappan Veeraswamy** | Social Security number or ITIN   **xxx–xx–2014** |
| | First Name   Middle Name   Last Name | EIN  _ _–_ _ _ _ _ _ _ |
| Debtor 2<br>(Spouse, if filing) | | Social Security number or ITIN   _ _ _ _ |
| | First Name   Middle Name   Last Name | EIN  _ _–_ _ _ _ _ _ _ |
| United States Bankruptcy Court   **Eastern District of New York** | | Date case filed in chapter  **13**      **4/12/18** |
| Case number:   **1–18–42030–cec** | | Date case converted to chapter  **7**    **8/2/18** |

# NOTICE OF FILING OF TRANSCRIPT AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION

**NOTICE IS HEREBY GIVEN THAT:**

A transcript of the proceeding held on 6/7/18 was filed on 9/12/18.

The following deadlines apply:

The parties have until September 19, 2018 to file with the court a Notice of Intent to Request Redaction of this transcript. The deadline for filing a Transcript Redaction Request is October 3, 2018.

If a Transcript Redaction Request is filed, the redacted transcript is due October 15, 2018.

If no such Notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is December 11, 2018, unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber TypeWrite at 518–581–8973 or you may view the document at the public terminal at the Office of the Clerk.

Dated: September 12, 2018

For the Court, Robert A. Gavin, Jr., Clerk of Court

BLnftrans2.jsp [Notice of Filing Transcript and Deadlines to Restriction and Redaction rev. 02/01/17]

# Notice Recipients

District/Off: 0207−1                 User: acruz                    Date Created: 9/12/2018

Case: 1−18−42030−cec                 Form ID: 295                   Total: 4

**Recipients of Notice of Electronic Filing:**
aty        H Bruce Bronson        ecf@bronsonlaw.net

                                                                        TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db         Velappan Veeraswamy        8545 115th St        Fl 1        Richmond Hill, NY 11418−1733
           H. BRUCE BRONSON, ESQ.        Bronson Law Offices PC2NW        480 Mamaroneck Avenue        Harrison,
           New York 10528
           KAREN VEERASWAMY        P.O. Box 863695        Ridgewood, New York 11386

                                                                        TOTAL: 3

1              UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF NEW YORK

2

3    -----------------------------------X
                                        : 18-42030 (CEC)
4    In re:                             :
                                        : 271-C Cadman Plaza East
5       VELAPPAN VEERASWAMY.            : Brooklyn, New York 11201
                                        :
6              Debtor.                  : August 2, 2018
     -----------------------------------X

7

     TRANSCRIPT OF [32] ORDER SCHEDULING EVIDENTIARY HEARING ON
8   WHETHER THE DEBTOR FILED THIS BANKRUPTCY CASE IN BAD FAITH
    (RE: RELATED DOCUMENT(S)16 MOTION TO CONVERT CASE CHAPTER 13
9   TO 7 FILED BY CREDITOR KAREN VEERASWAMY).  SIGNED ON
    6/20/2018; [16] MOTION TO CONVERT CASE CHAPTER 13 TO 7.
10            BEFORE THE HONORABLE CARLA E. CRAIG
                UNITED STATES BANKRUPTCY JUDGE
11           THURSDAY, AUGUST 2, 2018; 11:10 A.M.
                   BROOKLYN, NEW YORK

12

13   APPEARANCES:

14

     For the Debtor:      H. BRUCE BRONSON, ESQ.
15                        Bronson Law Offices PC
                          480 Mamaroneck Avenue
16                        Harrison, New York 10528

17   For the Creditor:    KAREN VEERASWAMY, Pro Se
                          P.O. Box 863695
18                        Glendale, New York 11386
                          New York, New York

19

20   Court Transcriber:   MARY GRECO
                          TypeWrite Word Processing Service
21                        211 N. Milton Road
                          Saratoga Springs, New York 12866

22

23

24

25

     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

2

                          I N D E X

WITNESSES:              DIRECT      CROSS      REDIRECT     RECROSS

John Napolitano            5         32          39          48

Ezhil Kamaldoss           50         77          79

Karen Veeraswamy          --         87

Velappan Veeraswamy       96        104

Case 1-18-42030-nhl    Doc 64    Filed 09/12/18    Entered 09/12/18 09:56:40

3

1

4

1   (Proceedings began at 11:10 a.m.)

2          THE CLERK:  1 and 2 on the calendar, Velappan

3   Veeraswamy, Case 18-42030.

4          Appearances, please.

5          MR. BRONSON:  Bruce Bronson appearing on behalf of

6   the debtor.

7          THE CLERK:  State your name for the record, please.

8          MS. VEERASWAMY:  Karen Veeraswamy, pro se.

9          THE COURT:  Okay.

10         THE CLERK:  State your name for the record.

11         MR. KAMALDOSS:  Kamaldoss, witness.

12         THE COURT:  I'm sorry.  State your name again,

13  please.

14         MR. KAMALDOSS:  Ezhil Kamaldoss.

15         THE COURT:  And your name, sir?

16         MR. NAPOLITANO:  John Napolitano, witness, Your

17  Honor.  Good morning.

18         THE COURT:  Okay.

19         MR. VEERASWAMY:  Mr. Veeraswamy.

20         THE COURT:  Okay.

21         MR. VEERASWAMY:  Veeraswamy.

22         THE COURT:  All right.  So this is a hearing -- you

23  can be seated.  This is a hearing on the question of whether

24  there is grounds to convert this case to a case under Chapter

25  7 based on I guess primarily the allegations of the -- of the

Napolitano - Direct                                5

1   debtor's bad faith and the conduct of this case.

2           So since this is Mrs. Veeraswamy's motion, I think

3   she starts.  So, Mrs. Veeraswamy, call your first witness.

4           MS. VEERASWAMY:  I would like to call John

5   Napolitano, please.

6           THE COURT:  Take the witness stand, please.

7           JOHN NAPOLITANO, CREDITOR'S WITNESS, SWORN

8           THE CLERK:  State your name for the record, Mr.

9   Napolitano, your name and your address.

10          THE WITNESS:  John Napolitano, J-O-H-N,

11  N-A-P-O-L-I-T-A-N-O, attorney.  Business address 94-09 101st

12  Avenue, Ozone Park, New York 11416.

13          THE COURT:  Okay.  Go ahead, Mrs. Veeraswamy.

14          MS. VEERASWAMY:  Okay.

15          THE COURT:  The best thing for you to do is stand up

16  here.  Okay.  Because that's -- I'll be able to hear you best

17  that way.  And you should be aware that the mic -- the

18  microphone doesn't pick you up if you're -- if you're walking

19  between the witness box and the podium.  So -- and let me just

20  give a couple of other ground rules so that we know where

21  we're starting.  This is -- this is questions and answers, so

22  you need to ask him questions.  And you need to respond to the

23  questions.  No other type of discussion is called for her.  Is

24  there is an objection, then you stop talking.  I will rule on

25  the objection.  If I overrule the objection you are to answer

                    Napolitano - Direct                        6

1   the question.  If I sustain the objection, then Mrs.

2   Veeraswamy will rephrase her question or ask a different

3   question.  Okay?

4           THE WITNESS:  Yes, Your Honor.

5           THE COURT:  Understood?  And there's no argument or

6   discussion about my rulings.  If I want you to explain

7   something to me I will ask you for that, but other than that

8   we're going to proceed in this fashion.  Okay?

9           MS. VEERASWAMY:  Thank you, Your Honor.

10          THE COURT:  All right.  Go ahead, please.

11                          DIRECT EXAMINATION

12  BY MS. VEERASWAMY:

13  Q.   Good morning, Mr. Napolitano.

14  A.   Good morning.

15  Q.   Would you please state your position with regard to me

16  and the Supreme Court?

17  A.   I represent you in a matrimonial action pending before

18  Judge Anna Culley in Queens Supreme Court, State of New York.

19  Q.   Okay.  And what year was that initiated?

20  A.   The index number is from 2011, 2011.

21  Q.   So, Mr. Napolitano, you had written an affirmation letter

22  to this bankruptcy court.  If you would please verify that

23  this is your letter.

24          MS. VEERASWAMY:  Can I show him?

25          THE COURT:  Yes, you may show him.  Can you tell me

                    Napolitano - Direct                              7

1   also where that is on the docket?

2            MS. VEERASWAMY:  It's Exhibit 1.  It's affirmation

3   letter.

4            THE COURT:  Exhibit 1 to your motion?

5            MS. VEERASWAMY:  On the binder.

6            THE COURT:  Oh, I don't have the -- I don't have the

7   exhibit list.

8            MR. BRONSON:  Your Honor, I put together a binder

9   that I sent to chambers that had our joint exhibits in it.

10           THE COURT:  Okay.  We're going to have to go get the

11  binder.

12           MR. BRONSON:  It's Bates stamped and labeled.

13           THE COURT:  I think we're going to have -- I don't

14  think we can proceed until I have the exhibits.  Okay.  I'm

15  going to step down.  Sorry about that.

16           THE CLERK:  All rise.

17  (Off the record at 11:15 a.m.)

18  (Back on the record at 11:17 a.m.)

19           THE CLERK:  Be seated.

20           THE COURT:  Okay.  All right.  I have the exhibits

21  now.  Sorry about that.

22           You can -- so you're looking at the first -- the --

23           MS. VEERASWAMY:  KB-001.

24           THE COURT:  Yes, got it.  Okay.  Go ahead, please.

25           MS. VEERASWAMY:  Yes, may I show him?

Napolitano - Direct                                          8

1          THE COURT:  Yes, you may.

2               CONTINUED DIRECT EXAMINATION

3   BY MS. VEERASWAMY:

4   Q.    Mr. Napolitano, do you recognize this document?

5   A.    I do.

6   Q.    Is this your signature?

7   A.    It is.

8   Q.    Okay.  I'd like to ask you questions regarding said

9   document.  So, Mr. Napolitano, you're the divorce attorney and

10  are aware that motions have been filed regarding support

11  and --

12  A.    I am.

13  Q.    Support for obligations?

14  A.    I am.

15  Q.    Okay.  Would you please state what are those support

16  obligations that have been ordered through the Supreme Court?

17  A.    Judge Culley, I believe the Queen Supreme Court Justice

18  assigned to your matrimonial case, rendered a decision in 2013

19  I believe ordering the defendant, your husband, Velappan

20  Veeraswamy, to pay I believe $3,783 in spousal support and

21  1,750 in child support.

22  Q.    Okay.  Thereabouts.

23  A.    Or thereabouts, yes.

24  Q.    Also you are having an escrow account?

25  A.    I maintain an IOLA account, and pursuant to prior

Napolitano - Direct                                   9

1  proceedings in this court it was directed that Mr.
2  Veeraswamy's bankruptcy attorney, Mr. Bronson, deposit in my
3  IOLA account maintained at Chase Manhattan Bank the sum of --
4  initially the gross sum of $1.9 million.
5  Q.    I would like for you to elaborate on what were the
6  disbursements from that account.
7  A.    Pursuant to agreements between Mr. Veeraswamy and his
8  matrimonial counsel, Joe Levin, Joseph Levin; myself; and
9  yourself, four checks were disbursed I believe over time
10 $175,000 in total to each of you as an advance on equitable
11 distribution and I believe $161,000 in change pursuant to
12 Judge Culley's pendente lite support order in -- that I
13 previously testified about.
14 Q.    Okay.  And out of that amount, your attorney fees were
15 also included?
16 A.    Judge Culley had ordered pendente lite as also part of
17 that support order for the defendant to play -- pay
18 plaintiff's counsel fees the sum of $20,000.  That was
19 included in the $161,000 check.  It was made payable to you,
20 and you paid me the sum of $20,000 from that check of 161,000
21 and change.
22 Q.    And this amount, 141,000 for overdue support payments
23 came through a contempt motion in Supreme Court?
24 A.    No, initially the judge had rendered a decision ordering
25 the defendant, Mr. Velappan Veeraswamy to pay support.  We had

Napolitano - Direct                    10

1  meetings in 2014 after that order was issued at my office, and

2  pursuant to that order the defendant and his counsel agreed if

3  we would agree to advance equitable distribution that they

4  would pay $141,000 and change to you as support arrears to

5  that date in 2014 and $20,000 to you pursuant to Judge

6  Culley's order for attorney's fees, pendente lite attorney's

7  fees.

8  Q.   Okay.  You have the last point, 4, regarding the last

9  contempt motion that was made in a court?

10 A.   Yes, I believe in 2017, the year 2017, a motion was filed

11 by myself on your behalf seeking spousal and child support

12 arrears and to punish the defendant as part of the relief for

13 contempt for not paying anything towards spousal support or

14 child support since the time he paid the $141,000 and change

15 in 2014.  So my recollection is a span of three or so years

16 had elapsed where the defendant made no support payments to

17 you, the plaintiff, in that case and thus the need to make the

18 motion.

19 Q.   Okay.  Mr. Napolitano, I would like to show you a

20 document from the Department of Finance regarding the sale.

21          MS. VEERASWAMY:  Can I show him?

22          THE COURT:  Yes, is that an exhibit?

23          MS. VEERASWAMY:  Yes, it is Page 015.

24          THE COURT:  Do you -- okay.  Thank you.

25          MS. VEERASWAMY:  And thank you, Mr. Bronson.

Napolitano - Direct                    11

1          MR. BRONSON:  Sure.

2          THE COURT:  It's Exhibit -- it's Exhibit 3 I would

3    notice.

4          MS. VEERASWAMY:  For explaining the label.

5          THE COURT:  Okay.

6    BY MS. VEERASWAMY:

7    Q.   Now, Mr. Napolitano, being an attorney do you recognize

8    what this document is?

9    A.   This looks like the sale -- recording the sale of a

10   property.

11   Q.   Okay.  And who was the seller?

12   A.   On the document Page 1 of the exhibit, it says grantor

13   seller Velappan Veeraswamy.

14   Q.   Okay.  What was date of the sale?

15   A.   Looks like August 12, 2015, on Page 1 of that exhibit.

16   Q.   And Mr. Veeraswamy's attorney for that estate sale?

17          THE CLERK:  Ma'am --

18          MR. BRONSON:  Objection, Your Honor, relevance.

19          THE COURT:  You -- it's going to be -- do you have

20   another copy that you can work with there?  Because it's going

21   to work better if you are -- it's going to be more audible if

22   you would speak from the podium.

23          MS. VEERASWAMY:  Should I repeat my questions?

24          THE COURT:  Why don't you repeat the last question?

25          MS. VEERASWAMY:  Okay.

Napolitano - Direct                    12

1  BY MS. VEERASWAMY:

2  Q.    After I had asked you about the sale date that was 2015,

3  I asked you who was the attorney on record for said sale.

4  A.    It says --

5          MR. BRONSON:  Objection to relevance in this line of

6  questioning, Your Honor.

7          THE COURT:  Overruled, go ahead.

8          THE WITNESS:  It says, "Return to M. Joseph Levin,

9  P.C., 86-16 Queens Boulevard, Suite 2016, Elmhurst, New York

10 11373."  That normally is the attorney who represented the

11 seller at the closing.

12 BY MS. VEERASWAMY:

13 Q.    And what is that attorney in relation to Mr. Velappan

14 Veeraswamy in the Supreme divorce case?

15 A.    He was the attorney that represented Velappan Veeraswamy

16 in the matrimonial action, and I had dealings with him over

17 the years in that matrimonial action.

18 Q.    Was this particular sale brought to the Supreme Court's

19 notice or your notice?

20 A.    It never was, no.

21 Q.    To your understanding was there a standing stay order for

22 the initial divorce filing in 2011?

23 A.    There's something served with a summons and complaint in

24 a matrimonial case under New York State Law called a

25 restraining notice or automatic stay.  And it directs that

Napolitano - Direct                    13

1  neither party to a matrimonial action convey marital assets

2  whether in their name or held separately by either party to

3  the matrimonial action except in the normal course of

4  business.  So --

5  Q.   Would you be safe to state that it was a violation of

6  said stay order?

7  A.   Yes, because my understanding of the matrimonial law is

8  in the normal course of business would be paying your everyday

9  bills and the bills that you had while you were married or now

10 living separately.  This is -- this asset was sold for

11 $135,000 as indicated by Exhibit 1 of the exhibit you have in

12 front of me, and selling assets of this size is not in the

13 normal course of business.

14 Q.   Mr. Napolitano, I would like to show you another exhibit,

15 please.  This would be KB-079.

16      THE COURT:  Do you know which numbered exhibit it is

17 by any chance?

18      MS. VEERASWAMY:  Exhibit 8.

19      THE COURT:  Thank you.

20      THE WITNESS:  Yes, I've reviewed it.

21 BY MS. VEERASWAMY:

22 Q.   Okay.  Mr. Napolitano, what do you -- what is that

23 document exactly?

24 A.   This purports to be a copy of a Bank of India bank

25 account statement, the account holder being Velappan

                    Napolitano - Direct                    14

1   Veeraswamy of 8545 115th Street, Richmond Hill, New York.  And

2   I assume the Bank of India branch is in Manhattan, but it

3   doesn't so state.  And it has account balances --

4   Q.   Would --

5   A.   -- as of January -- I'm sorry, as of June 30, 2011.

6   Q.   Would you please read out the amounts in that offshore

7   account?

8   A.   Okay.  It says Savings Bank, Account No. 826413110000009,

9   and a balance of $61,992,985, and the currency indication on

10  the far-right-hand side is INR.

11  Q.   And INR would be the Indian rupees?

12  A.   (No audible response)

13  Q.   And the other amount, please?

14  A.   It has "Term Deposit," an account number underneath that,

15  and a balance of 20,000.  And it has a currency indication of

16  USD, and underneath that is another Term Deposit account.  The

17  balance is 20,000.  Currency amount is USD.  And a fourth

18  account "Denominated Term Deposit," with an account number and

19  a balance of 22,990, and it looks like the currency is USD as

20  indicated in this document.

21  Q.   Okay.  I would like to ask you, I believe at the bottom

22  that there was a rupee valuation of what was the total dollar

23  amount in that account?

24  A.   I believe this was a calculation that you had done by

25  someone who was an expert or is knowledgeable in currency

Napolitano - Direct                        15

1  exchange rates and that 61,992,985 Indian rupees equates to

2  $1,318,996.60 in U.S. dollars.

3  Q.    And the additional U.S. dollars in that account?

4  A.    Excuse me?

5  Q.    The U.S. dollars total of that three accounts?

6  A.    Would be a little under 1,400,000 it looks like.

7  Q.    The date on that account was 2011, and the divorce

8  proceeding was in 2011.  Was this account ever disclosed by

9  Mr. Veeraswamy or his attorney, Mr. Joseph Levin?

10  A.    We learned of it later.  I don't know the date.  I don't

11  recall the date we learned of this account.

12  Q.    Was it Mr. Veeraswamy and Joe Levin, Mr. Joe Levin, that

13  had brought this to the Supreme Court's disclosure?

14  A.    My recollection is that you found out about it, and you

15  brought it to their attention.

16  Q.    Thank you.  And what was -- did they agree that that was

17  his account at the time?

18  A.    We had filed numerous motions in -- over the years in

19  State Supreme Court bringing this very subject up and that it

20  was a violation again of the automatic stay that I explained

21  previously that is served upon all parties, the defendant and

22  applies the same to a plaintiff, that no one is allowed to

23  liquidate marital assets, whether in their separate name or

24  joint names other than the ordinary course of business.  And

25  in motions that we filed, we brought to the judge's attention,

Napolitano - Direct                          16

1  Judge Culley, that this was liquidated in violation of that

2  order.

3  Q.    Are you aware of tax filing where Mr. Veeraswamy

4  disclosed this amount anywhere?

5  A.    I am not.

6  Q.    The last thing I would like to show you, Mr. Napolitano,

7  is -- this is Exhibit KB-042.

8           THE COURT:  And can you tell me the exhibit number?

9           MS. VEERASWAMY:  It's Exhibit 5, Your Honor.

10          THE COURT:  Thank you.

11  BY MS. VEERASWAMY:

12  Q.    Mr. Napolitano, before you is a page regarding properties

13  in India.

14  A.    This exhibit appears to be delineating 32 different

15  properties in India that are registered to Velappan Veeraswamy

16  either individually or No. 7 listed property appears to be

17  under the name Veeraswamy Educational Trust of the 32.  And

18  No. 32 has a different name, S-B-I-K-O-D-U-M-U-D-I.  So 30 of

19  the 32 appear to be registered in Velappan Veeraswamy's

20  individual name.

21  Q.    In the Supreme Court divorce action, did Mr. Veeraswamy

22  volunteer on his own behalf submit India properties that he

23  owned?

24  A.    Initially, no, but over time as we provided him with

25  proof that we had registrar documents that were brought back

Napolitano - Direct                    17

1   from India he agreed over time that there were properties he

2   owned in India and always maintained that the majority or all

3   of them were in a trust.

4   Q.   Has Mr. Veeraswamy ever disclosed documents or anything

5   regarding that trust to you or the Supreme Court for the

6   divorce action?

7   A.   No, he has not.  And as a result of that, Judge Culley

8   issued a preclusion order which orders that at trial, which is

9   pending since October and is now stayed due to this

10  proceeding, that when the trial continues, the divorce trial

11  continues, the defendant, Velappan Veeraswamy, is precluded

12  from giving any financial testimony as a result of his failure

13  to comply with numerous discovery orders.

14          THE COURT:  When is that -- when is that trial set

15  to continue?

16          THE WITNESS:  Your Honor, we were in -- before Judge

17  Culley a week or two ago and informed the judge that we were

18  here today and they gave us a September 22nd control date.

19          THE COURT:  Okay.  So that won't necessarily be a

20  trial date?

21          THE WITNESS:  I think the trial's going to go forth

22  in October is my understanding.

23          THE COURT:  Okay.

24          THE WITNESS:  Assuming that there's no federal

25  bankruptcy court stay in place.

Napolitano - Direct                    18

1    THE COURT:  Okay.  And there is a -- and this is the

2    trial that was supposed to have gone forward in 2015?

3    THE WITNESS:  It commenced in October of 2017.

4    THE COURT:  2017.

5    THE WITNESS:  Yes.

6    THE COURT:  And was -- and what -- why was it -- why

7    did it not conclude?

8    THE WITNESS:  We started it, and then it was

9    adjourned because of the judge's calendar until April.  And

10   then the judge sent notice to the parties that she was

11   adjourning it until May, and then Mr. Velappan Veeraswamy's

12   attorney made a motion to be relieved for -- of all things,

13   mental incapacity.  He's a 75-year-old gentleman.  And he

14   hired counsel to say that he was leaving the practice of law

15   due to mental health reasons.  And that motion was I believe

16   denied, but Mr. Velappan Veeraswamy has substituted counsel,

17   so it made that decision moot.

18   THE COURT:  Okay.  And then -- and then bankruptcy

19   intervened?

20   THE WITNESS:  Yes, Your Honor.

21   THE COURT:  All right.  Okay.  I'm -- sorry to

22   interrupt.  Go ahead, please.

23   MS. VEERASWAMY:  Thank you, Your Honor.

24   BY MS. VEERASWAMY:

25   Q.   Mr. Napolitano, I would like to ask you what was the --

Napolitano - Direct                              19

1   since the beginning of this divorce trial --

2           THE COURT:  I'm sorry.  Can I ask another quick

3   question --

4           MS. VEERASWAMY:  Yes, ma'am.

5           THE COURT:  -- before you go ahead?

6           What are the issues that are to be tried in this

7   proceeding, this matrimonial proceeding that you were telling

8   me about just now?

9           THE WITNESS:  Okay.  There's -- the major issue --

10  two issues are support arrears that was the subject of a

11  pending motion.  The judge referred it to trial and so --

12          THE COURT:  That means she's going to be calculating

13  the amount of the arrears?

14          THE WITNESS:  Yes, she has the power or the

15  authority under New York State Law to adjust her pendente lite

16  order.  It's very rarely done, but it could be done.  So --

17          THE COURT:  So retroactively basically to readjust

18  it so that --

19          THE WITNESS:  Yes.

20          THE COURT:  To -- so that would change the amount of

21  the arrears?

22          THE WITNESS:  Right, not all the way back to the

23  beginning but to the point -- at some point she could -- she

24  could say going forward, you know, for a valid reason -- I

25  don't see any valid reason, but that's my humble opinion.  And

Napolitano - Direct                    20

1  the other issue is -- and the reason I don't see a valid

2  reason is because the defendant has been -- one of my

3  arguments is wasteful dissipation.

4           THE COURT:  Okay.

5           THE WITNESS:  Numerous instances so.

6           THE COURT:  All right.  Okay.  Just tell me -- just

7  tell me what the issues are.

8           THE WITNESS:  And the other issue is the

9  equitable -- is the equitable distribution.  I have 1.388

10  million in my IOLA account remaining from the 1.9 that Mr.

11  Bronson wired in.  So when you take away the 175-, the 175-,

12  the 161-, it leaves 1.388.  So that's subject to equitable

13  distribution.  And then the major thing that's been holding up

14  the case are these 29 of 32 properties in India that are

15  estimated to be worth tens of millions of dollars because

16  they're improved properties.  Now I don't know.  I'm taking

17  the word of others who have come back from India to say that

18  it's improved property.  There's a police academy on one.

19  There's a school on another.

20           THE COURT:  Okay.  So that --

21           THE WITNESS:  They've never been appraised.

22           THE COURT:  That is -- that will factor into the

23  equitable distribution; is that right?

24           THE WITNESS:  Yes, it is.

25           THE COURT:  That's the idea?

Napolitano - Direct                    21

1          THE WITNESS:  Yes.

2          THE COURT:  And what -- is the building that is the

3   debtor's residence as reflected in the bankruptcy petition in

4   Richmond Hill, is that also the subject of any order --

5          THE WITNESS:  Yes, two -- there's --

6          THE COURT:  -- or will it be part of this

7   proceeding -- that proceeding?

8          THE WITNESS:  Yes, that's also part of the equitable

9   distribution.  I'm sorry I didn't allude to that.  It's two

10  properties, a three-family in Richmond Hill and the former

11  marital residence that the defendant has lived in all through

12  the proceeding --

13         THE COURT:  Okay.

14         THE WITNESS:  -- for seven years and not made

15  payments on the mortgage but collected the rent from boarders.

16         THE COURT:  So the three-family is -- what's the

17  status of that to --

18         THE WITNESS:  That -- there's a judgment of

19  foreclosure is my understanding, and it's close to going to

20  auction sale.

21         THE COURT:  And what about the residence?

22         THE WITNESS:  The residence was on the courthouse

23  steps scheduled for sale --

24         THE COURT:  Okay.

25         THE WITNESS:  -- when this was filed.

Napolitano - Direct                                    22

1          THE COURT:  Okay.

2          MS. VEERASWAMY:  And that was filed the -- I believe

3   the afternoon before it was scheduled to go for auction.

4          THE WITNESS:  I believe that was filed by the

5   defendant's counsel in this action, yes.

6          THE COURT:  So are these -- have -- is there any

7   existing order in the matrimonial proceeding directing that

8   either of these properties be sold?

9          MS. VEERASWAMY:  Mr. Napolitano if I could ask you

10  regarding --

11         THE WITNESS:  No, the -- I have -- I'm sorry.  I

12  have to answer --

13         THE COURT:  Yeah.

14         THE WITNESS:  -- Your Honor's question.

15         THE COURT:  I just want to ask --

16         THE WITNESS:  Yeah, that's an excellent question,

17  Your Honor.  We had constantly alluded to these properties and

18  brought them up to Judge Culley.  Judge Culley sent us to a

19  Pilot Program in the Queens Supreme Court building on a

20  different floor last year in April of 2017.  We had a referee

21  appointed.  We made the referee aware of these two properties

22  in foreclosure.  It was agreed they would be appraised and

23  there would be cooperation in disposing of them.  And the

24  defendant did not cooperate.

25         THE COURT:  Was this an agreement reduced to

Napolitano - Direct                    23

1  writing?

2          THE WITNESS:  It was an order of Judge Culley.

3          THE COURT:  Okay.  So there's a --

4          THE WITNESS:  To appear at the Pilot Program.

5          THE COURT:  Well, the agreement with regard -- with

6  regard to the selling of the property, was that an agreement

7  that was signed and entered in writing?

8          THE WITNESS:  It was -- they were orders of the

9  Pilot Program referee to cooperate and have it appraised.  I

10 don't know if there was ever an agreement or an order to sell

11 the properties because they were already in foreclosure.  And

12 because it was a Pilot Program I wasn't sure of the

13 machinations of the procedures involved and what power that

14 referee had.

15         THE COURT:  So is this something that would also be

16 the subject of the matrimonial proceeding -- the -- you know,

17 what -- had the disposition of these two properties, the

18 equitable distribution?

19         THE WITNESS:  And the -- one of the principles under

20 matrimonial law is this concept of wasteful dissipation.  It's

21 an argument either party can make to the Court where there's

22 bad faith or failure by -- of the other party to deal in

23 marital assets and cause them to dissipate or lose value

24 through their own actions and their own fault.  And it's our

25 contention at trial -- that I have been arguing and will

Napolitano - Direct                    24

1  continue to argue that there's been complete wasteful

2  dissipation when it comes to these two properties.

3           THE COURT:  Okay.  Okay.  So -- but I'm -- what I'm

4  trying to ask you is in theory is -- would the outcome of the

5  matrimonial proceeding be a decision that decides -- that

6  decides how -- whether these properties are to be sold, if so

7  how the proceeds would be divided and so forth?

8           THE WITNESS:  Yes, but it went -- it may be moot if

9  they go to the --

10          THE COURT:  To foreclosure.

11          THE WITNESS:  To foreclosure.

12          THE COURT:  Right, so -- all right.

13          THE WITNESS:  So the other -- the other thing that

14  would happen -- I'm sorry, Your Honor, to interrupt -- is that

15  the -- if the stay were lifted and they went to the courthouse

16  steps and they're sold in excess of the mortgages --

17          THE COURT:  Right.

18          THE WITNESS:  The mortgages, everything's paid off.

19          THE COURT:  Right.

20          THE WITNESS:  The excess would go into a court

21  account, and then it would be the subject of a surplus

22  proceeding.  And then I guess Judge Culley at that point would

23  have authority over distribution of the surplus.

24          THE COURT:  Okay.

25          THE WITNESS:  If any.

Napolitano - Direct                          25

1           THE COURT:  Okay.

2           THE WITNESS:  That's how I'm seeing this evolve if

3    the stay is lifted.

4           THE COURT:  Okay.  Okay.  I'm sorry.  I -- go ahead

5    an ask your next question.

6    BY MS. VEERASWAMY:

7    Q.   Yes, and I would like to just get confirmation from you

8    that Mr. Veeraswamy is a U.S. citizen?

9    A.   To the best of my knowledge.  I mean I don't -- I don't

10   recall ever seeing proof of that.  I've relied on you to tell

11   me that that's the case, but --

12   Q.   I believe that's --

13   A.   -- I cannot verify and testify to this Court --

14          THE COURT:  Okay.  All right.

15          THE WITNESS:  -- that that's the case.

16   BY MS. VEERASWAMY:

17   Q.   And the account was in his personal name as well as a

18   U.S. address, the Bank of India account?

19   A.   The Bank of India account?  Yes, it is.

20   Q.   And the properties that were shown on the documents were

21   in his personal name except for the 31 and 32 were the two

22   that you had mentioned I believe?

23   A.   Yes, 30 out of the 32, as I see it from the exhibit you

24   showed me, are -- show registration of properties in India and

25   the individual's name Velappan Veeraswamy.

Napolitano - Direct                                    26

1    THE COURT:  But where did this exhibit come from?

2    THE WITNESS:  That's -- I think that's the subject

3    of the next witness's testimony.

4    THE COURT:  Okay.  All right.

5  BY MS. VEERASWAMY:

6  Q.   And has Mr. Veeraswamy ever came to negotiations

7  regarding those marital assets being in India?

8  A.   Along the way we've had conversations, the four of us,

9  his counsel, myself, you, and him, in my office and the

10  courthouse to obviously globally settle the divorce case, and

11  the impediment has always been these properties in India.

12  Besides the fact that Mr. Veeraswamy does not want to vacate

13  the marital residence.

14  Q.   I would just like to ask you that you are aware of the

15  domestic violence that occurred throughout this divorce

16  proceeding?

17  A.   I had --

18    MR. BRONSON:  Objection, Your Honor.

19    THE COURT:  I'm sorry?

20    MR. BRONSON:  Objection to relevance, Your Honor.

21    THE COURT:  I am --

22    MR. BRONSON:  And it's prejudicial.

23    THE COURT:  I'm -- I am -- I consider that that is

24  an objection to the form of the question, and I'm sustaining

25  it.

Napolitano - Direct                    27

1        So can you rephrase the question?

2        MS. VEERASWAMY:  Yes.

3   BY MS. VEERASWAMY:

4   Q.   Mr. Napolitano, are you aware that myself -- and I have

5   had to leave the properties, and I haven't lived in those

6   properties for a number of years?

7   A.   I'm aware of that, yes.

8   Q.   So Mr. Veeraswamy occupies the marital residence?

9   A.   It's been represented to me by Mr. Veeraswamy's counsel

10  that Mr. Veeraswamy resides in the Richmond Hill property, the

11  single-family house and continues to reside there to this day

12  is my understanding.

13  Q.   And regarding the three-family house in Richmond Hill as

14  well, I do not occupy that house in any capacity?

15  A.   I correspond with you, and I talked to you recently via a

16  residence you maintain in Syracuse with your -- and I believe

17  you reside with your son who goes to college at Syracuse

18  University.

19  Q.   Yes, and the few years prior when my son was high school,

20  that -- I subleted an apartment in Ridgewood?

21  A.   Yes, and we would correspond with that address, never the

22  three-family house in Richmond Hill.  We would never

23  correspond with you at that residence.

24  Q.   So Mr. Veeraswamy controls that in its entirety as well?

25  A.   Yes.

Napolitano - Direct                    28

1          MS. VEERASWAMY:  Thank you so much for your

2   testimony today, Mr. Napolitano.

3          THE WITNESS:  You're welcome.

4          THE COURT:  Okay.  I'm going to ask you one further

5   question, and then Mr. Bronson will have the opportunity to

6   cross-examine.  So my question is if this case were converted

7   to Chapter 7 then a trustee would be appointed, and the

8   trustee's responsibility would be to marshal the assets of Mr.

9   Veeraswamy's bankruptcy estate which would include all

10  property that he has an interest in.  And then his job would

11  be to sell -- to liquidate those assets and to pay creditors.

12  So -- and so the creditors -- Mrs. Veeraswamy would appear to

13  be -- and other the mortgage -- the company that holds the

14  mortgage on the -- on the real property, it would appear that

15  Mrs. Veeraswamy is the principal creditor.  There are -- there

16  are some other small debts, relatively small debts, listed on

17  the petition.  So I guess my question is what would be the

18  impact on the matrimonial case if a trustee were to do that?

19         THE WITNESS:  Well, how --

20         THE COURT:  Would that -- would that -- how would

21  that -- would that be taking determination away from the

22  matrimonial court?

23         THE WITNESS:  It's our position in state court that

24  the 1,388,000 is all Mrs. Veeraswamy's, that 100 percent of

25  that account is her due to the fact that Mr. Veeraswamy has

Napolitano - Direct                    29

1    taken the 1,400,000 from the Bank of India account and

2    other -- for other reasons.  So I don't know if the trustee

3    would be empowered --

4           THE COURT:  Well, it wouldn't affect -- it probably

5    wouldn't affect the monies that are held in escrow.  But what

6    about the monies that -- you know, that would be generated

7    from the sale of property?

8           THE WITNESS:  The -- Mrs. Veeraswamy would welcome

9    that, someone taking control, because it seems like if it was

10   sold at fair market value and not on the courthouse steps it

11   would garner, both those properties, a greater return, sell

12   for a greater price, instead of being a forced sale and that

13   there would be enough equity in those two properties to pay

14   the trustee his fee, all the cost of selling expenses, and

15   there would be an excess.

16          THE COURT:  Are you referring now just to the real

17   property located in the United States?

18          THE WITNESS:  Yes, and then if he takes control of

19   the India property, I've been told for seven years that that's

20   worth a great deal of money.  So if it's within his power to

21   take control of the properties in India --

22          THE COURT:  But is -- would that be usurping in some

23   way the role in the matrimonial court in deciding how those

24   properties should be allocated?

25          THE WITNESS:  Under the Domestic Relations Law for

Napolitano - Direct                    30

1   the State of New York, the marital estate consists of

2   properties owned by either party no matter where it is

3   situated.

4           THE COURT:  Right, but doesn't -- can't a

5   matrimonial -- in a matrimonial proceeding a court can -- is

6   it not true that a court can make a determination to allocate

7   some assets to one spouse and some assets to another spouse if

8   they -- without liquidating everything?

9           THE WITNESS:  Yes, so a distribute of award.

10          THE COURT:  Right.

11          THE WITNESS:  They -- Judge Culley could rule for

12  instance that the 30 properties in India get split 15

13  properties to Mr. Veeraswamy, 15 properties to Mrs.

14  Veeraswamy.  Could order them all liquidated.  That would be

15  in her purview.  But, you know, the practical problem has been

16  and why we've always preferred for a global settlement is

17  getting India to cooperate with an order of a State Supreme

18  Court Judge in the United States may be practically difficult.

19  I'm not versed in Indian law.  She has, Mrs. Veeraswamy, been

20  speaking to people over the last seven years in India, has had

21  proceedings going on in India to stay the sale of those

22  properties to protect her interest and I think has been

23  successful in that.  So those properties remain in either Mr.

24  Veeraswamy's name or a few of them in a trust.  Now Mr.

25  Veeraswamy has maintained in the matrimonial action that all

Napolitano - Direct                    31

1   the properties are in trust.  If all the properties are in

2   trust, Judge Culley may -- her decision may be moot as it

3   relates to equitably distributing those properties.

4           THE COURT:  But I'm -- who is the -- who is the

5   beneficiary of the trust would be one question.

6           THE WITNESS:  We've had difficulty finding out who

7   that is.  He has relatives in India, and we've asked to settle

8   this case that the children, the two adult children, be made

9   trustees of those trusts in settlement of this case.  Mrs.

10  Veeraswamy doesn't even care about getting those properties in

11  her own name.  She just cares about her children being

12  protected instead of giving them to other family members or

13  strangers.

14          THE COURT:  Okay.

15          THE WITNESS:  And this is where we sit.

16          THE COURT:  All right.

17  BY MS. VEERASWAMY:

18  Q.   Your Honor, I would like to ask that Mr. Napolitano --

19  Mr. Veeraswamy is precluded from providing testimony regarding

20  at the Supreme Court hearing trial?

21  A.   As I previously testified to, Judge Culley issued -- and

22  it's part of the trial transcript from October of 2017 --

23  precluded the defendant, Velappan Veeraswamy, from giving

24  testimony adverse to your testimony on financial issues.

25  Q.   And in your experience through this divorce case, has Mr.

Napolitano - Direct                          32

1  Veeraswamy been transparent?

2  A.   No, and thus the reason for the preclusion order.  The

3  judge would not issue a preclusion order unless there was

4  failure to comply with discovery orders and the discovery

5  demands.  And thus the need -- that the result is a preclusion

6  order by the divorce court.

7  Q.   And have we made motions in the divorce court to appoint

8  the receiver?

9  A.   It was requested and then denied as moot because it had

10 already fallen into foreclosure and there's a referee

11 appointed in the foreclosure action.

12 Q.   So from the past years since 2011, have you had any

13 success in getting fair reporting regarding income and

14 properties and such?

15 A.   There's been no disclosure on virtually any demand

16 relating to income and assets.

17 Q.   So I would like to just --

18 A.   Other than the defendant's reply to our motions claiming

19 that he made virtually very little or no money.

20          MS. VEERASWAMY:  Okay.  Thank you, Mr. Napolitano.

21          THE COURT:  Okay.  All right.  Mr. Bronson, you may

22 cross-examine.

23          MR. BRONSON:  Thank you, Your Honor.

24          THE COURT:  And why don't you give Mrs. Veeraswamy a

25 minute to gather her things.

Napolitano - Cross                    33

1           MR. BRONSON:  Excuse me, Your Honor?

2           THE COURT:  I said -- I just said if you could give

3    Mrs. Veeraswamy a minute to gather her things.

4           MR. BRONSON:  Certainly.

5           THE COURT:  But she has done so, so --

6           MS. VEERASWAMY:  Okay.  Thank you.

7           MR. BRONSON:  I didn't hear, so --

8                          CROSS-EXAMINATION

9    BY MR. BRONSON:

10   Q.   Mr. Napolitano, you testified you're holding about $1.4

11   million in escrow; is that correct?

12   A.   In my affirmation that was presented as an exhibit to the

13   Court, I think it gives the exact amount as $1,388,000 and

14   change.  I just don't know what comes --

15   Q.   And this money that's being held in escrow, if Mr. and

16   Mrs. Veeraswamy agreed to have a certain amount of that or all

17   of it released is that within -- would that happen or is there

18   something that would stop that?

19   A.   The agreement between the parties is to have it released

20   either pursuant to order of the court or written agreement of

21   the parties.

22   Q.   So Mrs. Veeraswamy could agree to release funds to solve

23   this foreclosure issue and pay off mortgage or bring it

24   current with arrears?

25   A.   She could.

Napolitano - Cross                    34

1   Q.   You were questioned about domestic violence.  Are you --

2   are you aware of domestic violence that occurred that --

3           MS. VEERASWAMY:  I object, Your Honor.

4           THE COURT:  What's your basis for you --

5           MS. VEERASWAMY:  Irrelevance.

6           THE COURT:  I'm overruling your objection.

7           Go ahead.

8           THE WITNESS:  I'm aware of a domestic violence and

9   family offense petition filed by Karen Veeraswamy against

10  Velappan because I proceeded to go to an IDV Part in Kew

11  Gardens, Integrated Domestic Violence Part, where there was a

12  criminal proceeding brought against Mr. Velappan Veeraswamy,

13  and he was presented by Mr. Joseph Levin.  And we attended IDV

14  Part dates probably five, six, seven, eight times, I don't

15  recall, in 2013 and '14, somewhere in there.

16  BY MR. BRONSON:

17  Q.   Okay.  What was the allegation in that -- in that

18  proceeding?

19  A.   I believe that the defendant had assaulted, physically

20  assaulted, Karen Veeraswamy.

21  Q.   And how did that proceeding conclude?

22  A.   My recollection is with an order of protection and a

23  disorderly conduct I believe.

24  Q.   A disorderly conduct?

25  A.   I -- that's my recollection.

1  Q.   For domestic violence there -- it was -- the result was a

2  disorderly conduct?  Okay.  Thank you.  Do -- are you aware if

3  Mrs. Veeraswamy ever lived -- since the divorce began that she

4  ever lived in any -- either of these houses that is in issue?

5  A.   In seven years that this case has been pending -- and I

6  can't believe I'm saying seven years -- in the seven years

7  that the matrimonial case has been pending Mrs. Veeraswamy may

8  have lived in the marital residence in the early goings of the

9  case, 2011, 2012.  I just don't recall completely, but I know

10 at some point she vacated, maybe five years ago or longer at

11 this point, and lived in an apartment and then another

12 apartment and then in Syracuse.

13 Q.   Are you aware that Mrs. Veeraswamy may have a key to one

14 of these houses and be able to come and go?

15 A.   I'm not aware of that.

16 Q.   Mr. Napolitano, in your -- in your view, what has caused

17 this case to go on for seven years?

18 A.   In a nutshell, Mr. Veeraswamy's wasteful dissipation and

19 scorched earth mentality towards his wife and the assets of

20 the marital estate.

21 Q.   Can I show you -- it's Exhibit B, BV-008.

22          THE COURT:  I'm sorry, it's Exhibit -- what's the

23 exhibit?

24          MR. BRONSON:  Exhibit B.

25          THE COURT:  Exhibit 2?

Napolitano - Cross                          36

1          MR. BRONSON:  Exhibit B, Debtor's Exhibit B.

2          THE COURT:  Oh, okay.  Got it.

3   BY MR. BRONSON:

4   Q.   Are you familiar with that order, Mr. Napolitano?

5   A.   Yes.

6   Q.   And does that order -- is there a footnote in that order

7   that says that both parties are to blame for delay?

8   A.   Well, yeah, I can see the footnote.

9   Q.   And so you were familiar with this but you answered my

10  question a minute ago that it was Mr. Veeraswamy that was the

11  party delaying.

12  A.   Well, one relates to delay of time and my answer had to

13  do with the wasteful dissipation of assets.  To answer your

14  question --

15  Q.   But I didn't ask -- I didn't ask --

16  A.   Okay.

17  Q.   Mr. Napolitano, I didn't ask about wasting assets.  I

18  asked about whose fault it was in your view being the attorney

19  for Mrs. Veeraswamy, you know, as to why it's been delayed for

20  seven years.

21  A.   Well, it's my understanding that because Mr. Veeraswamy's

22  position has always been that the assets in India are his own

23  and that they should not be divided in any manner even though

24  they were acquired -- most or all of those assets in India

25  were acquired during the marriage.  And I constantly explained

1    to Mr. Levin that under the Domestic Relations Law no matter

2    where property is required on the face of the earth they're

3    marital assets if acquired after the date of the marriage, and

4    he persisted in his view that they were 100 percent his

5    forcing my client to go to India.  My client would explain to

6    me that she could only get a stay on selling those properties

7    if they were still married, so she had a dilemma.  If the

8    judge had ruled for their divorce, that the parties were

9    divorced and bifurcated the trial and decided to do the

10   financial aspects later, just by virtue of the fact that the

11   parties were divorced he could take -- the defendant could

12   take that divorce judgment to India and sell those assets

13   because the parties were no longer married.  That was the

14   concern of Karen Veeraswamy.

15   Q.   But Mr. Napolitano, in a divorce proceeding such as

16   that's going on here, if it came to conclusion and there was a

17   divorce it would also come to conclusion on a division of

18   assets; is that correct?

19   A.   Yes, it's -- equitable distribution is part of the

20   global --

21   Q.   Okay.  If that division of assets dealt with the

22   properties in India it would have to be complied with?

23   A.   But the offer by the defendant was you get zero in India.

24   I don't know how you make a settlement with a person who

25   that's their position.

Napolitano - Cross                    38

1  Q.    Mr. Napolitano, I didn't ask you about settlement

2  discussions.

3  A.    Okay.

4  Q.    I asked you if in the divorce proceeding if there was a

5  court order that divided up how the property gets split

6  isn't -- doesn't that come at the same time as the divorce?

7  A.    Normally it --

8  Q.    And if there's an order then the properties couldn't be

9  sold --

10 A.    Normally it does.

11 Q.    -- in India.

12 A.    Normally it does.  And I don't know if the -- if -- how a

13 State Supreme Court Judge's order would be complied with in

14 India.  I just don't know.  To this day I do not know the

15 complexities or the intricacies of how Judge Culley's order or

16 decision or judgment would be taken to India.

17 Q.    Are you familiar with the concept of comity and that

18 judgments are respected internationally?

19 A.    I don't know what the relationship is between India and

20 the United States in that regard.  I just know that India's

21 justice system is very -- my understanding is very backwards

22 and not as sophisticated as our justice system.

23 Q.    Mr. Napolitano, would it surprise you if the trustee --

24 if a Chapter 7 trustee was appointed and he took control of

25 the money that you're holding in escrow?

Napolitano - Cross                    39

1  A.   Would it surprise me?  I'm not versed in bankruptcy law,

2  and I'm not the party filing this action on behalf of a

3  client.

4  Q.   My question goes to -- you answered this before when Mrs.

5  Veeraswamy asked you.  But the question is do you really feel

6  it would be better for a Chapter 7 trustee to be appointed who

7  is a -- you know, his job is, as the judge said, is to marshal

8  all the assets and settle all the debts including tax debts

9  and that therefore this could have consequences on Mrs.

10 Veeraswamy that are not currently anticipated.

11 A.   Well, I can remember having a conversation with you,

12 Counsel, on the prior proceeding with the Bronx apartment

13 building encouraging me to tell Mrs. Veeraswamy not to

14 intervene in that action, and I could tell you had she not

15 intervened in that action there'd be no 1.388 million in my

16 escrow account right now.

17 Q.   And what is it that you perceive that was done by Mrs.

18 Veeraswamy that had that money transferred to your escrow

19 account apart from the order, the state order, that was in

20 existence?

21 A.   The money's preserved.  1.4 million has vanished from the

22 Bank of India, and in motions to the State Supreme Court Judge

23 Culley a half-million dollars was Money Grammed.  And we have

24 the receipts.

25 Q.   Mr. Napolitano, I didn't ask you about any of that.

Napolitano - Redirect                    40

1  A.    Can you repeat the question?

2           MR. BRONSON:  We'll drop that question.  Your Honor,

3  I believe that's all the questions I have for Mr. Napolitano.

4  Thank you.

5           THE WITNESS:  Thank you, sir.  Thank you.

6           THE COURT:  Okay.  Mrs. Veeraswamy, do you have any

7  redirect questions that you want to ask at this time?

8                    REDIRECT EXAMINATION

9  BY MS. VEERASWAMY:

10 Q.    Mr. Napolitano, Mr. Bruce Bronson asked you that both

11 parties were responsible for the delay.  Now as your client

12 you know I had traveled extensively to India and had power of

13 attorney to people in India to secure, register, and

14 apostilled documents to prove ownership of properties by Mr.

15 Veeraswamy.  Is it your opinion that Mr. Veeraswamy should

16 have brought all of these documents to initial disclosure at

17 the beginning of this divorce proceeding in 2011?

18 A.    Part of the discovery demands were for copies of deeds or

19 registration forms, whatever they may be called in India, to

20 be provided to us, and none of those discovery demands were

21 complied with.  And it -- and you -- we had discussions.  You

22 traveled to India, and you were able to get certified copies

23 of these registration forms that indicated Mr. Veeraswamy

24 owned these 32 or so properties, many of them appearing to be

25 by virtue of these registration forms in his individual name

Napolitano - Redirect                    41

1  and not in a trust as he keeps maintaining in State Supreme

2  Court.

3  Q.    Thank you, Mr. Napolitano.  And I would like to ask you

4  also about the -- regarding if a trustee was appointed.  There

5  has been difficulties throughout the divorce proceeding in

6  Supreme Court regarding the overseas accounts that Mr.

7  Veeraswamy owns.

8  A.    Yes.

9         THE COURT:  Is that -- is that a question?

10        MS. VEERASWAMY:  Yes.

11 BY MS. VEERASWAMY:

12 Q.    Has there been difficulties addressing the properties

13 that are overseas?

14 A.    There absolutely has been.  I mean we don't know where

15 the -- for instance, the $1.4 million that was taken and

16 withdrawn from the Bank of India account, Mr. Veeraswamy and

17 his lawyer said that it went to India to make improvements to

18 properties in India.  But we were never given verification of

19 that.  Or we were given some verification of that attached as

20 exhibits to motions, but I don't know if it all found its way

21 there or where it ended up.  And, you know, I alluded to

22 another motion we made where there was $500,000 or so in

23 MoneyGrams of cash wired overseas not just to India but to

24 other countries.  We to this day don't know what happened to

25 that money.

Napolitano - Redirect                              42

1   Q.    Thank you, Mr. Napolitano.  And I would like to ask you

2   about the consequences to me.  I have been in divorce

3   proceedings since 2011?

4   A.    Correct.

5   Q.    And you're aware that prior to that I was in the family

6   court?

7   A.    Yes.

8   Q.    And as Mr. Bronson asked you questions that we were also

9   in criminal court for domestic violence?

10  A.    Correct.

11  Q.    And Mr. Veeraswamy has not been forthright in disclosing

12  income, assets, bank accounts; is that correct?

13  A.    Yes, throughout the proceedings over seven years in State

14  Supreme Court.  That is correct.

15  Q.    So is it your humble opinion that if all the properties

16  were put into the bankruptcy court for a Chapter 7 the marital

17  residence, which I do not occupy; the three-family house,

18  which I don't occupy; as well as the India properties that

19  were purchased during the term of the marriage that I would

20  definitely get something versus the nothing that I am

21  receiving?

22  A.    That is correct.  I mean I am not admitted in the federal

23  district.  I am not an expert or by any means well versed in

24  bankruptcy law.  But if the trustee, the bankruptcy trustee,

25  were able to take control of the assets in India it would be

Napolitano - Redirect                    43

1   miraculous, you know, benefit to you because if he's able to

2   liquidate those properties and put them in the bankruptcy

3   trustee's account then it would await a decision by I guess

4   the State Supreme Court.  But at least the money is

5   safeguarded.

6          THE COURT:  Isn't that something that the

7   matrimonial judge could order if she felt that were

8   appropriate?  Couldn't she --

9          THE WITNESS:  Yes.

10          THE COURT:  A receiver for those properties who

11   would then be empowered to go and take control of those

12   properties in India and sell them?

13          THE WITNESS:  If they were all or most of them or

14   any of them are in the individual name of the defendant, Mr.

15   Veeraswamy.

16          THE COURT:  I see.

17          THE WITNESS:  If they're in the name of a trust then

18   I don't believe the judge has any authority to equitably

19   distribute that asset.

20          THE COURT:  Well, okay.  Well, the bankruptcy

21   trustee would be similarly limited to assets that belonged to

22   the property of this defendant's estate although would have

23   the ability potentially to recover assets that have been

24   transferred within a period of time.  I'm not sure which --

25   what period would apply given that the assets are located in

Napolitano - Redirect                    44

1   India, but --

2           THE WITNESS:  But in essence pierce the corporate

3   veil in essence or pierce the --

4           THE COURT:  Well, not pierce the corporate veil but

5   recover fraudulent conveyance.

6           THE WITNESS:  Okay.

7           THE COURT:  But the maximum reach back would likely

8   be six years.

9           THE WITNESS:  I mean I don't -- I don't know --

10          THE COURT:  Six years from the date the -- the date

11  the bankruptcy was commenced, not six years from the

12  matrimonial -- the commencement of the matrimonial

13  proceedings.

14          THE WITNESS:  Well, that's almost all the way back

15  to -- that's only one year after the matrimonial was

16  commenced.  If it goes back six years, the matrimonial is

17  2011.

18          THE COURT:  My point is if he bought -- if he

19  transferred these properties to a trust before that it might

20  be beyond the reach of the statute of limitations.

21          THE WITNESS:  All right.

22  BY MS. VEERASWAMY:

23  Q.   Mr. Napolitano, has Mr. Veeraswamy ever provided any

24  information for said trust?

25  A.   He attached as exhibits in answering affidavits to our

Napolitano - Redirect                          45

1  motion, if you recall, information about the properties in

2  India, and for the first time we learned about what his

3  position was about these properties in India.  Before these

4  exhibits were attached to answering affidavits to our motions

5  we were never given any discovery on that issue.

6  Q.   And Mr. --

7  A.   To my recollection.

8  Q.   Mr. Napolitano, the deeds and the properties' documents

9  that were apostilled from the Indian consulate in India that

10 these properties, were they all in trust or were -- or do you

11 recall that they were in Mr. Velappan Veeraswamy's personal

12 name?

13 A.   My recollection is that the majority of them are in his

14 individual name.

15 Q.   And these were the apostilled registered documents from

16 the Indian consulate?

17 A.   Provided to me by you, yes.

18 Q.   And as far as you understand, this is very similar to

19 having apostilled documents from the U.S. court to use in

20 other courts abroad?

21 A.   It's similar to a certified copy of a deed we would get

22 from the county clerk's office in say Queens is my

23 understanding.

24            THE COURT:  Anything else?

25            MS. VEERASWAMY:  No.

                    Napolitano - Redirect                    46

1              THE COURT:  Okay.

2              MS. VEERASWAMY:  Thank you, Mr. Napolitano.

3              THE COURT:  All right.  Anything else?  Are we done

4    or --

5              MR. BRONSON:  I have a -- I have a document that was

6    not in the evidence binder but because I'm using it on

7    redirect I'd like to be able to use it.

8              THE COURT:  Okay.  Any objection?

9              MS. VEERASWAMY:  I object.

10             THE COURT:  Does Mrs. -- has Mrs. Veeraswamy been

11   shown a copy of this prior to now?

12             MR. BRONSON:  No.

13             MS. VEERASWAMY:  I --

14             MR. BRONSON:  I didn't get it until after and I'm

15   only using it on the --

16             MS. VEERASWAMY:  I object, Your Honor.  We had been

17   directed by you to do a joint pretrial order by the 25th.  I

18   had awaited Mr. Bronson's --

19             THE COURT:  And to exchange documents as well.

20             MS. VEERASWAMY:  Yes, he did not give me anything,

21   so I took the liberty of doing the joint pretrial order and

22   emailing it to him the week before.  He did say he would

23   peruse it and work on it over the weekend.  He did not send me

24   anything until the 24th late night without any attachments.

25   He said the attachments would follow --

Napolitano - Redirect                47

1          MR. BRONSON:  Your Honor, this is --

2          MS. VEERASWAMY:  Let me finish, sir.

3          He then emailed that the attachments would follow

4   the next day which was the 25th which was when the joint

5   pretrial order was due.  He did say that he was not available

6   that day, that he was in court, and he had his paralegal

7   confirm with me.  At the end of the day, it went from 10:00

8   until 8:00 at night that, you know, I was putting this

9   together, and I was under the impression that he was going to

10  file it on the 25th.  He did not which required me to take the

11  initiative to file it myself so that we would have it for

12  today.  This went much like the divorce court.  You know, Mr.

13  Veeraswamy and his attorney have had ample direction to do

14  things and have not.  So I really object at him coming at this

15  day late and a dollar short to present things that weren't --

16         THE COURT:  Okay.  Let's --

17         MS. VEERASWAMY:  That he had put the opportunity to

18  put prior.

19         MR. BRONSON:  Your Honor, I don't appreciate being

20  bashed.

21         THE COURT:  Okay.

22         MR. BRONSON:  You know, I did everything I was

23  supposed to do, and I prepared the joint binder and submitted

24  it.  I submitted the order properly.  I didn't upload it on

25  the docket because that's not what we do in this court.  We

Napolitano - Redirect                                48

1    submit it to be an order.

2              THE COURT:  Right.

3              MR. BRONSON:  And Mrs. Veeraswamy didn't know that.

4    But yet she's --

5              THE COURT:  Okay.  All right.  But the question --

6              MS. VEERASWAMY:  Your Honor --

7              THE COURT:  The question -- well, the question

8    before me is should I allow you to use this exhibit which was

9    not previously provided to Mrs. Veeraswamy.

10             MR. BRONSON:  Correct.

11             THE COURT:  And was not exchanged -- and was not

12   part of the exchange of exhibits, correct?

13             MR. BRONSON:  Yes.

14             THE COURT:  Okay.  And why would I do that?

15             MR. BRONSON:  Well --

16             THE COURT:  Why should I do that?

17             MR. BRONSON:  Your Honor, it's just the -- it's the

18   formation of the trust, and Mr. Napolitano is saying he never

19   saw documents on the trust.  And this is a copy of the

20   document.

21             MS. VEERASWAMY:  I object to this, Your Honor.  And

22   may I add one more thing, please?

23             THE COURT:  Is this -- is this --

24             MR. BRONSON:  Your Honor, that's fine.

25             THE COURT:  I'm sorry.

Napolitano - Recross                    49

1          MR. BRONSON:  I withdraw.

2          THE COURT:  Just a minute.

3          MS. VEERASWAMY:  Thank you.

4          THE COURT:  Is this -- is this a document that has

5    been previously provided to Mrs. Veeraswamy either in this

6    proceeding or any other proceeding?

7          MR. BRONSON:  No, Your Honor, but I withdraw the

8    request.

9          MS. VEERASWAMY:  And I would like to say one more

10   thing, Your Honor.  The -- I had given my work of the pretrial

11   order the week before to Mr. Bronson.

12         THE COURT:  Okay.  I -- you know, this is not

13   really -- not something that I need to hear right now.

14         MS. VEERASWAMY:  Thank you, Your Honor.

15         THE COURT:  Okay.  So are there any other questions

16   for this witness?

17                      RECROSS-EXAMINATION

18   BY MR. BRONSON:

19   Q.   Mr. Napolitano, I don't want to discuss the terms, but

20   was there recently a settlement under discussion between Mrs.

21   Veeraswamy and Mr. Veeraswamy?

22   A.   In October of 2017, the trial was set for a week the

23   second or third week of October.  For some reason, I don't --

24   I'm not going to go into it because it's not part of the

25   question -- the trial didn't take place until Thursday and we

1  got one full day or one full afternoon before it was

2  adjourned.  So we only have like one day of testimony on the

3  record.  But as we were in court every day that week we were

4  negotiating in the hallway, and Mr. Levin came -- proposed

5  something.  I ran back to my office.  I drafted something, and

6  we had the framework for the first time of a possible

7  settlement.  But it always got bogged down on the disposition

8  of the properties in India and how title was held.  My

9  client's position was I'm not arguing for any of these

10 properties for myself.  I just want an agreement that if

11 it's -- some of these properties are in trust or you claim

12 they're in trust that you will amend the trust or provide

13 proof that the trust names are children as beneficiary.  And

14 we never got that.  Because I don't --

15          THE COURT:  Okay.  I -- okay.  I don't know that I

16 really need to know anything about settlement discussions or

17 the --

18          MR. BRONSON:  All right.  Thank you.

19          THE COURT:  Okay.  Anything else?  Any other

20 questions?  I think we're done, right, with this witness?

21          MR. BRONSON:  Yes.

22          MS. VEERASWAMY:  Yes.

23          THE COURT:  Okay.  You may step down, sir.

24          THE WITNESS:  Thank you, Your Honor.

25          THE COURT:  You may call your next witness, Mrs.

Kamaldoss - Direct                           51

1   Veeraswamy.

2          MS. VEERASWAMY:  Yes, I would like to call Mr.

3   Kamaldoss, Ezhil.

4          THE COURT:  Yes.

5          THE CLERK:  Raise your right hand.

6           EZHIL KAMALDOSS, CREDITOR'S WITNESS, SWORN

7          THE CLERK:  Be seated.  Speak --

8          MR. BRONSON:  Your Honor, I object to this --

9          THE CLERK:  Tell your name for the record and the

10  address.

11         THE COURT:  Let him -- let him give his name and

12  that, though.

13         THE WITNESS:  Yeah, I'm Ezhil Kamaldoss residing at

14  24016 86th Avenue, Bellerose 11426.

15         MR. BRONSON:  Your Honor, I believe this witness is

16  going to be presented as an expert witness, and we've had

17  no -- we've seen no qualifications.  I don't know if under

18  Daubert it's a -- he's an appropriate person to testify.

19         THE COURT:  Well, let's see what -- let's see --

20  let's see what is proffered her.

21         MR. BRONSON:  Yes, Your Honor.

22                      DIRECT EXAMINATION

23  BY MS. VEERASWAMY:

24  Q.   Yes, may I call you Mr. Ezhil?

25  A.   (No audible response)

1  Q.   Okay.  Mr. Ezhil, I would like to show you this Exhibit
2  10 which is KB-086.
3          MR. BRONSON:  Your Honor, there's no foundation.
4          THE COURT:  Well, she's showing them to him, and
5  then we'll see whether there's --
6          MR. BRONSON:  Okay.
7          THE COURT:  What the questions are.
8          MR. BRONSON:  Yes, Your Honor.
9          THE COURT:  Do you have better copies?
10          MS. VEERASWAMY:  I do, but I haven't been able to --
11  because he didn't give me copies of that.  I just got them
12  today.
13          THE COURT:  Are these the -- are those better copies
14  of the same -- these same documents?
15          MS. VEERASWAMY:  Yes.
16          THE COURT:  Why don't you show those to the witness
17  at least, and you can pass them around so everybody can see
18  them.  Are they -- are they numbered to correspond with the
19  Bates stamps?  Have you been able to do that?
20          MS. VEERASWAMY:  No, because I just got them today.
21          THE COURT:  Well, would it make sense for you to
22  take a minute and do that?
23          MS. VEERASWAMY:  Yes.
24          THE COURT:  And I see there are many more -- there
25  are more photographs than there are Bates stamp documents I

1  would note.

2          MR. BRONSON:  Your Honor, Mr. Veeraswamy stepped out

3  to the men's room.  I don't know if you want to --

4          THE COURT:  Okay.  Do you want me to wait for a

5  minute?

6          MR. BRONSON:  -- wait a second or --

7          THE COURT:  Okay.

8          MR. BRONSON:  I don't think it's --

9          THE COURT:  Why don't you -- why don't you take --

10 I'll step down here.  Why don't you organize your -- these to

11 correspond with what you've put in the witness binder.

12         MS. VEERASWAMY:  Okay.

13         THE CLERK:  All rise.

14 (Off the record at 12:21 p.m.)

15 (Back on the record at 12:35 p.m.)

16         THE CLERK:  Be seated, please.

17         THE COURT:  All right.  Go ahead, Mrs. Veeraswamy.

18                 CONTINUE DIRECT EXAMINATION

19 BY MS. VEERASWAMY:

20 Q.   Okay.  Mr. Ezhil, I'm showing you KB-089 and KB-087.

21 A.   Yes.

22 Q.   With the documents that are marked, is it -- is it your

23 understanding that these documents are the same as what it is

24 referenced in the photo?

25 A.   Yeah.  Yes.

1          MS. VEERASWAMY:  Do I give them to him or to you,

2   ma'am?

3          THE COURT:  You can give -- are there a copy -- you

4   have multiple copies?

5          MS. VEERASWAMY:  Almost the same thing.

6          THE COURT:  Why don't you show them to Mr. Bronson.

7   (Counsel consult)

8          MR. BRONSON:  Your Honor, some of these are

9   different than what's in the binder.  I don't -- we don't know

10  what this particular one is although it's marked 87.  It's not

11  what's in the binder as 87.  This one is the one that's in the

12  binder as 87.

13         THE COURT:  Okay.  Well, so you're only -- I would

14  like you to just to use what's in the binder, please.

15         MS. VEERASWAMY:  Okay.

16         THE COURT:  A copy -- if you have a better -- what

17  you're -- if what you're using is a better copy of what's

18  already in the binder that's fine.

19  (Counsel consult)

20         MR. BRONSON:  I mean I don't mind these other two

21  pictures that are of the same thing, but they're different

22  than what's in the binder.

23         THE COURT:  All right.  Okay.  If you don't object

24  to their use then we can go forward.  If you do object to it,

25  then I have to rule on something.

                    Kamaldoss - Direct                    55

1            MR. BRONSON:  I'm not objecting to -- I'm objecting

2   to that one, but I -- the second one that you have here, Mrs.

3   Veeraswamy.  I'm objecting to that one.

4            MR. VEERASWAMY:  Can I speak?

5            MR. BRONSON:  The others are fine.

6            THE COURT:  Okay.  All right.  So -- and the reason

7   you're objecting is because it's not a copy of -- to -- as far

8   as you can tell of something that's in the binder?

9            MR. BRONSON:  Exactly.

10           THE COURT:  Okay.

11           MR. BRONSON:  And I can't really relate it to what

12  the -- you know, it's not -- it's not like a different view of

13  what's --

14           MR. VEERASWAMY:  Can I speak?

15           THE COURT:  No, you don't speak.  You don't speak

16  until somebody asks you a question.

17           MR. VEERASWAMY:  Okay.

18           THE COURT:  And --

19           MS. VEERASWAMY:  May I -- may I bring a point?  Mr.

20  Sezhian was in India two months ago, did view the properties,

21  and did -- he was boots on the ground there and can verify to

22  the fact that for the development of the properties.

23           THE COURT:  Okay.  But did he take these -- did he

24  take the pictures in the -- you know, these pictures should

25  have been supplied before the trial.

Kamaldoss - Direct                                56

1          MS. VEERASWAMY:  Yes, he only recently was able to

2    get them.

3          THE COURT:  Okay.  Well --

4          MS. VEERASWAMY:  So I'll leave that one out.

5          THE COURT:  So leave that one out for the moment.

6          MS. VEERASWAMY:  Okay.

7          THE COURT:  You can ask -- you can ask him about it

8    and we can see whether Mr. Bronson objects at that point.  But

9    why don't you start with the ones that are copies of what's in

10   the binder?  Mr. Bronson is trying to give you something.

11         MR. BRONSON:  I'll just give you this back.

12         MS. VEERASWAMY:  Thank you.

13         THE COURT:  Okay.  So why don't you go ahead,

14   please?  You can show those to the witness and ask whatever

15   questions it was that you wanted to ask him about that.

16         MS. VEERASWAMY:  May I take the other one?

17         MR. BRONSON:  Oh, certainly.  It's yours, yeah.

18         MS. VEERASWAMY:  Thank you.

19         THE COURT:  Go ahead, Mrs. Veeraswamy.

20         MS. VEERASWAMY:  Okay.

21   BY MS. VEERASWAMY:

22   Q.   Mr. Ezhil, are you a citizen of India?

23   A.   Yeah.

24   Q.   Do you own your own personal properties in India as well?

25   A.   Yeah.

Kamaldoss - Direct                          57

1  Q.   You are familiar with documentations of deeds and

2  registrar papers?

3  A.   Yeah.

4  Q.   When did you visit these properties of Mr. Veeraswamy?

5         THE COURT:  Wait, that's a -- I'm objecting to the

6  form of the question.  I'm taking Mr. Bronson's view.  You

7  need to -- you're assuming that he did.  I think you have to

8  rephrase your question.

9         MS. VEERASWAMY:  Oh.  If you --

10         THE COURT:  Your question assumes something that

11 hasn't been --

12         MS. VEERASWAMY:  Oh, okay.

13         THE COURT:  -- established.

14 BY MS. VEERASWAMY:

15 Q.   So you have the 87 and 89 which are the --

16 A.   Yeah.

17 Q.   -- pictures before you.  Have you physically visited

18 these properties?

19 A.   Yeah, I physically visited these properties.  And --

20 Q.   Which number is at the top there, sir?

21 A.   And even in some --

22         THE COURT:  I'm sorry.  What -- the question asked

23 of you was what number -- what number --

24         THE WITNESS:  87.

25         THE COURT:  Okay.

Kamaldoss - Direct                          58

1        THE WITNESS:  KB-087.

2        THE COURT:  Okay.

3   BY MS. VEERASWAMY:

4   Q.   Regarding KB-087, what is that structure and what is the

5   property and where?

6   A.   This property is -- it's a college, and at present the

7   college is not functioning and -- due to less number of

8   students.  And this property at present day they have given

9   for the rent for the police academy.

10  Q.   And when did you visit that property?

11  A.   This property I visited two months before.

12        MR. BRONSON:  I'm sorry, Your --

13        MS. VEERASWAMY:  And are there --

14        THE COURT:  Just a minute.  One second.  What's the

15  objection?

16        MR. BRONSON:  The objection is there's -- I don't

17  know what this witness' expertise is.  I don't know why he's

18  testifying.

19        THE COURT:  Okay.  So, Mrs. Veeraswamy, this witness

20  is permitted to testify about things that he is -- know --

21  directly observed or has direct knowledge of.

22        MS. VEERASWAMY:  Yes.

23        THE COURT:  And not as to things that would be his

24  opinion or matters of expertise unless he's established as an

25  expert and as -- but so your questions need to -- you need to

Kamaldoss - Direct                          59

1  elicit from him how he knows these things that he's testifying

2  about.

3           MS. VEERASWAMY:  Okay.

4           THE COURT:  Okay?

5           MS. VEERASWAMY:  Yes.

6  BY MS. VEERASWAMY:

7  Q.   So regarding these properties, did you --

8           THE COURT:  Why don't you -- why don't you take it

9  one by one.  If I -- if I could be -- if I could suggest.

10           MS. VEERASWAMY:  Okay.  The KB-087?

11           THE COURT:  Yeah.

12           MS. VEERASWAMY:  Okay.

13  BY MS. VEERASWAMY:

14  Q.   The KB-087, did you personally physically go to the

15  property and observe this piece of property?

16  A.   Yes.

17  Q.   When did you go there, sir?

18  A.   Two months before in the month of May.

19  Q.   Did you take these pictures as well?

20  A.   Exactly.  In some pictures even I --

21  Q.   I'll ask you.  Okay.  And if you could give the

22  description of the property that has been developed there,

23  just a general description of the physical property.

24           THE COURT:  And based upon your observation.

25  BY MS. VEERASWAMY:

Kamaldoss - Direct                    60

1   Q.   Your observation.

2   A.   This property is something -- the building shows that it

3   is lot of classroom which mainly built based to run a big

4   college, arts and science college.  And due to lack of

5   students --

6   Q.   Okay.  That's -- I'm just asking about the property.  Is

7   there developed infrastructure there?  Is there water,

8   electricity, roads going --

9   A.   Everything is good.

10  Q.   And so as to the activity that is in the college, what if

11  anything did you observe as activities that were going on in

12  that building that is a college?

13  A.   At present there is no college running.  They have given

14  the place for a rental to police academy.

15        MS. VEERASWAMY:  Okay.  And if you could look at the

16  list of the -- actually, may I just ask about the other photo,

17  please?

18        THE COURT:  Yes.

19  BY MS. VEERASWAMY:

20  Q.   The other -- the other photo, KB-089.

21  A.   Yes.

22  Q.   Are those pictures in your hand the same as what is here?

23  A.   Cambridge College of Arts.

24  Q.   Yes, so is that a separate building in its entirety?

25  A.   Yeah, this is a separate building which is the whole --

Kamaldoss - Direct                      61

1   the -- I mean the main college.

2   Q.   Okay.  So there are two separate developed pieces of

3   property?

4   A.   Exactly.

5   Q.   And is this property located on a main thoroughfare with

6   bus services and such?

7   A.   Yeah, this property is located in the highway -- I mean

8   the bus road.

9   Q.   Is there infrastructure as well like water, electricity,

10  furnished rooms, and such?

11  A.   Everything is good.  And the time when I visited the

12  second piece, a school was running.  I mean it's like a

13  kindergarten school, and next to that even that is

14  [inaudible], a small hotel.

15  Q.   Okay.  So you did visit these --

16  A.   Yeah.

17  Q.   -- properties?  And you're aware of the developments that

18  are there?  You saw?

19  A.   Yeah.

20  Q.   Okay.

21          THE COURT:  Okay.

22          MS. VEERASWAMY:  Do you have any questions regarding

23  the photos?

24          THE COURT:  So are you offering these in evidence?

25          MS. VEERASWAMY:  Yes.

Kamaldoss - Direct                          62

1      THE COURT:  Okay.  And what connects them to the

2  defendant, to Mr. Veeraswamy?

3      MS. VEERASWAMY:  That in divorce court he has denied

4  that he had any properties in India.

5      THE COURT:  Okay.  But how do we know that these

6  properties that we are looking at pictures of are properties

7  that belong to Mr. Veeraswamy?

8      MS. VEERASWAMY:  We're going to reference the

9  documents that are here.

10      THE COURT:  Okay.  Then you probably should go

11  through that before we get to the admitting them in evidence,

12  okay?

13      MS. VEERASWAMY:  All right.  Okay.

14  BY MS. VEERASWAMY:

15  Q.  So I would like to -- documents, they start from 41 to

16  44.  Yes, 41 through 44.

17      THE COURT:  I'm sorry.  And that is -- which -- what

18  is the exhibit number of of that?

19      MS. VEERASWAMY:  That's KB-41 and 44.

20      THE COURT:  And the -- and the number?

21      MS. VEERASWAMY:  I believe it is 5, Your Honor.

22      THE COURT:  Okay.  Thank you.

23                  [Pause in proceedings.]

24  BY MS. VEERASWAMY:

25  Q.  Okay.  Mr. Ezhil, thank you for reviewing those.  What

Kamaldoss - Direct                           63

1  are these documents in your knowledge?

2  A.    This documents, it's each and everything -- it's a single

3  document which has been mentioned the name of the seller as

4  well as the buyer name and the document number.  And this

5  document number refers to the local sub-registrar office in

6  India.

7  Q.    Okay.  Is that similar to like an address or a block and

8  lot here in the U.S.?

9  A.    Yeah.

10 Q.    So each line item represents a separate parcel of

11 property?

12 A.    Yes, separate piece of land.  Yeah.

13         MR. BRONSON:  Your Honor, I have to object because I

14 don't know why the witness --

15         THE COURT:  Okay.  Mrs. Veeraswamy, you're going to

16 have to get -- put on the record how this document was

17 created, where did this information come from.  You know, we

18 don't know anything about that.  You're -- he's testifying as

19 to what this is, but we don't know how he knows that, where

20 this came from.  Does -- was this a copy of something that

21 was -- that was in a public record, or is this something the

22 witness created himself?  Is this something somebody else

23 created?  These are all questions we don't know the answer to,

24 so you need in your questioning of him --

25         MS. VEERASWAMY:  Okay.

                    Kamaldoss - Direct                    64

1           THE COURT:  -- to help -- to make us understand

2    where this came from and where this information came from and

3    how this witness has -- is competent to testify about it.

4           MS. VEERASWAMY:  To help simplify --

5           THE COURT:  Yes.

6           MS. VEERASWAMY:  -- we didn't add all of the

7    documents which would have been substantial.

8           THE COURT:  I don't know what this is.

9           MS. VEERASWAMY:  Okay.

10          THE COURT:  What --

11   BY MS. VEERASWAMY:

12   Q.   Mr. Ezhil, were you a power of attorney for me for Indian

13   legal proceedings?

14   A.   Yeah.

15   Q.   So you could on my behalf secure documents to properties?

16   A.   Yeah.

17   Q.   In your time while you were doing that how many documents

18   of properties would you say that you have secured?

19   A.   I have secured nearly like 30 approximately.

20   Q.   And where were those documents secured from?

21   A.   The documents was being collected from the sub-registrar

22   office, I mean a true copy.

23   Q.   And were these documents also sealed through the --

24   A.   Sealed by the notary.

25   Q.   And through the -- were they sealed also through the

Kamaldoss - Direct                                65

1  Government of India?

2  A.    Yeah.

3  Q.    Were they having the red seal in the back of each said

4  document?

5  A.    Exactly.

6  Q.    Would you attest that these lists of properties are in

7  fact the documents that were submitted to Supreme Court?

8  A.    [Foreign language spoken]

9  Q.    As belonging to Mr. Veeraswamy or said trust?

10 A.    That is the same document.

11       THE COURT:  Did it -- submitted by Mr. Veeraswamy --

12       MS. VEERASWAMY:  No.

13       THE COURT:  -- or by you?

14       MS. VEERASWAMY:  Submitted by me.

15       THE COURT:  Okay.

16       MS. VEERASWAMY:  And these documents were

17 authenticated and notarized and certified through the

18 Government of India, and this was compiled from that.

19       MR. BRONSON:  Your Honor, I know Mrs. Veeraswamy is

20 pro se, but I -- there's a whole host of problems with this.

21       THE COURT:  Is this --

22       MR. BRONSON:  Best evidence rule --

23       THE COURT:  Is this -- is this prepared from

24 documents that were admitted into evidence in the Supreme

25 Court?

Kamaldoss - Direct                                    66

1           MS. VEERASWAMY:  Yes.

2           THE COURT:  Do you have those documents?

3           MS. VEERASWAMY:  They are --

4           THE COURT:  The underlying documents from which this

5    chart was made?

6           MS. VEERASWAMY:  Not here, Your Honor.  To

7    facilitate the amount of paperwork that --

8           THE COURT:  So were these --

9           MS. VEERASWAMY:  -- within a short time --

10          THE COURT:  Were these actually admitted into

11   evidence in the Supreme Court?

12          MS. VEERASWAMY:  Yes, and this -- my point is

13   that --

14          THE COURT:  So what these -- what were the documents

15   that were admitted in evidence?

16          MS. VEERASWAMY:  They were deeds.

17          THE COURT:  Okay.  And this is a chart showing the

18   deeds?

19          MS. VEERASWAMY:  Of each property.

20          THE COURT:  Okay.

21          MS. VEERASWAMY:  And that is the deeds that Mr.

22   Ezhil collected that a list was compiled from, and he did view

23   the properties and can attest to their existence.

24          THE COURT:  Well, if they were -- if you had the

25   underlying documents this would be something that could be

1  admitted as a chart, but in the absence of that or in the --

2  and I believe that you -- and you have -- this -- the

3  underlying documents have to have been made available but --

4  which I guess you might say Mr. Veeraswamy has seen them but

5  his -- Mr. Bronson hasn't.

6       MS. VEERASWAMY:  And I would like to add, Your

7  Honor, that in the motion to convert the property is listed in

8  the disposition.  He does list 29 properties in India.

9       THE COURT:  And which -- wait a minute.  Which --

10  his motion to -- his -- your motion to convert?

11       MS. VEERASWAMY:  Yes, but on his initial petition he

12  lists the two marital residences and the 29 properties in

13  India in trust.

14       THE COURT:  They're -- are they listed -- what --

15  they're listed on his Schedule A?

16       MS. VEERASWAMY:  Let me see where's the initial

17  filing.

18                    [Pause in proceedings.]

19       THE COURT:  Yeah, in Schedule A he doesn't -- he

20  doesn't indicate the addresses or any other information.  He

21  just says, "Debtor put 29 properties in India into a revocable

22  trust, the Veeraswamy Educational Trust."  Okay.

23       MS. VEERASWAMY:  And we are clarifying the

24  properties that are there and that --

25       THE COURT:  Okay.  But you can't use this document I

Kamaldoss - Direct                          68

1  believe unless you have the underlying -- this is a chart.

2  Who made this chart?  Did you make this chart?  Did he make

3  the chart?

4          MS. VEERASWAMY:  It was compiled by an attorney in

5  India.

6          THE COURT:  This chart was made by an attorney in

7  India?

8          MS. VEERASWAMY:  Yes.

9          THE COURT:  Okay.  And he made it from the -- from

10  the documents that you admitted in evidence in Supreme Court?

11          MS. VEERASWAMY:  Yes.

12          THE COURT:  Okay.  So you don't have the attorney

13  who made this chart here to testify about it and you don't

14  have the -- if you have the underlying documents then that

15  would be -- then this would be -- that -- those would be

16  admissible if there are certified copies of government

17  records.  But -- and this chart would be admissible as a chart

18  that is explanatory of those documents.  But in the absence of

19  our having this we don't have -- I can't -- I don't think this

20  can -- is something that we can pursue any further.  You can

21  ask -- you can ask him questions but he didn't make this

22  chart.  He doesn't know what these things are.  He has no

23  direct knowledge.

24          MS. VEERASWAMY:  He has -- he has acted with a power

25  of attorney on my behalf to secure the properties.  He is

Kamaldoss - Direct                    69

1  aware of what properties were there that he collected from the

2  registrar and such.

3          THE COURT:  So you're saying that he is able to

4  testify that these are -- that this chart is accurate because

5  he's looked at the underlying document.

6          MS. VEERASWAMY:  Yes.

7          THE COURT:  Is that what you're saying?

8          MR. BRONSON:  But, Your Honor, I don't have the --

9          THE COURT:  They need to be made available to Mr.

10 Bronson anyway.  Mr. -- and Mr. Veeraswamy.

11         MS. VEERASWAMY:  Well, Mr. Veeraswamy could also be

12 requested to provide these documents as well.

13         THE COURT:  He could be, but we're in -- we're at

14 trial right now.

15         MS. VEERASWAMY:  Oh, okay.

16         MR. BRONSON:  And again, it's --

17         THE COURT:  If this case is converted to a 7 this

18 will go in -- and this will -- is something the trustee will

19 obviously look into.

20         MS. VEERASWAMY:  Okay.

21         THE COURT:  But -- so in the absence of -- it seems

22 to me that in the absence of a summary -- I mean of the

23 original documents, there's a proponent summary to prove

24 content.  "Proponent may use a summary chart or calculation to

25 prove the content of voluminous writings, recordings, or

Kamaldoss - Direct                    70

1   photographs that cannot conveniently be examined in court.

2   The proponent must make the originals or duplicates available

3   for examination or copying or both by other parties at a

4   reasonable time and place."

5           MS. VEERASWAMY:  Okay.  I --

6           THE COURT:  "And the court may order the proponent

7   to produce them in court."

8           MS. VEERASWAMY:  Okay.  I understand now.

9           THE COURT:  So if you're proffering --

10          MS. VEERASWAMY:  I'm prepared to make an addendum.

11          THE COURT:  I'm sorry.  If you're proffering this as

12  a chart that -- of the -- that reflects the properties -- the

13  information about the properties that are -- were -- are part

14  of the Supreme Court exhibits -- do you have copies of those

15  exhibits?

16          MS. VEERASWAMY:  In the -- my lawyer's office.

17          THE COURT:  He has them?  He has copies?

18          MS. VEERASWAMY:  Yes.

19          THE COURT:  Okay.  So what I think we could do is

20  take this subject to connection and she can produce -- and if

21  this is -- if we -- if I'm not able to rule on this based upon

22  rule -- you know, based upon without reference to this then we

23  can allow Mrs. Veeraswamy to provide you with the materials

24  that were previously admitted in evidence to the Supreme Court

25  and unless you have some objection this would be admissible --

Kamaldoss - Direct                    71

1          MR. BRONSON:  I do.

2          THE COURT:  -- as a -- as a summary.

3          MR. BRONSON:  But my problem is that I don't know

4   when this chart was prepared, and I don't know if this -- I

5   mean it's got buyer's name.  Now buyer's name, I mean is

6   that -- it could be any point in time.

7          THE COURT:  Well, it's got dates on it, date of

8   registration, and I guess what you would -- what it would

9   be -- the point here is that it is a -- the -- what this is

10  being presented as is a summary with -- that takes extract

11  information from public records that were received in evidence

12  in the Supreme Court.  So if that's what they are then that's

13  fine, but I don't -- I think that --

14         MR. BRONSON:  I'm not even sure the relevance

15  because if the dates are -- you know, if it's 2001 that it was

16  in Mr. Veeraswamy's name and there was a trust created

17  sometime after that and they were transferred it doesn't --

18  this isn't giving -- we don't know what this -- what this

19  chart means is what I'm -- is what I'm saying, Your Honor.

20         THE COURT:  In the absence of the underlying

21  documents we don't know.

22         MR. BRONSON:  Yeah, and I -- and I don't know the

23  witness' expertise in being able to go to the recording office

24  in India and reviewing these documents.

25         THE COURT:  If this is -- he didn't make this chart,

Kamaldoss - Direct                    72

1   and if you -- it doesn't matter who made the chart.  If the

2   chart -- if it's a chart it's admissible as long as you -- as

3   long as you have the underlying documents which are the -- had

4   contained the information which is on the chart.

5           MR. BRONSON:  Right.

6           THE COURT:  Because then you or anybody else can

7   look at that and see if it's an accurate chart.  So it doesn't

8   matter who made the chart.

9           MR. BRONSON:  I agree, Your Honor.  I'm not arguing

10  that point.  The chart is one issue, and you've said how you

11  want to deal with that.

12          THE COURT:  Right.

13          MR. BRONSON:  And I'm fine with that.  But the

14  witness' expertise --

15          THE COURT:  Okay.  Well, let's -- I don't know

16  whether -- what else you're going to have the witness testify

17  about but you need to move on --

18          MS. VEERASWAMY:  Yes.  It was -- yes.

19          THE COURT:  -- move forward on this.

20  BY MS. VEERASWAMY:

21  Q.   So, you know, just to recap that, Mr. Ezhil, you have

22  seen the properties.  You're aware of the properties, the

23  ownership, and aware of the documents -- underlying documents

24  that were collected to compile this list?

25  A.   Yes.

Kamaldoss - Direct                    73

1  Q.   And you are familiar because you own property yourself, a

2  number of properties, so you are very familiar with real

3  estate transactions, how to get particular copies as well as

4  having an advocate in India to supervise as well?

5        THE COURT:  This is what's called leading questions

6  which you're not permitted to do unless you are -- the witness

7  is a hostile witness.  Leading questions, I guess that's self-

8  explanatory what that is.  You're saying blah, blah, blah,

9  blah, blah, isn't that correct?  That's not okay.  And --

10       MS. VEERASWAMY:  I can withdraw that.

11       THE COURT:  -- what I'm going to do here is I will

12  reserve decision on whether this is admissible if I need to

13  think about it at all and until such time as you produce the

14  underlying materials that are reflected on this chart.  But

15  you might want to tie the photograph back to that though.

16       MS. VEERASWAMY:  Yes.

17  Q.   Mr. Ezhil, the photographs that are before you, the 87

18  and 89, are those two properties reflected on the list?

19  A.   Yes.

20  Q.   And which properties would those be that are reflected on

21  that list?

22       THE COURT:  Which properties are they?

23  A.   KB-087 --

24  Q.   No, on the list.

25       THE COURT:  No, which properties on the list?

Kamaldoss - Direct                          74

1   A.    KB-042 and that serial number 7.

2           THE COURT:  I'm sorry, serial number 7?

3           THE WITNESS:  Yeah.  KB042.

4           THE COURT:  Okay.

5           THE WITNESS:  Serial number 7.  It's Educational

6   First.  That's something -- that's Cambridge University.

7           THE COURT:  87 is reflected on number 7?

8           THE WITNESS:  Yeah.

9           THE COURT:  Okay.  What else?  What about 89 or --

10  yes, 89.

11          THE WITNESS:  No, no, 89 is 7.

12          THE COURT:  89 is 7.  What's 87?

13          THE WITNESS:  Yeah.  87 -- because this list which

14  is some -- actually, I am the person who's a power to Karen in

15  India court.

16          THE COURT:  Yes.

17          THE WITNESS:  The court, in Indian court, I am the

18  [indiscernible] for Karen.  So whenever -- in her absence I

19  need to go to the court.  And this list has been prepared by

20  the Indian attorney.  And very few information.  I mean

21  [indiscernible].  The document number, the seller, the buyer.

22  And this we need to -- it should be in the first page.  I mean

23  the land measurement, other things and that, but it's not

24  clearly mentioned.  The Education First [indiscernible] the 89

25  because of the Education First because I know this Cambridge

123

Kamaldoss - Direct                        75

1   University, it's under the Education First.

2          THE COURT:  So you can't tell which one --

3          THE WITNESS:  Yeah, yeah.

4          THE COURT:  -- of these entries is KB-87?

5          THE WITNESS:  Yeah, 87.

6          THE COURT:  Well then how did you know when you took

7   a picture of KB-87 that it was a property that belonged to Mr.

8   Veeraswamy?

9          THE WITNESS:  Because the day when I went to the

10  property I was carrying all the documents with me, the copy.

11         THE COURT:  Okay.  The copies of the actual --

12         THE WITNESS:  Yeah, the actual document.

13         THE COURT:  -- recorded deeds?

14         THE WITNESS:  The deed.

15         THE COURT:  Okay.

16         MS. VEERASWAMY:  And Your Honor, if I may present

17  Exhibit KB-082 which does give the [indiscernible] of the

18  property.

19         THE COURT:  Which number is that, please?

20         MS. VEERASWAMY:  That's Exhibit 9.

21         THE COURT:  So this is a copy of a document, an

22  official government document?

23         MS. VEERASWAMY:  Yes, from a high court attorney.

24  And Your Honor, if I could mention this has been an ongoing

25  issue in Supreme Court is that getting transparency and

1   disclosure of the properties that are abroad.

2          THE COURT:  So this is not a complete list I

3   presume?

4          MS. VEERASWAMY:  No, it's not.  It has been a work

5   in progress over seven years.  It has been like pulling teeth

6   trying to -- it's been very difficult for collection of said

7   documents.  It is only right --

8          THE COURT:  So are you proffering this in evidence?

9          MS. VEERASWAMY:  Yes.

10         THE COURT:  Okay.

11         MS. VEERASWAMY:  It is Exhibit 9.

12         THE COURT:  Right.  Any objection to this being

13  received in evidence?

14         MR. BRONSON:  Your Honor, it's not an original.  I

15  don't know if Ms. Veeraswamy has an original.

16         THE COURT:  I'm sorry, just repeat yourself?

17         MR. BRONSON:  I'm sorry, Your Honor.  I didn't stand

18  up.  It's not an original document and we haven't seen the

19  original.

20         THE COURT:  Originals are -- the fact that something

21  is not an original is not a reason to exclude it from

22  evidence.

23         MS. VEERASWAMY:  Originals are with Mr. Napolitano

24  and have been submitted as evidence into court.

25         THE COURT:  It appears to bear a seal.  Was this a

                    Kamaldoss - Direct                    77

1   public record?  What is the significance of the seal on this?

2           MS. VEERASWAMY:  It was authenticated, notarized

3   document from a high court attorney similar to a federal

4   attorney.

5           THE COURT:  Is this a document that the attorney

6   created?

7           MS. VEERASWAMY:  Based on the underlying said

8   documents that were referenced earlier.

9           THE COURT:  So this stamp by the commissioner

10  signifies what?  That this is --

11          MS. VEERASWAMY:  Created and they're authentic to

12  underlying documents.

13          THE COURT:  Okay.  All right.

14          MR. BRONSON:  Created?  Your Honor, I don't know who

15  created it.

16          THE COURT:  Well, it seems like what this -- this is

17  something like an affidavit it looks like.

18          MR. BRONSON:  Right, but it would have a signature.

19          THE COURT:  It says --

20          MR. BRONSON:   I mean maybe there is a signature.

21          THE COURT:  Well no, it's signed but it's an

22  affidavit which means that it is hearsay because the person

23  that created it is not here to be cross examined.

24          MS. VEERASWAMY:  I believe it would be clarified if

25  I perhaps submitted an addendum with the underlying documents.

Ezhil - Cross                                    78

1          THE COURT:  Yes.  It doesn't -- we don't know who

2   Kay Balu [Ph.] is, so -- all right.  So I'm not going to admit

3   this in evidence.

4          MS. VEERASWAMY:  Okay.  I believe that --

5          THE COURT:  Move on.  Can you move on, please?

6          MS. VEERASWAMY:  That's all my questions for Mr.

7   Ezhil.  Thank you.

8          THE COURT:  All right.  You may step down.  I'm

9   sorry, did you have anything, Mr. Bronson, on this witness,

10  for this witness?

11                      CROSS-EXAMINATION

12  BY MR. BRONSON:

13  Q.   Is it Mr. Ezhil or Mr. Sezhian?

14  A.   Ezhil.

15  Q.   Ezhil.  Okay.  Mr. Ezhil, where do you reside?

16  A.   Actually, I reside in Timba, India but very often I used

17  to come to New York.

18  Q.   How long have you been in New York for this time?

19  A.   In New York I come like or four months every time because

20  I have a business here.  I have my career company.

21  Q.   And do you have a residence here when you come here or do

22  you stay out of town?

23  A.   Residence in India.  My family is in India.  When I come

24  here I stay with my --

25  Q.   Where are you staying now?

Ezhil - Cross                                    79

1  A.   I'm staying in Bellerose, 244-16 --

2  Q.   Bellerose?

3  A.   -- 86th Avenue, Bellerose.

4  Q.   Are you being paid for today's testimony?

5  A.   No.

6  Q.   Have you ever been paid by Mrs. Veeraswamy?

7  A.   No.  I mean when I was -- I'm [indiscernible] for her in

8  India, I mean for the court.  In her absence I need to --

9  Q.   Then you're paid -- are you paid by her in any capacity?

10 That's my question first.

11 A.   Capacity?

12 Q.   Does she pay you?

13 A.   No, for the court expense she pays.  I mean in India.

14 Q.   So the answer is yes, is that correct?

15 A.   Yes.

16 Q.   So did she pay for your airfare to come over here?

17 A.   No, no, no.  I come here for my business.  I have my own

18 career company here.

19 Q.   And Mr. Sezhian -- Mr. Ezhil, what is your expertise?

20 What's your background?  What's your educa --

21 A.   Background?  I --

22 Q.   Let me ask you your education first.  What's your

23 education?

24 A.   Basically I'm a mechanical engineering graduate.

25 Q.   That's a college degree?

Ezhil - Redirect                                    80

1  A.   College degree in India.  I completed my --

2  Q.   Okay.  So with that degree, do you have legal experience

3  in India?

4  A.   Legal experience in what?

5  Q.   Well, you said that you reviewed these lists and that you

6  went and you put --

7  A.   The legal experience, getting property documents and

8  [indiscernible] 43 like for past 20 years I'm in business.  I

9  purchased a lot of property.  I sold property.  Even two

10 months before I buy a new property in India.  So I know even

11 the documentation and the legal aspect.

12 Q.   But you're not qualified, are you, to --

13 A.   I'm not qualified as a lawyer, but I have the knowledge.

14 I can [indiscernible] a document, what is the document and

15 what is the number, the document number, other things.

16 Q.   Or a notary?  You're not a notary?  Are you a notary?

17 A.   No, I'm not a notary.

18       MR. BRONSON:  I have no more questions, Your Honor,

19 for this witness.

20       THE COURT:  All right.

21       MR. BRONSON:  Thank you.

22       THE COURT:  Anything else?

23                   REDIRECT EXAMINATION

24 BY MS. VEERASWAMY:

25 Q.   Mr. Ezhil, regarding the payments that Mr. Bronson is

                    Ezhil - Redirect                    81

1  alleging, what were those payments?

2          MR. BRONSON:  Your Honor, I didn't allege anything.

3  Q.   What were those -- you know, were you expected to travel

4  on your own expense, train, hotels for court cases in India or

5  were you reimbursed for your train travel and your expense?

6  A.   No, in India, you're asking now?

7  Q.   Was that a substantial expense or was it very minimal?

8  Like what was the amount for train travel to a set court date

9  in India?

10 A.   I don't get it.

11 Q.   You live in Chennai?

12 A.   I live in Chennai.

13 Q.   Where were the court cases held?

14 A.   Court case, some case happens in Churu.  It's something -

15 -

16 Q.   Excuse me.  How far is Churu from Chennai?

17 A.   It's eight hours from Chennai to Churu.

18 Q.   Is that by train?

19 A.   Yeah.

20 Q.   Okay.

21 A.   It takes on day, night.

22 Q.   Yes.

23 A.   If you get to the night, there's morning.

24 Q.   So what was the train fee going to Churu?

25 A.   You mean Indian money or -- Indian money, it's --

82

1  Q.   You can convert to US.

2  A.   -- like 600.  Maybe for Indian -- US dollars, 10 to $15.

3  Q.   So the amounts in question that you were paid, reimbursed

4  for your train travel to a set court date was --

5  A.   Yeah.

6           MS. VEERASWAMY:  Thank you.

7           THE COURT:  All right.  Thank you.  Anything else?

8           MR. BRONSON:  No, Your Honor.

9           THE COURT:  All right.  So you are excused.  Do you

10 have any other witnesses that you're going to call?

11          MS. VEERASWAMY:  I mean I'd put myself on but I

12 don't know how to ask myself questions.

13          THE COURT:  Well, you can testify I think.  You need

14 to -- if you want to.  Do you want to take the stand now?

15          MS. VEERASWAMY:  Is that the procedure?

16          THE COURT:  You're permitted to do that.

17          THE CLERK:  Please raise your right hand.

18          MS. VEERASWAMY:  Is it necessary?  Because

19 everything has already been submitted [inaudible].

20          THE COURT:  Well, you don't need to -- if you want

21 me to consider your testimony, you need to give it but if

22 there's nothing that you want to say than you don't have to

23 testify.

24          MS. VEERASWAMY:  I mean everything was submitted on

25 papers.  I mean I'm not familiar with what is required of me

83

1  actually.

2        THE COURT:  Well, are you saying you want to rest on

3  your papers here in terms of the -- the purpose of this, let

4  me just, the purpose of this proceeding is to make a factual

5  record of relevant facts that I should take into consideration

6  in deciding whether it's appropriate to convert this case to a

7  Chapter 7.  So are there any facts that --

8        MS. VEERASWAMY:  Not beyond what has been submitted,

9  ma'am.

10        THE COURT:  All right.  So then what I'll do is I'll

11  take your papers as a proffer of your direct testimony.  And

12  so Mr. Bronson will be given the opportunity to cross examine

13  you.

14        MS. VEERASWAMY:  Okay.

15        THE COURT:  Okay?

16        MR. BRONSON:  And Your Honor, what papers are we --

17        THE COURT:  I assume you're talking about your

18  motion to convert, right?  Your addendum to motion to convert?

19  What papers are we talking about here?

20        MS. VEERASWAMY:  My motion to convert as well as the

21  addendum and the evidence that's put in.

22        THE COURT:  Well, the evidence that's put in I think

23  would be -- has to stand on its own.  In other words --

24        MS. VEERASWAMY:  That's what I was understanding.

25        THE COURT:  Yes.  And so to the extent there are

84

1  exhibits here that you -- they're in this binder but you

2  haven't referenced, they are not in evidence right now.  If

3  you reference them and offer them into evidence, then they can

4  be received in evidence but they -- so --

5          MS. VEERASWAMY:  I believe most of them had been

6  referenced.

7          THE COURT:  Well, but they need to be moved into

8  evidence.  Do you want to do that now?

9          MS. VEERASWAMY:  Yes.

10          THE COURT:  Is there any objection?

11          MR. BRONSON:  Your Honor, I still don't know exactly

12  what we're submitting into evidence.

13          THE COURT: Her exhibits which are in the binder.

14          MR. BRONSON:  The binder exhibits?

15          THE COURT:  Correct.

16          MR. BRONSON:  Yes, Your Honor.  That's fine.

17          MS. VEERASWAMY:  May I collect -=-

18          MR. BRONSON:  No objection.

19          MS. VEERASWAMY:  -- may I collect my binder?

20          THE COURT:  Yes, you may.

21          MR. BRONSON:  Well, I don't object to the Court's --

22  I have an objection to those lists subject to what we

23  discussed previously.

24          THE COURT:  Okay.  But other than that --

25          MR. BRONSON:  Other than that, I have no objection.

1          THE COURT:  Okay.  Other than that, the contents of

2    the binder would be received in evidence.  Okay.  Except for

3    Exhibit 5.  What about Exhibit 6?  I don't know what that is.

4    I don't think I'm in a position to receive that in evidence.

5          MR. BRONSON:  That's the same thing I think, Your

6    Honor.

7          THE COURT:  No, it's something different.

8          MR. BRONSON:  Well, but I mean it's along the same

9    lines.

10          MS. VEERASWAMY:  These were --

11          THE COURT:  Same thing with Exhibit 7, I don't know

12    what that is.

13          MS. VEERASWAMY:  These were receipts that Mr.

14    Veeraswamy submitted to what expenses that he has.

15          THE COURT:  Submitted where?

16          MS. VEERASWAMY:  That would be a question for Mr.

17    Veeraswamy.

18          THE COURT:  Well, submitted to -- when you say he

19    submitted them, who did he submit them to?  To you?  To the

20    Court?

21          MS. VEERASWAMY:  Mr. Joseph Levin, his previous

22    attorney, when there was a discussion from 2011 regarding the

23    substantial amount in the overseas Bank of India account, they

24    denied the existence of the account.  They kept saying it was

25    an alleged account.  And ultimately they did show that account

1  as empty.  His attorney provided receipts of that account and

2  --

3          THE COURT:  I am not able to receive these in

4  evidence.  I don't know what they'd be evidence of honestly so

5  I'm --

6          MS. VEERASWAMY:  Ma'am?

7          THE COURT:  Go ahead.

8          MS. VEERASWAMY:  It would be that this was a

9  personal account of Mr. Veeraswamy that was subject to a stay

10 order in the divorce court that he transferred money out,

11 monies out of.

12          THE COURT:  Well, that would be this -- I see.

13 These vouchers in other words?  Are they dated after the

14 commencement of the divorce proceeding?

15          MS. VEERASWAMY:  Yes.

16          THE COURT:  I don't know when the divorce proceeding

17 commenced.

18          MS. VEERASWAMY:  It was commenced in May of 2011.

19          MR. BRONSON:  But Your Honor, I don't know the

20 relevance --

21          THE COURT:  I don't think this is particularly --

22          MR. BRONSON:  I don't know the relevance for

23 bankruptcy.

24          THE COURT:  I don't think this is relevant to the

25 bankruptcy case.

1          MR. BRONSON:  This might be very relevant to the

2    divorce case.

3          THE COURT:  Yes.  But I don't see how it's relevant

4    to the question of whether we should convert this bankruptcy

5    case.  So I'm --

6          MS. VEERASWAMY:  I was just thinking that if he

7    violated stay orders from the Supreme Court that that shows

8    bad faith to people.  That was my --

9          THE COURT:  I think the bad faith that I'm looking

10   at is bad faith in this case.

11         MS. VEERASWAMY:  Okay.

12         THE COURT:  Okay.  So your direct testimony here is

13   being proffered through your submission of the motion to

14   dismiss, is that correct?

15         MS. VEERASWAMY:  Yes. Your Honor.

16         THE COURT:  So then Mr. Bronson is going to be given

17   an opportunity to cross examine you on that.  So these are --

18   your direct testimony would be, let's just be clear here, of

19   the -- thank you.  I'll [inaudible].  It is -- I just want to

20   identify the number, the docket number of the motions.  The

21   motion to convert is 16.  It was filed on 5/14.  And then

22   there's another document which is 11.  What is that -- oh,

23   sorry, wrong thing.

24                    [Pause in Proceedings.]

25         THE COURT:  This is 34.  So we need 34, we're

K. Veeraswamy - Cross                    88

1  talking about 34 and we're talking about 16.  Okay?  All

2  right.  Mr. Bronson.  I think that the witness needs to be

3  sworn and then you may cross examine.

4          KAREN VEERASWAMY, WITNESS, WAS SWORN.

5          THE CLERK:  Please be seated.  Say your name for the

6  record and give your address.

7          MS. VEERASWAMY:  My name is Karen Veeraswamy, V-E-E-

8  R-A-S-W-A-M-Y.  First name K-A-R-E-N.

9          THE COURT:  Go ahead.

10                      CROSS-EXAMINATION

11 BY MR. BRONSON:

12 Q.   Mrs. Veeraswamy, I don't have many questions for you but

13 I'd first like to know who helped you prepare your motion.

14 A.   I actually really did a lot of research online and with

15 the help of -- I looked at Lexis-Nexis, I looked at Cornell

16 Legal Lines.  I really tried my best.

17 Q.   Are you saying, Mrs. Veeraswamy, that you had no help

18 from an attorney in preparing that motion?

19 A.   No help.  As in bankruptcy, the attorney for the -- I

20 mean bankruptcy for the building as well, I didn't have any

21 help.  I would say I prayed to God.

22 Q.   Did you -- that's commendable.  But did you discuss with

23 your divorce attorney your motion that you were going to be

24 filing?

25 A.   Not beforehand.  I asked him if he would be a witness.

K. Veeraswamy - Cross                    89

Q.   If he'd be a witness but you didn't discuss with him or

show him the papers before they were --

A.   No.

Q.   -- before they were filed?

A.   No.

Q.   Mrs. Veeraswamy, do you know what a Chapter 7 trustee

does?

A.   I understand that the trustee oversees the judge's order

for total liquidation.

Q.   Do you know that there are many trustees in the Eastern

District and some are more aggressive than others?

A.   I have been aware of Mr. -- is it Michael Macco?  That he

would be the trustee for this.  I'm not sure.  I don't know

who the trustees are.

Q.   If it was converted to a Chapter 7, it would be a

different trustee.  That's okay.

A.   I understand a trustee would take control of everything.

Q.   Do you know the trustee acts pretty much on their own

under the direction of the US Trustee's Office, if anybody,

and carries out his job regardless of who the other parties

may be?

            MR. BRONSON:  Your Honor, I withdraw that as a

question.  That wasn't a very good question.

            THE COURT:  Okay.

            MS. VEERASWAMY:  I don't know who other parties

K. Veeraswamy - Cross                    90

1   you're referring to because I'm just talking about me now.

2   Q.   What I'm --

3           THE COURT:  Why don't you ask your next question?

4   Q.   What I'm trying to make sure, Mrs. Veeraswamy, is that

5   you know what you're asking for here and how it might have a

6   negative result on you.

7   A.   I'm aware of what I'm asking here and it's the same as

8   I've been asking since the filing of my divorce in 2011 that I

9   do not plan on maintaining any properties with Mr. Veeraswamy.

10  I have stated this all throughout the divorce, all throughout

11  the foreclosure process.  I have made motions in Supreme Court

12  to try to find a receiver to sell the properties.  I have also

13  made motions in the foreclosure court which I did pro se to

14  also try to get the properties sold.  I was without success

15  there, as you know, even in the marital residence of 8545 115

16  Street where there's substantial equity.  The decision and

17  order from the foreclosure court was in December of 2016.  I

18  was not a party to the agreement that was made between you,

19  Mr. Bronson, and the attorney for the bank.

20  Q.   I think you're going beyond what the question was at this

21  point.

22          THE COURT:  I'd like to hear the end of this.

23          MR. BRONSON:  Certainly.

24          THE COURT:  Go ahead.

25  A.   It goes to show that they filed for Chapter 13 on the eve

K. Veeraswamy - Cross                    91

1   of the auction on the auction steps.  And Mr. Bronson was the

2   attorney throughout the process through Supreme Court since

3   2014.  The decision came in December of 2016.  I had stated to

4   the banks that I was wanting the houses to be sold.  I have

5   said that.  I've written letters to the bank.  And even when

6   the decision came, Mr. Bronson made an agreement with the bank

7   attorney to have a grace period of nine months.  When the nine

8   months came, I contacted the bank and I asked them to please

9   sell the property.  I was informed then that it was from nine

10  months from the registering of that decision which was April

11  which put us up to the beginning of this year.  I again

12  contacted the bank and they were not obligated to sell.  So I

13  made a motion in the foreclosure court to try and enforce the

14  judgment of foreclosure and sale which the bank immediately

15  put it on the calendar the next day for the notice.  And then

16  here we are today.

17  Q.   Mrs. Veeraswamy, are you using the bankruptcy court as

18  leverage against your husband in your divorce?

19  A.   No.  Mr. Veeraswamy is.  I feel he is using the

20  bankruptcy court to his advantage.

21  Q.   But I'm referring to advantage in your divorce, using

22  bankruptcy proceedings as an advantage to get what you want to

23  in your divorce.

24  A.   From what I understand in divorce said there's equitable

25  distribution of all the properties.  And so far after years,

K. Veeraswamy - Cross                    92

1  since 2011, I'm only now coming close to getting something

2  that is my property too.

3  Q.    Have you received money from the escrow fund?

4  A.    Mr. Napolitano already clarified that.  I can't add

5  anything more.  I could add that I did 't have to file

6  contempt motions to get past support, that Mr. Veeraswamy did

7  get 175,000 which I agreed to release thinking that, you know,

8  he would pay off the mortgage or he would come to negotiating

9  something, but that didn't, obviously didn't happen.

10 Q.    But I'm asking what you got from the escrow account.

11 A.    Yes.  I received my back support which was 140,000.

12 Attorney's fees were 20,000.  And the same with Mr.

13 Veeraswamy, he got 175 I agreed to get because I had nothing

14 at the time.  So I really needed something.  I have two

15 children in college.

16 Q.    So you received approximately $300,000 from --

17 A.    Thereabouts.  But you're talking since 2011.  And then

18 before that as well I was in like family court.  You know, I

19 didn't have health insurance.  I had to pay cash for braces.

20 It was not easy by any means.  It looked like a lot of money

21 but over eight years it's not.

22 Q.    Mrs. Veeraswamy, are you working?

23 A.    No, I'm not.

24 Q.    Are you employable?  You're not disabled or anything?

25 A.    Excuse me?

K. Veeraswamy - Cross                    93

1  Q.   You're not disabled?

2  A.   I do have health issue.

3  Q.   You have health issues that keep you from working?

4        MS. VEERASWAMY:  Do I need to discuss my health

5  issues now?

6        MR. BRONSON:  I'm not asking specifics.

7        THE COURT:  He's asking you why you're not working,

8  why you don't have a job if you need money.

9        MS. VEERASWAMY:  I actually have chronic kidney

10 disease, stage three.

11 Q.   Again, Mrs. Veeraswamy, I'm not asking you to be --

12 A.   I'm just a step away from dialysis.

13       THE COURT:  And so this does prevent you from

14 working you're saying?

15       MS. VEERASWAMY:  It's very difficult for me, and you

16 know, ensuring that my children are secured in what they're

17 doing.  And this case and all the work that it entails, it

18 really is -- it takes a lot.  Like even like this bankruptcy

19 and like when I was going through the company bankruptcy

20 before in 2013, I mean that just encompassed -- I don't have

21 to tell you, it encompassed years.  I've been in and out of

22 court and it's very difficult for me.

23 Q.   Mrs. Veeraswamy, do you --

24       MS. VEERASWAMY:  I would like to finish my education

25 but I just can't dedicate my time at this point.  I don't have

K. Veeraswamy - Cross                        94

1    the finances.

2    Q.   Are you aware that in the corporate bankruptcy that had

3    that not been filed the senior lender was of a view that the

4    property was underwater and had no equity value?

5    A.   I don't see how that's relevant now, the extent.

6    Q.   You brought it up, Mrs. Veeraswamy, so --

7    A.   Oh.  Could you repeat the question?  I don't --

8    Q.   Are you aware that without filing that corporate

9    bankruptcy that it was likely that there would have been no

10   equity, there would have been no escrow account?

11   A.   It was my understanding that Mr. Veeraswamy had agreed to

12   sell the property which was a stipulation that was written and

13   agreed to in the Supreme Court.  And at that time, Mr. Levin

14   was saying there's no buyers, there's no buyers, there's no

15   buyers.  And then when a buyer was available, then bankruptcy

16   was filed.  Mr. Veeraswamy agreed to sell the property prior

17   to his bankruptcy filing.  Whether or not it was underwater or

18   not is -- I don't understand that relevance.

19   Q.   The relevance is -- sorry.

20         THE COURT:  Why don't you just ask your next

21   question?

22         MR. BRONSON:  Yeah.

23   A.   I mean that was -- the agreement was entered into the

24   Supreme Court that -- it was a stipulation that was entered

25   into Supreme Court that the property would be sold.

95

1          THE COURT:  Ask your next question, Mr. Bronson.

2  Q.    You alluded to domestic violence.  Can you tell us what

3  it was about?

4  A.    Mr. Veeraswamy did knock me down and I did have injury to

5  my hand.  We did go to criminal court.

6  Q.    And you didn't push Mr. Veeraswamy?

7  A.    No.  There was a police report.  I went to the hospital.

8  I got records.  And Mr. Veeraswamy was --

9  Q.    Mr. Veeraswamy didn't break his hip in that altercation?

10  A.    I haven't heard anything to that effect.  The only health

11  issues he mentioned recently is that he is a heart patient.

12  And Mr. Veeraswamy was given a protective stay away order and

13  I believe one year probation.  That was concluded through

14  criminal court.

15  Q.    Excuse me one second.

16  A.    Nothing to that effect was ever brought up at that time

17  so I don't feel that it's relevant at this time.  He could've

18  fallen down on the snow or anything.

19          MR. BRONSON:  Your Honor, that's the end of my

20  questions.

21          THE COURT:  Okay.

22          MS. VEERASWAMY:  He may have arthritis.  He's an

23  older gentleman.  Osteo, rheumatoid.  I don't know his medical

24  histories.

25          THE COURT:  So the questioning is concluded and Mr.

V. Veeraswamy - Direct                    96

1   Bronson doesn't have any more questions.  So you may step

2   down.

3          MS. VEERASWAMY:  Thank you, Your Honor.

4          THE COURT:  Mr. Bronson, do you have any other

5   questions?  Do you have any other witnesses, Mrs. Veeraswamy?

6          MR. BRONSON:  I have Mr. Veeraswamy as a witness.

7          THE COURT:  Just a second.

8          MR. BRONSON:  Oh, I'm sorry.

9          THE COURT:  Do you have any other witnesses --

10         MS. VEERASWAMY:  No, Your Honor.

11         THE COURT:  -- or evidence you want to offer at this

12  point?

13         MS. VEERASWAMY:  No, Your Honor.

14         THE COURT:  Then it's your -- you may call your

15  first witness.

16         MR. BRONSON:  I call Mr. Veeraswamy.

17            VELAPPAN VEERASWAMY, DEBTOR, SWORN.

18         THE CLERK:  Please be seated.  Say your name for the

19  record.

20         MR. VEERASWAMY:  My name is Velappan Veeraswamy.  My

21  telephone number -- sorry.  My spelling is V-E-L-A-P-P-A-N.

22  Last name is V-E-E-R-A-S-W-A-M-Y.

23         MR. BRONSON:  Mr. Veeraswamy -- may I start, Your

24  Honor?

25         MR. VEERASWAMY:  A little louder, please.

V. Veeraswamy - Direct                    97

1    THE COURT:  Yes.

2                    DIRECT EXAMINATION

3    BY MR. BRONSON:

4    Q.   Mr. Veeraswamy, what is your educational background?

5    A.   I didn't know anything [indiscernible] and Ph.D.  I came

6    on scholarship here [indiscernible] University, and I was

7    associate with [indiscernible] paperwork in Columbia

8    University and I summered here.  I stayed here.

9    Q.   Mr. Veeraswamy, I suggest you slow down a little bit.

10   A.   Okay.

11   Q.   I'm having a difficult time understanding --

12                    THE COURT:  Yes.

13   Q.   -- and I'm sure the judge is as well.

14                    THE COURT:  If you would, please.

15                    MR. VEERASWAMY:  Okay.  Thank you.

16   Q.   If you just would slow down and speak distinctly as best

17   you can.

18   A.   Okay.

19   Q.   You came from a small town India?

20   A.   I am from typical village.  When I was going to the

21   school I used to walk eight kilometers a day, morning, eight

22   kilometers back to my house.  And until I finished my high

23   school.

24                    THE COURT:  Mr. Veeraswamy, you are to answer the

25   questions that your attorney asks.  You don't diverge or go

V. Veeraswamy - Direct                          98

1  off into a speech.

2          MR. VEERASWAMY:  I am from typical village.

3  Q.   And so this trust that was formed, do you know what year

4  the trust was formed?

5  A.   Yes.  Trust I found, I am from typical village.  I wanted

6  to help poor people, poor kids to get an education, form to

7  give education, non-profitable trust.

8  Q.   That would have been my next question.  What year was the

9  trust formed?

10 A.   I think 2005.

11 Q.   And at that time did you transfer properties into the

12 trust?

13 A.   Yes.

14 Q.   Properties that were in your name?

15 A.   My name.  I give them all the properties including when I

16 go there I stayed in a house, a small house.  Everything to

17 the trust.

18 Q.   And when were you married?

19 A.   I married 1990, December.

20 Q.   So the trust is an educational trust?

21 A.   Yes, please.

22 Q.   And it was set up for the benefit --

23 A.   Benefit of the poor kids.

24 Q.   Is it your understanding that you have, personally have

25 access to sell those properties or access to any of the money

1   that's in the trust?

2   A.   No, I cannot sell.  I gave it to a non-revocable trust to

3   benefit the people.  Any trust members who are dead, that

4   died, they will follow all of the trustees.

5   Q.   What was your purpose for filing the Chapter 13.

6   A.   Chapter 13 I filed to sell my properties.  In 2013 or

7   '14, she forced to sell the property.  At the time house was

8   selling for only --

9              MS. VEERASWAMY:  I object.  That's conjecture.

10  A.   -- [indiscernible] minimum price.  What I --

11             THE COURT:  Okay.  When there is an objection, you

12  stop talking until I rule on the objection.

13             MR. VEERASWAMY:  Okay.

14             THE COURT:  What's your objection?

15             MS. VEERASWAMY:  That I didn't force the sale.

16             THE COURT:  Okay.

17             MS. VEERASWAMY:  He filed bankruptcy.  It was the

18  order of the Court.

19             THE COURT:  I'm overruling the objection.  I'm

20  hearing his testimony now.  Okay?  Go ahead.

21  A.   At the time --

22  Q.   Why did you file Chapter 13?

23  A.   I filing the property, sell my property because I have

24  the money, $1.4 million.  I came up to the Court.  There is

25  some money, 1.4 million, sitting in escrow last five years,

V. Veeraswamy - Direct                    100

1    four years.  And that money could be paid to the bank loans.

2    Then it will be sold for right price.

3    Q.    Why did you file Chapter 13?

4    A.    I filed to sell the properties, my -- to sell the

5    properties.

6    Q.    To save the properties?  Is that the word?

7    A.    Sell the properties.

8          THE COURT:  To save or sell?

9          MR. VEERASWAMY:  Save, S-A-V-E, save.

10         THE COURT:  Okay.

11   Q.    To save the properties from being sold?

12   A.    When arbitrarily sold for very cheap price.

13   Q.    Was there any consideration regarding your wife, your

14   divorce proceedings?  Was that a consideration when you filed

15   for Chapter 13?

16   A.    Yes.

17   Q.    How so?  How was that a factor?

18   A.    Repeat, please?

19   Q.    When you filed for Chapter 13, did it enter your mind,

20   was it part of your consideration in filing to stop your

21   divorce proceedings from going forward?

22   A.    No, never.

23   Q.    Do you want your divorce proceedings to go forward?

24   A.    I want it to settle as soon as possible because I'm

25   suffering last eight years.  I got two heart attacks and I

V. Veeraswamy - Direct                    101

1  have stents on me.  Other day, 31st, I had another heart

2  attack.  I'm [indiscernible] very bad [indiscernible] health

3  problems I have.  I want to settle this as soon as possible.

4  Q.   The domestic violence issue that came up, how many

5  incidents were they over the time you were married or even

6  separated?

7  A.   Since 1990 I'm married.  Since 2012 she came to my

8  office.  I never had no domestic violence.  I never touched

9  her.  She [indiscernible] many times when I was driving with

10 her in Whitestone Bridge under the Washington Bridge going to

11 Buffalo to see her family.  She [indiscernible] because what

12 happened she used to get jealous, mentally [indiscernible]

13 nervous problems.  So the effect of that, she [indiscernible]

14 sometimes.  However, what happened in 2012, she came to my

15 office, demand the money from me, that is child support.  I

16 told her it is not due yet.  I will pay you when the time

17 comes [indiscernible].  She pushed me immediately.  I was

18 doing some paperwork.  I fell down.  I really hurt my back.  I

19 did not call the police because of the reason my kids

20 [indiscernible].  I love my kids.  They [indiscernible] and

21 she go to the [indiscernible].  That is why I did not call the

22 police.  So then she called the police, told I hurt her.  I

23 never touched her at all.  I'm pretty nice.

24 Q.   Thank you.  That's enough on that issue, Mr. Veeraswamy.

25 When you filed for bankruptcy, was it your understanding that

V. Veeraswamy - Direct                    102

1  you owed back domestic support obligations?

2  A.    Yes.

3  Q.    You knew that you owed back domestic support obligations?

4  A.    Yes, of course I knew.

5  Q.    But you didn't list it in the petition.

6  A.    I did not.  At the time it was a hurry just to -- it was

7  too late.  I could not put everything together and I was

8  giving it to you filing.

9          THE COURT:  Did you prepare this petition or Mr.

10  Bronson prepared it?

11          MR. VEERASWAMY:  Mr. Bronson prepared the petition.

12  That's why I forgot [indiscernible].

13  Q.    Was it an emergency filing?

14  A.    This came up emergency because I filed on only 12th or 13th

15  so [indiscernible] 14th.

16          THE COURT:  Well, you did mention -- you didn't put

17  Mrs. Veeraswamy's name anywhere in the bankruptcy filing,

18  anywhere.

19          MR. BRONSON:  It was there I believe as a notice.

20  I'm sorry, Your Honor.

21          THE COURT:  It's not on the matrix I don't believe.

22  I'm not seeing it on the matrix.  And it's not on the -- and

23  in the statement of financial affairs lists the two, or the

24  question relating to pending legal actions lists the two

25  foreclosure actions but it does not list the divorce

V. Veeraswamy - Direct                    103

1  proceeding.

2          MR. BRONSON:  I'm not sure, Your Honor.  I don't

3  have the right documents here.

4          THE COURT:  Well, I'm looking at the creditor

5  matrix, unless it was amended at some point.

6          MR. BRONSON:  As a co-debtor?

7          THE COURT:  Oh, and then --

8          MS. VEERASWAMY:  I filed a --

9          THE COURT:  -- amended schedules with that.  She is

10  on the matrix.  I'm --

11          MS. VEERASWAMY:  Your Honor, if I may clarify?

12          THE COURT:  This is document 1.

13          THE CLERK:  Yeah, she's [inaudible].

14          THE COURT:  Yes.

15          MS. VEERASWAMY:  Your Honor?

16          THE COURT:  Yes.

17          MS. VEERASWAMY:  I believe that he did not put me

18  on.  Neither did the first proceeding.  I filed a proof of

19  claim myself and it was after I gave an email to Mr. Bronson

20  that it did state that that was one of my issues regarding

21  this evidentiary hearing.  Mr. Veeraswamy after that --

22          THE COURT:  I'm looking at the creditor --

23          MS. VEERASWAMY:  Only on the 25th.

24          THE COURT:  I'm looking at the creditor matrix that

25  was filed on 4/12/18 and one of the names on the creditor

V. Veeraswamy - Direct                    104

1  matrix is Karen Veeraswamy, 6337 Forest Avenue, number 1R,

2  Ridgewood, New York 11385.  Is that you?

3          MS. VEERASWAMY:  Yes.

4          THE COURT:  Okay.  Is that your address?

5          MS. VEERASWAMY:  Yes.

6          MR. BRONSON:  Yes, Your Honor.  She was listed on

7  Schedule H as a co-debtor.

8          THE COURT:  And she was --

9          MS. VEERASWAMY:  But not as a creditor.

10          THE COURT:  She was not listed as a creditor.  She

11  was listed on the matrix.  And the bank -- and the divorce

12  proceedings were not listed.

13          MR. BRONSON:  Yes, Your Honor.

14          THE COURT:  Any other questions?

15  Q.  Well, Mr. Veeraswamy, was it your intention to use the

16  bankruptcy process in bad faith?

17  A.  No.

18  Q.  I've had a little experience [indiscernible].  I have

19  experience.  I filed my bankruptcy [indiscernible] my company

20  2012.  And she pushed me to sell the property 2011 as soon as

21  she filed for divorce.  At the time the property -- I bought

22  it for $5 million.  Nobody would be able to buy it for even $5

23  million.  Then because --

24  Q.  Mr. Veeraswamy, I asked you a specific question.  You're

25  kind of going off on a tangent.  Is it your intent now to

1  withdraw your Chapter 13 bankruptcy?

2  A.    Yes.  I do want to withdraw if if I'm not pursue the

3  Chapter 13.

4              MR. BRONSON:  Okay.  Thank you.  Thank you, Your

5  Honor.

6              THE COURT:  Did you want to ask any questions?

7              MS. VEERASWAMY:  Yes, please.

8              THE COURT:  Okay.

9                         RECROSS-EXAMINATION

10  BY MS. VEERASWAMY:

11  Q.    Mr. Veeraswamy, I'd like to ask you that you have two

12  children in college?

13  A.    Repeat, please.

14  Q.    Do you have two children that are in college?

15  A.    Yes.  [Indiscernible] and [indiscernible] finished her

16  college long --

17  Q.    That's not my question.  Do you have two children in

18  college?

19  A.    Yes.

20  Q.    Your daughter is in graduate school at NYU?

21  A.    She is [indiscernible] --

22  Q.    Yes or no, sir?

23  A.    Please, I don't know.

24  Q.    Yes or no?

25  A.    I do not know.

V. Veeraswamy - Cross                    106

1    THE COURT:  You don't know if your children are in

2  graduate school or not?

3    MR. VEERASWAMY:  She said she'll go to school but

4  she's going to school for five, seven years.

5  Q.   She is in graduate school, sir.  Is your son an

6  undergraduate at --

7  A.   Yes.

8  Q.   -- Syracuse University?

9  A.   I got a letter from the Supreme Court [indiscernible].  I

10  had assumed that [indiscernible] he got a scholarship to go to

11  --

12  Q.   That's not my question.  Is your son in undergraduate

13  studies at Syracuse University?

14  A.   I got I said from the --

15  Q.   Yes or no?

16  A.   Yes.

17  Q.   Okay.  I would like to ask you do you pay anything

18  towards your children's education?

19  A.   When you [indiscernible] bring the kids to me --

20  Q.   Do you --

21  A.   She never said to me --

22  Q.   That's the question.  That's the question.

23  A.   She controlled everybody.

24  Q.   Stop.

25    MS. VEERASWAMY:  I have to ask him to answer the

V. Veeraswamy - Cross                    107

1  question.

2         THE COURT:  All right.  I am not going to permit you

3  to behave in this way.  You're going to need to answer the

4  questions and confine your remarks --

5         MR. VEERASWAMY:  No problem.

6         THE COURT:  -- to answering the question.

7         MR. VEERASWAMY:  Okay.

8         MR. BRONSON:  And Your Honor, Mrs. Veeraswamy

9  shouldn't be harassing in her questions.

10         MR. VEERASWAMY:  I did get --

11         THE COURT:  I think she's not harassing him.  She's

12  asking him questions.  Okay.  So --

13         MR. VEERASWAMY:  Okay.  I did pay $161,000 on

14  October 14 as a child support which was [indiscernible] and --

15  Q.   That's not the question.

16  A.   Please let me finish it now.

17         MS. VEERASWAMY:  That's not the question, Your

18  Honor.

19         MR. VEERASWAMY:  Let me -- you asked --

20         THE COURT:  Okay.  That's already in the record.  I

21  don't need to hear you go over that again.  Ask the question.

22  If you have any -- I know you pay that money.  I just heard

23  several people testify about it, so I don't need to hear you

24  say it again.  Ask your next question, please.  Other than

25  that amount, have you paid anything towards your children's

V. Veeraswamy - Cross                    108

1  college education?

2          MR. VEERASWAMY:  No.  Since 2013 I am sick.  I'm not

3  doing work, no work.  I am not making no money.  I wanted to

4  pay for the escrow money $1,400,000.

5          THE COURT:  All right.

6          MR. VEERASWAMY:  I did --

7          THE COURT:  Next question.

8  Q.  When the property went for the sale in bankruptcy court,

9  did you previously agree in the Supreme Court to sell said

10 property?

11 A.  Which property you're talking about?

12 Q.  The property that was here in bankruptcy court

13 previously, sir.

14 A.  No.  This property did not come.  8545 115 Street never

15 came.

16 Q.  We're discussing the apartment building.  Did you agree -

17 -

18 A.  Three family house.  Three families.

19 Q.  That's not the property.  The Bronx property that was in

20 bankruptcy court previously.  Did you agree to sell that

21 property in Supreme Court?

22 A.  I cannot understand your question.  Please, repeat

23 please.  I don't --

24          THE COURT:  I don't know, Mrs. Veeraswamy, how

25 relevant this is to the issue here which is the debtor's bad

1   faith on filing or lack thereof in filing this bankruptcy.  So

2   that's what I would like to focus on.  And I would like --

3   let's try to move through this quickly --

4           MS. VEERASWAMY:  Yes.  I am hungry and tired.

5           THE COURT:  -- because I don't think that this is --

6   I can see that this is not going to be helpful for you to

7   argue with each other about this.  I need you -- you need to

8   focus your questions on getting facts --

9   Q.   Mr. Veeraswamy --

10          THE COURT:  -- in the record that you feel that I

11  need to consider.  Okay?

12          MS. VEERASWAMY:  Yes.  Thank you.

13          THE COURT:  Thank you.

14  Q.   Mr. Veeraswamy, when did you file for --

15  A.   I filed --

16  Q.   -- for foreclosure --

17          THE COURT:  Wait.  She did not finish her question.

18          MR. VEERASWAMY:  Okay.  Okay.

19          THE COURT:  Ask your question.

20  Q.   When did you stop paying mortgages on two properties,

21  6546 115th Street as well as the three family on 122nd?

22  A.   Since 2014 I guess.

23  Q.   So you stopped paying mortgages at that time?

24  A.   Right.

25  Q.   Are those apartments rented in the 122nd Street property?

V. Veeraswamy - Cross                    110

1  A.   I have, yes, apartment rented out.

2  Q.   Okay.  What are the other spaces used for?

3  A.   Sorry?

4  Q.   What is the first floor used for?

5  A.   First floor, yeah, I was using my office and it was not

6  rented regularly because --

7  Q.   That's enough.  Okay.  So you were collecting rents and

8  not paying the mortgage?

9  A.   Not enough.

10 Q.   I would also like to ask you that you say you considered

11 your wife in the divorce proceedings.  So when you --

12 A.   Repeat, please.

13 Q.   You stated that you considered your wife in the divorce

14 in this chapter 13 filing but you did not include your wife or

15 your divorce proceedings on your initial filing.

16 A.   It was probably mistake happen and I filed the company

17 [indiscernible].  I thought I can file myself.  That's when I

18 gave my name and attorney also did not [indiscernible] to me -

19 -

20 Q.   Mr. Veeraswamy, are you aware that my name is also on the

21 deeds?

22 A.   Yes, of course.

23 Q.   I would also like to ask you regarding the untimely

24 filing.  You said you filed this Chapter 13 the day before it

25 was supposed to go for auction on the 14th, is that correct?

V. Veeraswamy - Cross                    111

1  A.    [Indiscernible].

2  Q.    When was the notice of the official decision from

3  foreclosure court for -- I believe it's called foreclosure and

4  sale.  When did that decision come?

5  A.    I received approximately ten days before only.

6  Q.    So you were not brought to the --

7  A.    I did not receive it.  Sorry.  I did not [indiscernible].

8  I went to my lawyer's office.  He signed the [indiscernible]

9  me.

10 Q.    So you were not aware that there was a notice of decision

11 and sale from the foreclosure court in December of 2016?

12 A.    No, I was not aware.  Not December.  After the 14th.

13 Q.    That was when the decision was entered.

14 A.    No, I did not realize.  I never got no call, letter from

15 nobody else.

16 Q.    Did you have you or your attorney negotiate with the bank

17 lawyer to have a nine month grace period before they went for

18 auction?

19 A.    That time no.  I --

20 Q.    So you had ample time to solve this instead of waiting

21 for the day before the auction sale?

22 A.    I don't know --

23 Q.    You had more than nine months.

24 A.    I had no money to pay to the bank.  You were hoarding the

25 escrow money, $1.4 million.  Lot of money.  You don't want to

V. Veeraswamy - Cross                              112

1   release the money to pay the bank.  You [indiscernible] to pay

2   the taxes [indiscernible] taxes.  They're after me.

3   Q.    Mr. Veeraswamy, I would ask you not to elaborate further

4   than the questions that I ask, please.  Are you and your

5   attorney, you're aware that still the divorce proceeding is

6   going on?

7   A.    Yes.

8   Q.    And it's the trial?

9   A.    Yes.

10  Q.    So neither you nor your attorney entered this into the

11  initial filing?

12  A.    I didn't hear it.  Repeat please.

13  Q.    Neither you nor your attorney entered me as a creditor

14  nor as the divorce proceeding on your initial filing.

15  A.    As I mentioned before, I went for a company bankruptcy --

16  Q.    This is a yes or no, sir.

17  A.    No.

18  Q.    Did you have a co-op at 4037 77th Street?

19  A.    Yes.  I bought it in 1985.

20  Q.    It's a yes or no.

21  A.    Yes.

22  Q.    When did you sell said property, sir?

23  A.    19 -- sorry, 2015.

24  Q.    And you filed -- you stopped paying the mortgage in --

25  the house has fell in foreclosure in 2014.

V. Veeraswamy - Cross                    113

1  A.   I have no mortgage on that co-op.

2  Q.   So you sold -- you had no mortgage on the co-op so you

3  were able to sell it free and clear for 135,000?

4  A.   That is my name personally and I have this -- I never met

5  -- before I met you, I married in 1990 --

6  Q.   That's not --

7  A.   -- I had this apartment.

8  Q.   That's not my question, sir.  So you sold the co-op in

9  2015 for 135,000?

10  A.   No, I got only 110,000 approximately, not 135.

11       MS. VEERASWAMY:  Well, I would -- do I need to refer

12  back to the exhibit, Your Honor?  It's neither here nor there

13  if he's --

14       THE COURT:  I think it's neither here nor there.

15  Q.   Did you pay any of the mortgage out of those proceeds?

16  A.   Which mortgage are you talking about?

17  Q.   The house mortgages that are in foreclosure, sir.

18  A.   No, I did not pay the mortgages because I have --

19  Q.   That's the question.  Did you pay any support with the

20  proceeds?

21  A.   No.

22  Q.   Domestic support?

23  A.   No.

24  Q.   Was it me or was it the bankruptcy judge that ordered the

25  sale of the property?

V. Veeraswamy - Cross                    114

1  A.   Which property?

2  Q.   The building.

3  A.   Building was brought to the court and --

4  Q.   Was it me or was it the order of the court that forced

5  the sale of the property?

6  A.   You [indiscernible].

7  Q.   But it was the judge that ordered.  Okay.

8  A.   Finally judge ordered [indiscernible].

9  Q.   That's enough.

10         MR. BRONSON:  Objection, Your Honor.  The question

11 was asked as if there was no other alternative.  Let it go.

12 I'm sorry, Your Honor.

13         THE COURT:  Can you please just finish this?

14         MS. VEERASWAMY:  I just -- yes, I really --

15         THE COURT:  You're going -- this is becoming

16 repetitious and I don't think --

17         MS. VEERASWAMY:  Okay.

18 Q.   I'd like to just ask you about the domestic violence.  Do

19 you agree that there was an incident?

20         THE COURT:  I don't think I need to hear anything

21 more about this.  I really don't.

22         MS. VEERASWAMY:  Okay.  Thank you.

23         THE COURT:  Is there anything else you want to ask?

24 Q.   Have you filed all your tax filings with this bankruptcy

25 court?

V. Veeraswamy - Cross                          115

1  A.    I filed the 2016 and the '17.

2  Q.    Everything that was required of you?

3  A.    '17, '16.  No, I'm sorry, '16 and '17 is ready to go.

4  And '14, '15 I didn't file because I had [indiscernible] state

5  250,000 capital gain --

6  Q.    Excuse me --

7  A.    Let me answer, please.

8  Q.    That's the question I'm asking.  I only asked if you

9  filed all of the required tax filings.  That's a yes or a no.

10  A.    I did not file because reporting of money not to pay the

11  taxes, the company money in the escrow [indiscernible] to

12  having the money.

13  Q.    Have you paid any domestic support since January of 2015?

14  A.    I did ask your --

15  Q.    Yes or no?

16  A.    Please --

17  Q.    Did you pay any domestic support since January 2015?  Yes

18  or no?

19  A.    I [indiscernible].  I am not working.  I'm not making

20  money.  I'm getting Social Security.

21  Q.    You just mentioned that you have rental income as well.

22  A.    Rental income is not that much.  Only one or two

23  apartments.  Sometimes empty, sometimes don't rent, sometimes

24  tenants don't pay rent.

25  Q.    Did you pay anything out of that?

V. Veeraswamy - Cross                    116

1  A.    No.

2  Q.    And I would just finally like to ask you have you paid

3  your trustee fees or domestic -- have you paid your trustee

4  fees since the filing?

5  A.    Yes, I paid.

6  Q.    Yes.  Have you paid any domestic support obligations

7  since you filed for bankruptcy?

8  A.    You're repeating.  Repeating same thing and I answered

9  you.  I don't have no money to pay.

10         THE COURT:  Can you please finish this up?  I'm

11  sorry to rush you but I really think we're getting to the

12  point where this is not helpful anymore,

13         MS. VEERASWAMY:  Yes, yes.  I'm just --

14         THE COURT:  I know.  You must be exhausted.  I'm

15  sure it's very taxing for you.  But unless you have -- rather

16  than rehashing other things, if you have anything that pertain

17  specifically to this bankruptcy case and how it was conducted,

18  you may ask him.  But if it's something else relating to

19  events that occurred prior to that, then I think I've heard

20  enough about that.  Okay?

21         MS. VEERASWAMY:  Okay, Your Honor.

22         THE COURT:  All right.  Thank you very much.  You

23  can be seated.  Nothing else, right, Mr. Bronson?

24         MR. BRONSON:  That's correct, Your Honor.

25         THE COURT:  Okay.

117

1          MR. BRONSON:  However, Your Honor, I don't want to

2   do a -- I'm not really going to do a summary but I would like

3   the opportunity to do a post hearing brief.

4          THE COURT:  I may be able to rule right now.  So

5   what I would like -- so I'm excusing you, sir.  You may step

6   down and take your seat.

7          MR. BRONSON:  Mr. Veeraswamy.

8          THE COURT:  I have a couple of questions here about

9   the assets in the estate so that I can understand better who

10  the creditors would be and what the assets would be if there

11  were a conversion to Chapter 7.  So I'm looking at the proofs

12  of claim that have been filed in this case.  I see a proof of

13  claim by JPMorgan.  No, excuse me, for Deutsche Bank for

14  $861,000.  What property is that on?  I can't tell from the

15  proof of claim.  Do you know what property that claim is?

16         MR. BRONSON:  867?  I'm sorry.  What was the amount?

17         THE COURT:  $861,597.

18         MS. VEERASWAMY:  I think it's the 122nd Street house,

19  sir.

20         MR. BRONSON:  I think it's the Richmond Hill.

21         THE COURT:  So that's the primary --

22         MS. VEERASWAMY:  The 122nd Street.

23         THE COURT:  That's the primary residence or the

24  three family house?

25         MR. VEERASWAMY:  845?

118

1          MR. BRONSON:  61.

2          MR. VEERASWAMY:  That's the three family house.

3          THE COURT:  That's the three family house.  Okay.

4    So that's -- is there another mortgage on that property or is

5    it just that --

6          MR. VEERASWAMY:  No, there is one -- there's no case

7    on that.  They have just Deuces Bank, or something like that.

8          THE COURT:  Deutsche Bank.  That's what I said.

9          MR. VEERASWAMY:  Right.  500 --

10         THE COURT:  Is there anybody -- is there another

11   mortgage on that house?

12         MR. VEERASWAMY:  No, there is no -- only one

13   mortgage, $592,000 approximately.

14         THE COURT:  Okay.  So they're both in Richmond Hill,

15   both of these properties.

16         MR. BRONSON:  Yeah.

17         MR. VEERASWAMY:  Yes.

18         THE COURT:  But 8648 --

19         MS. VEERASWAMY:  122 Street.

20         THE COURT:  122 Street.

21         MR. BRONSON:  86 -- yes.

22         THE COURT:  122 Street.

23         MR. BRONSON:  No, you're right, Your Honor.  8648

24   122nd.

25         THE COURT:  Okay.  So your schedule shows SPS as the

1   creditor's name.

2          MS. VEERASWAMY:  Yeah, the manager that runs --

3          THE COURT:  I guess that's Select Portfolio

4   Servicing.

5          MR. BRONSON:  Correct.

6          MR. VEERASWAMY:  SPS --

7          THE COURT: And you're showing 600,000 is the amount

8   that's owed, but they're showing 861,000.  So and you show

9   972,000 as the amount of the -- as the value of the property,

10          MR. VEERASWAMY:  With the interest and --

11          THE COURT:  Do you have any idea how much this is?

12   So this hasn't been paid in how long?

13          MS. VEERASWAMY:  I believe since 2014, Your Honor.

14          THE COURT:  Okay.  So based upon this valuation,

15   which I don't know if that's correct or not, there's about

16   $100,000 of equity in this property.  Is that correct?

17          MR. BRONSON:  That's correct, Your Honor.

18          THE COURT:  So let me understand the other property,

19   how much the equity is in that property.  You're showing that

20   property as having a value, the 8545 property, that property

21   has a value of $867,000?  Is that correct?

22          MR. BRONSON:  Yes, Your Honor.

23          THE COURT:  And both of these properties are owned

24   by the entireties, correct?

25          MR. BRONSON:  Yes.

120

1          THE COURT:  And so what are the claims on that

2   property?

3          MR. BRONSON:  Two mortgages by Chase --

4          MR. VEERASWAMY:  First mortgage Maspeth --

5          THE COURT:  Chase and Maspeth.

6          MR. VEERASWAMY:  Yeah.  Maspeth put in 152,000.

7          THE COURT:  They're showing 182,968.

8          MR. VEERASWAMY:  Maybe interest and everything.  And

9   second mortgage is 215 plus interest, I think or 48 or 50,000.

10         THE COURT:  This shows 296,410.

11         MR. BRONSON:  That's very close to what we have in

12   the petition.  We have 295.

13         THE COURT:  You have 295 but you have --

14         MR. BRONSON:  151 from Maspeth.

15         THE COURT:  -- from Maspeth you have 181.

16         MR. BRONSON:  It's probably 181, yes.

17         THE COURT:  So are there any tax obligations owed?

18         MR. VEERASWAMY:  Yes, taxes are owed.

19         THE COURT:  So what are the tax obligations that are

20   owed?  We don't have a proof of claim here.  Is this -- what's

21   the nature of the tax obligations that are owed?

22         MR. BRONSON:  I don't know, Your Honor.  I was

23   waiting for the proof of claim.  I think Mr. Veeraswamy's tax

24   situation is kind of a mess.

25         THE COURT:  Does he have capital gains as a result

121

1  of the sale of another property?

2          MR. VEERASWAMY:  Yes.

3          MR. BRONSON:  Yes.

4          MR. VEERASWAMY:  Yes.

5          THE COURT:  Which were not paid?

6          MR. BRONSON:  That's correct.

7          MR. VEERASWAMY:  [Indiscernible] capital gain.  I

8  got to pay tax.

9          THE COURT:  Okay.  So --

10         MR. BRONSON:  I don't believe there's a lien.

11         THE COURT:  Mr. Veeraswamy, sit down, please.  Mr.

12 Bronson, stand up, please.

13         MR. BRONSON:  Sorry.

14         THE COURT:  So you don't believe there's a tax lien

15 you're saying.  Did you do a title search to see if there was?

16         MR. BRONSON:  No, I did not do a title search yet.

17         MS. VEERASWAMY:  I'm aware of water bills in excess

18 of $42,000.

19         THE COURT:  I see that on the proof of claim, in the

20 proofs of claim.  Are they -- which probably are they on?

21         MS. VEERASWAMY:  I believe that's 8545 115th Street

22 if I'm not mistaken.

23         THE COURT:  So that's the residence.

24         MS. VEERASWAMY:  One family residence.

25         THE COURT:  So what are you going to do -- so which

122

1  property is at the point of being sold?  The residence,

2  correct?

3          MR. BRONSON:  That's correct, Your Honor.

4          THE COURT:  The other one is also -- is there a

5  judgment of foreclosure on the other property?

6          MR. BRONSON:  Yes there is, Your Honor.  But --

7          THE COURT:  So what is your plan if this case is

8  dismissed to avoid losing the equity in these homes, in these

9  properties?

10          MR. BRONSON:  Well, Your Honor, the one does not

11  have a sale date yet so the non-residence --

12          THE COURT:  If there's a judgment of foreclosure it

13  could happen at any time.

14          MR. BRONSON:  Your Honor, what the plan is when we

15  filed was to buy some time to maybe work out a settlement so

16  the arrears could be paid and that the foreclosures could be

17  put off at that point.  That has not happened but we have a --

18  around the corner in October I guess is the scheduled hearing

19  that --

20          THE COURT:  That's not around the corner.  They

21  could sell the house, the both buildings before then.

22          MR. BRONSON:  Yes, they could.

23          THE COURT:  Without any difficulty.

24          MR. BRONSON:  Right.

25          THE COURT:  So it seems to me that as between

123

1  dismissing with prejudice, which I would be inclined to do if

2  I were going to, based upon the failure to schedule Mrs.

3  Veeraswamy's obligation mentioned in the divorce proceedings

4  when she is the largest unsecured creditor that we know of, as

5  between dismissal with prejudice and conversion, it seems to

6  me everybody's better off with conversion because you're going

7  to at least preserve the equity in the property which then

8  would be available for a distribution in the divorce

9  proceeding.  Otherwise, if the property goes in foreclosure,

10 it's not going to yield -- you're not going to realize equity

11 in it that you'd get if it were sold.

12         MR. BRONSON:  Except, Your Honor, a Chapter 7

13 trustee has substantial costs attached to it and --

14         THE COURT:  Well, I think not as much as you're

15 going to sacrifice by having it go in foreclosure.

16         MR. BRONSON:  Your Honor, personally I believe that

17 if the Chapter 7 trustee was limited -- I know Mr. Veeraswamy

18 disagrees but if the Chapter 7 trustee was limited to those

19 two properties, that's one thing.  But that's not what

20 happens.

21         THE COURT:  He's not going to be limited.  He's

22 going to take a look at these trusts too I'm sure, absolutely,

23 and see if they can be unwound.

24         MR. BRONSON:  Right.

25         THE COURT:  And appropriately so.  That's absolutely

124

1  what he should do.

2         MR. BRONSON:  Right.  And he also may want the money

3  that's being held in escrow.  You know, he would have a right

4  to go after that money.

5         THE COURT:  And I guess we would have to figure out

6  what purpose that would serve given that if it's being held in

7  escrow it's not really available to other creditors other than

8  Mrs. Veeraswamy, isn't it?

9         MR. BRONSON:  Well, if it's being held in escrow for

10 the benefit of Mr. and Mrs. Veeraswamy, then it would have to

11 be determined --

12        MS. VEERASWAMY:  To be determined in Supreme Court.

13 And we -- as Mr. Napolitano said, Mr. Veeraswamy had in excess

14 of $1.4 million which he transferred out.  He already took his

15 equitable distribution portion.

16        THE COURT:  Yes.  On the petition he only listed

17 700,000 in escrow.

18        MR. BRONSON:  Because that would be about half, Your

19 Honor.

20        THE COURT:  That's his --

21        MR. BRONSON:  We weren't making a claim on the whole

22 1 --

23        MS. VEERASWAMY:  But that was also presumptuous that

24 he would get half, Your Honor.  He already Money Grammed  half

25 a million dollars.  He spent 1.4 million from our personal

125

1   account that he didn't disclose to Supreme Court.  So it's

2   very presumptuous that he would claim.  He didn't disclose and

3   give me half of the Bank of India account.

4          THE COURT:  Well, the Bank of India account was

5   liquidated before the bankruptcy filing, correct?  It was

6   liquidated in --

7          MR. BRONSON:  Eight years ago, yes, Your Honor.

8          THE COURT:  2011.

9          MS. VEERASWAMY:  But it was after the filing of

10  divorce.

11         THE COURT:  After the divorce but if it's gone, he

12  wouldn't put it in his bankruptcy.  He wouldn't put it on the

13  bankruptcy.  That's as of the date that he filed the case.  So

14  I'm just trying to understand the practical implications here.

15         Okay.  Is there anything -- I'm going to take a

16  short break and come back, but is there anything else you want

17  to tell me along the -- in regard to the implications that

18  would -- what the practical effect, impact would be of the

19  bankruptcy filing?

20         MR. BRONSON:  Well, I personally think that the best

21  way to sell these properties would be in the Chapter 13.

22         THE COURT:  Well so, you could do that.

23         MR. BRONSON:  Well, not if the case is dismissed or

24  converted.  And I don't even know if Mr. Veeraswamy -- you

25  know, I've talked to him about that option.  He doesn't really

126

1  like that option.

2          THE COURT:  He doesn't want to do that.

3          MR. BRONSON:  But as we know, there's three options.

4          THE COURT:  So he's not going to be cooperative in

5  doing that.  So I guess that's not really something that's

6  going to happen here.

7          MR. BRONSON:  Would you cooperate with a sale in the

8  Chapter 13?

9          MS. VEERASWAMY:  And Your Honor, we had experience

10 in the other bankruptcy filing --

11         THE COURT:  I'm not going to believe that that's

12 going to happen based upon prior experience.

13         MR. BRONSON:  Well, Your Honor, you have no reason

14 to believe -- based on your prior experience with --

15         THE COURT:  Well, Mr. Veeraswamy doesn't want to

16 sell these properties.  So if you agree to sell them to stave

17 off -- it's a conversion of this case.  I'm not sure how this

18 case would function in a Chapter 13 anyway really.

19         MR. BRONSON:  I really want to file it is a Chapter

20 11 and I might --

21         THE COURT:  Yes.  I was going to say maybe it should

22 be an 11 if we're going to do anything here.

23         MR. BRONSON:  We've had that discussion.  I told Mr.

24 Veeraswamy that we shouldn't bring it up at this point.  But

25 yeah, and 11 may give us the flexibility to sell and --

1        MS. VEERASWAMY:  But what's on the table now is his

2  -- he wants to withdraw it.

3        THE COURT:  Yes, that's --

4        MS. VEERASWAMY:  And he wants to convert it to 7.

5        THE COURT:  This is a --

6        MS. VEERASWAMY:  That's what it's about here.

7        THE COURT:  You should have been a lawyer, Mrs.

8  Veeraswamy.

9        MS. VEERASWAMY:  It's too much tension.  I cannot

10  take it.

11        THE COURT:  She's absolutely right that what's on

12  the table right now is conversion or dismissal.

13        MR. BRONSON:  I'm sorry, Judge, I didn't hear the

14  last words you said.

15        THE COURT:  Actually, the only motion to dismiss is

16  the Chapter 13 trustee's motion to dismiss.

17        MR. BRONSON:  Right.

18        THE COURT:  At the present time.

19        MR. BRONSON:  Well, we didn't make a motion but I

20  made the request at the last hearing to dismiss.  I would hope

21  that that would have been enough to preserve our right to make

22  a motion to dismiss if that was necessary unless --

23        THE COURT:  I think that if -- of course, I can

24  convert it to 7 and then you can seek to convert it to an 11.

25  That can happen too.  There's nothing about converting it to 7

128

1  that precludes it from being converted to an 11 if you can

2  make a showing that you're going to actually appropriately

3  conduct an 11.

4          MR. BRONSON:  Then we'd have all the bad faith

5  arguments that Marmar [Ph.] --

6          THE COURT:  You would.  Correct.

7          MR. BRONSON:  -- references.  And you know, I'm not

8  looking to prolong or do extra legal work that's going to fail

9  either.

10         MS. VEERASWAMY:  I would just pray that this case

11 would be resolved and we could sell the properties, put the

12 excess to the Supreme Court to divide accordingly and to be

13 able to just really separate and move on.  Mr. Veeraswamy's

14 obviously in houses that he can't afford to stay in.  There is

15 equity that is part and partially mine.

16         MR. BRONSON:  But that's more appropriate for the

17 divorce.

18         THE COURT:  But what this would -- okay.  You have

19 two houses that are likely to go in foreclosure before you can

20 get a decision from the state court.  You don't have a

21 situation here where the state court seems to be willing to

22 stay the foreclosure sales.  So those properties are -- we can

23 assume, certainly the single-family house which has the most

24 equity would appear from the schedules and the proof of claim

25 is likely to go in foreclosure since it was about to be sold.

129

1          MR. BRONSON:  That's correct.

2          THE COURT:  So you're not going to realize full

3    value out of that.  So that's going to be gone either way.

4    The other property too could go.  So that is the situation

5    that will occur if this case is dismissed in all likelihood.

6    If the case is converted, there will be a trustee appointed.

7    There won't be a foreclosure sale.  The trustee will take a

8    look at it, decide whether the trustee wants to sell these

9    properties.  Given the amount of equity, probably that would

10   happen.  I don't know.  I mean the property that is with the

11   smaller amount of equity, the $100,000 of equity, is not an

12   exempt property.  There's no property -- not the debtor's

13   residence, so there would be no exemption attached to that.

14         MR. BRONSON:  Correct.

15         THE COURT:  And I would think that what he would do

16   is sell it and pay -- I would think that the amount that would

17   go to Mrs. Veeraswamy and the amount that would go to Mr.

18   Veeraswamy would be something to be dealt with in the

19   matrimonial.  In other words, I would not see the trustee

20   paying out Mrs. Veeraswamy based upon her claim.  I would

21   think that money would be held in escrow pending the

22   matrimonial court's determination of how much of it she's

23   entitled to.  Other creditors would be paid including the

24   taxing authority and the other smaller creditors that exist

25   here.  So it is certainly possible that -- I don't know -- how

1  much is the tax obligation?  I mean those creditors are going

2  to end up getting paid before Mrs. Veeraswamy.

3          MR. VEERASWAMY:  Real estate taxes, Judge?

4          THE COURT:  What?

5          MR. VEERASWAMY:  Real estate taxes?

6          MR. BRONSON:  No.  The IRS and --

7          MR. VEERASWAMY:  [Indiscernible] 250,000 in the

8  company.  I sold a property 2014.  Capital gain

9  [indiscernible].  Now I did not file.  I have to pay

10  penalties, interest also.  So escrow, she's holding enough to

11  cooperate and compromise and settle the matter.

12          THE COURT:  So what we might -- I mean I don't know

13  how the trustee would see this but you might have the divorce

14  court to determine out of whose portion of the equity the tax

15  gets paid and how the rest of the assets get divided up.  And

16  then the trustee would also look at --

17          MS. VEERASWAMY:  Your Honor, Mr. Veeraswamy and his

18  lawyer, Mr. Joseph Levin, had previously filed a motion to

19  Judge Anna Culley for payment of those taxes and that was

20  denied.  And I'd like to ask a question.  I'm --

21          THE COURT:  Well, that's something she would have to

22  determine is who -- the taxes are going to have to be paid.

23  So the question is whose money that comes out of.

24          MS. VEERASWAMY:  I just want to clarify that I am

25  not bankruptcy here but still that's like equity is there that

131

1 I just want to try and secure.

2          MR. VEERASWAMY:  Judge, she claims as a family

3 property and family income has to pay taxes.  [Indiscernible]

4 has to pay the income made and the property --

5          MS. VEERASWAMY:  Our testimony is over already.

6          THE COURT:  Okay.  All right.  I'm not even going to

7 get into this.

8          MR. BRONSON:  We're not going to reargue the case.

9          THE COURT:  I'm not getting into this.  You're

10 talking about -- you're arguing that she should also be

11 responsible for the capital gains taxes is what you're

12 arguing?

13          MR. VEERASWAMY:  No, this is company property,

14 Judge.  This whole company 2014 and company has to pay, file

15 the taxes, pay the capital gain.  She dealt with the money to

16 the [indiscernible] money to the escrow and she's holding.

17 She don't want to the [indiscernible] the money to pay the

18 capital gain.

19          MS. VEERASWAMY:  This was already settled in the

20 other bankruptcy.

21          THE COURT:  This is all stuff that would have to be

22 dealt with by the matrimonial.  But it seems to me that

23 conversion of this case to a Chapter 7 would be warranted

24 based upon the debtor's conduct in this Chapter 13 case and

25 his bad faith.  And it would also result in the -- it would be

the best result for both him and for Mrs. Veeraswamy because

it would avoid the loss of the equity in the house and the two

real properties that is likely to ensue if the case is

dismissed.

MR. BRONSON:  Your Honor, the case law says --

MS. VEERASWAMY:  I agree, Your Honor.

MR. BRONSON:  -- that it has to be egregious

behavior, not just normal kind of bad faith.

THE COURT:  I think this is fairly egregious, not

listing your principal creditor which is your ex, your wife as

a creditor, not disclosing the divorce proceedings.

MR. BRONSON:  But it was an emergency filing and it

was not done to affect Mrs. Veeraswamy.

MS. VEERASWAMY:  I disagree with the emergency

filing.

THE COURT:  Right.  Why did it have to get filed on

the eve of foreclosure?

MS. VEERASWAMY:  The notice was from December 2016.

Mr. Bronson knows that he made an agreement with the bank

attorney for nine months grace period.

MR. BRONSON:  I think that was good.

MS. VEERASWAMY:  But here we are.  It was nine

months where I just went without income as well.

MR. VEERASWAMY:  We were --

THE COURT:  I think this is egregious misbehavior

133

1 because I do believe that this was done with the intent to

2 portray this as a case that is simply just about the mortgage,

3 just about loss mitigation.  And that's not what it's about.

4 I think as we can see it's much more complicated than that and

5 much more -- and Mrs. Veeraswamy's claim is the biggest claim,

6 certainly the biggest unsecured claim in the case.  And it's a

7 first priority claim.  So it seems to me for the reasons that

8 are given by Judge Grossman in the Armstrong decision that I

9 believe that there is no absolute right to dismiss a case in

10 the face of bad faith conduct --

11          MR. BRONSON:  Your Honor --

12          THE COURT:  -- by a Chapter 13 debtor.  It seems to

13 me that Section 1307 certainly authorizes conversion of a

14 Chapter 13 case where it's in the best interest of creditors

15 and frankly, I think it's in the best interest of the debtor

16 here too it seems to me.  He may not want to give up his

17 residence, but it's being -- this is what we would call dog in

18 the manger behavior.  He doesn't want to sell the property.

19 The result is it's going to be you're going to lose equity

20 because it's going to be lost to foreclosure.  And the same

21 thing is true of the other property as well.  So this I think

22 will effectuate the best result with the proceeds then to the

23 extent that they are subject to the claims of Mrs. Veeraswamy

24 would be, that would be determined by the divorce court.  I'm

25 not going to -- this Court is not going to estimate her claim

1  and it's not going to be paid here.  It would have to be

2  determined in the matrimonial court.  And I would think that

3  what I would do is lift the stay to allow that, to the extent

4  that it applies, to allow that trial to go forward in October.

5          MR. BRONSON:  But, Your Honor, I mean I don't think

6  the stay applies to that trial.

7          THE COURT:  Well, I think the stay may apply to the

8  extent that the divorce court is dealing with property of the

9  estate and deciding on how it should be allocated.

10          MS. VEERASWAMY:  Judge Anna Culley set it aside

11  until the outcome of foreclosure.

12          THE COURT:  I'm sorry?

13          MS. VEERASWAMY:  Anna Culley set the case aside

14  pending the outcome of here.  And Mr. Veeraswamy has been

15  blessed that he's lived since 2014 rent free collecting rents

16  and I'm sorry that he wants to give that up but that's a

17  petition that's here now.  I've had to pay rent over the

18  years.

19          THE COURT:  I think that the pattern of

20  nondisclosure in this case amounts to bad faith.  And the idea

21  that he didn't schedule his child support obligations even as

22  a claim either would have to have been -- could be certainly a

23  disputed claim, but he didn't schedule it at all.  And the way

24  that this strikes me and it struck me at the time that I first

25  saw this, this first came to my attention as a result of Mrs.

135

1  Veeraswamy's appearance in the case was that this was -- it

2  certainly has the strong appearance of an attempt to conceal

3  this and to portray this as just a case where we're going to

4  go ahead and have loss mitigation and try to get a more

5  affordable mortgage payment.  Because I think you did make a

6  loss mitigation request.

7          MR. BRONSON:  Yes, Your Honor.

8          THE COURT:  But that is an extremely misleading way

9  to present this case.  So I do believe that this is the type

10 of bad faith that justifies conversion of the case and I do

11 think it's in the best interest of creditors and in this case

12 of the debtor, even though he may not see it that way.  It

13 seems to me that he's otherwise going to lose his equity in

14 this property.

15         MS. VEERASWAMY:  Thank you, Your Honor.

16         THE COURT:  And while he might want to do that just

17 to spite Mrs. Veeraswamy, that's not behaving in a rational

18 way.

19         MR. BRONSON:  I don't think that's a motivation,

20 Your Honor.

21         THE COURT:  So that's my decision.  I'm going to

22 convert this case to a case under Chapter 7 for those reasons.

23         MR. BRONSON:  Do we have any --

24         MS. VEERASWAMY:  Thank you, Your Honor.

25         MR. BRONSON:  -- choice on trustees?

136

1          THE COURT:  No, you don't.  That's assigned to the

2    wheel and --

3                    [Pause in proceedings.]

4          MR. BRONSON:  We can make whatever motions we want

5    to make.  It's just a matter that if we have a bad faith

6    problem here, we're going to have it in Chapter 11 as well.

7          THE COURT:  Well, you're going to have to -- you

8    would certainly have to demonstrate that it would be -- that

9    your conduct would be in good faith in the Chapter 11 case if

10   you were going to do that.  But you can -- if that's available

11   to you.  But right now the case is being converted to a 7 and

12   the Court will issue an order to that effect.  All right.

13   Thank you very much.

14         MS. VEERASWAMY:  Thank you, Your Honor.

15         MR. BRONSON:  Thank you, Your Honor.

16         THE CLERK:  All rise.

17   (Proceedings concluded at 2:27 p.m.)

18                    * * * * * *

19

20

21

22

23

24

25

137

1     I certify that the foregoing is a court transcript from

2 an electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5                                    _Mary Greco_____

6                                        Mary Greco

7 Dated:   September 10, 2018

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Information to identify the case:**

| | |
|---|---|
| Debtor 1 | **Velappan Veeraswamy** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court **Eastern District of New York** | |
| Case number: **1–18–42030–cec** | |

Social Security number or ITIN  **xxx–xx–2014**

EIN  _ _–_ _ _ _ _ _ _

Social Security number or ITIN  _ _ _ _

EIN  _ _–_ _ _ _ _ _ _

Date case filed in chapter **13**    **4/12/18**

Date case converted to chapter **7**    **8/2/18**

# NOTICE OF FILING OF TRANSCRIPT AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION

**NOTICE IS HEREBY GIVEN THAT:**

A transcript of the proceeding held on 8/2/18 was filed on 9/12/18.

The following deadlines apply:

The parties have until September 19, 2018 to file with the court a Notice of Intent to Request Redaction of this transcript. The deadline for filing a Transcript Redaction Request is October 3, 2018.

If a Transcript Redaction Request is filed, the redacted transcript is due October 15, 2018.

If no such Notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is December 11, 2018, unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber TypeWrite at 518–581–8973 or you may view the document at the public terminal at the Office of the Clerk.

 Dated: September 12, 2018

For the Court, Robert A. Gavin, Jr., Clerk of Court

**BLnftrans2.jsp** [Notice of Filing Transcript and Deadlines to Restriction and Redaction rev. 02/01/17]

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0207−1 | User: acruz | Date Created: 9/12/2018 |
| Case: 1−18−42030−cec | Form ID: 295 | Total: 4 |

**Recipients of Notice of Electronic Filing:**

aty      H Bruce Bronson      ecf@bronsonlaw.net

TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

db      Velappan Veeraswamy      8545 115th St      Fl 1      Richmond Hill, NY 11418−1733

     H. BRUCE BRONSON, ESQ.      Bronson Law Offices PC      480 Mamaroneck Avenue      Harrison, New York 10528

     KAREN VEERASWAMY, Pro Se      P.O. Box 863695      Glendale, New York 11386

TOTAL: 3